John L. Cooper (State Bar No. 50324)
jcooper@fbm.com
Gregory J. Cleaver (State Bar No. 235949)
gcleaver@fbm.com
FARELLA BRAUN & MARTEL LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
Telephone: (415) 954-4400
Fax: (415) 954-4480

Attorneys for Plaintiff
ALL ONE GOD FAITH, INC., d/b/a DR. BRONNER'S MAGIC SOAPS, a California corporation

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN FRANCISCO

ALL ONE GOD FAITH, INC., d/b/a DR. BRONNER'S MAGIC SOAPS, a California corporation,

Plaintiff,

vs.

THE HAIN CELESTIAL GROUP, INC., a Delaware corporation; KISS MY FACE CORPORATION, a New York corporation; LEVLAD, INC., a California corporation; ESTEE LAUDER, INC. a Delaware corporation; JUICE BEAUTY, INC., a Delaware corporation; YSL BEAUTE, INC., a New York corporation; GIOVANNI COSMETICS, INC., a California corporation; COSWAY COMPANY, INC., a California corporation; COUNTRY LIFE, LLC, a New York limited liability company; ORGANIC AND SUSTAINABLE INDUSTRY STANDARDS, INC., a Nevada corporation; ECOCERT FRANCE (SAS), a French corporation; and ECOCERT, INC., a Delaware corporation,

Defendants.

Case No. 474701

**FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AGAINST UNFAIR AND UNLAWFUL BUSINESS ACTS AND PRACTICES AND DECEPTIVE AND FALSE ADVERTISING**

Plaintiff All One God Faith, Inc., d/b/a Dr. Bronner's Magic Soaps ("Dr. Bronner's"), for its complaint, hereby alleges as follows:

## GENERAL ALLEGATIONS

1. Plaintiff All One God Faith, Inc. d/b/a Dr. Bronner's Magic Soaps ("Dr. Bronner's") is, and at all times herein mentioned was, a California corporation qualified to do business in California. Its principal place of business is located at 2751 Auto Park Way, Escondido, CA 92029.

2. Defendant The Hain Celestial Group, Inc. ("Hain Celestial") is, and at all times herein mentioned was, a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Melville, New York, registered with the California Secretary of State as a foreign corporation qualified to do business in California, and doing business in the County of San Francisco, State of California.

3. Defendant Kiss My Face Corporation ("Kiss My Face") is, and at all times herein mentioned was, a corporation organized and existing under the laws of the State of New York, with its principal place of business located in Gardiner, New York, registered with the California Secretary of State as a foreign corporation qualified to do business in California, and doing business in the County of San Francisco, State of California.

4. Defendant Levlad, Inc. ("Levlad") is, and at all times herein mentioned was, a corporation organized and existing under the laws of the State of California, with its principal place of business located in Chatsworth, California and doing business in the County of San Francisco, State of California.

5. Defendant Estee Lauder, Inc. ("Estee Lauder"), is, and at all times herein mentioned was, a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Melville, New York, registered with the California Secretary of State as a foreign corporation qualified to do business in California, and doing business in the County of San Francisco, State of California.

6. Defendant Juice Beauty, Inc. ("Juice Beauty") is, and at all times herein mentioned was, a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Mill Valley, California, registered with the California



Secretary of State as a foreign corporation qualified to do business in California, and doing business in the County of San Francisco, State of California.

7. Defendant YSL Beaute, Inc. ("YSL Beaute") is, and at all times herein mentioned was, a corporation organized and existing under the laws of the State of New York, with its principal place of business located in New York, New York, and doing business in the County of San Francisco, State of California.

8. Defendant Giovanni Cosmetics, Inc. ("Giovanni") is, and at all times herein mentioned was, a corporation organized and existing under the laws of the State of California, with its principal place of business located in Compton, California and doing business in the County of San Francisco, State of California.

9. Defendant Cosway Company, Inc. ("Cosway") is, and at all times herein mentioned was, a corporation organized and existing under the laws of the State of California, with its principal place of business located in Carson, California and doing business in the County of San Francisco, State of California.

10. Defendant Country Life, LLC ("Country Life") is, and at all times herein mentioned was, a limited liability company organized and existing under the laws of the State of New York, with its principal place of business located in Hauppauge, New York, registered with the California Secretary of State as a foreign corporation qualified to do business in California, and doing business in the County of San Francisco, State of California.

11. Defendant Organic and Sustainable Industry Standards, Inc. ("OASIS") is, and at all times herein mentioned was, a corporation organized and existing under the laws of the State of Nevada, with its principal place of business located in Milpitas, California and doing business in the County of San Francisco, State of California.

12. Defendant Ecocert France (SAS) ("Ecocert France") is a French corporation doing business in the County of San Francisco, State of California.

13. Defendant Ecocert, Inc. ("Ecocert U.S."), is an affiliate of Ecocert France; is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the City and County of San Francisco, California; is registered with the

 

California Secretary of State as a foreign corporation qualified to do business in California; and is doing business in the County of San Francisco, State of California.

14. As set forth in detail below, Defendants Hain Celestial, Kiss My Face, Levlad, Juice Beauty, YSL Beaute, Giovanni, Cosway and Country Life sell liquid soaps, bodywashes, facial cleansers, shampoos, lip balms and/or moisturizing lotions in competition with liquid soaps, bodywashes, facial cleansers, shampoos, lip balms and/or moisturizing lotions manufactured and sold by plaintiff Dr. Bronner's. Some Defendants have labeled and advertised their products as "Organic" or "Organics." Other Defendants have displayed, on the front label of their products, the claim that their products are "Made with Organic" ingredients. In fact none of the subject products are either "Organic" or "Made with Organic" ingredients as those terms are understood by reasonable consumers.

15. Use of the terms "Organic" and "Made with Organic" in the labeling and advertising of these products is also inconsistent with the voluntary industry standards developed, with the input of consumer and industry representatives, through an NSF International—American National Standards Institute ("ANSI") standards development process. These standards have been made available for public comment prior to finalization.

16. As set forth in more detail below, Defendants' labeling and advertising of their body care products as "Organic" constitutes an unfair and unlawful business practice and false and deceptive advertising within the meaning of Cal. Bus. & Prof. Code § 17200.

17. On information and belief, Dr. Bronner's has suffered monetary damages through business lost to Defendants Hain Celestial, Kiss My Face, Levlad, Juice Beauty, YSL Beaute, Giovanni, Cosway and Country Life, as a result of their unfair and unlawful business practices and false and deceptive advertising, in that consumers who want to purchase body care products that such consumers would consider "Organic" or "Made with Organic [specified ingredients]" have been misled into buying Defendants' products which are deceptively labeled "Organic" instead of products made by Dr. Bronner's.



18. Accordingly, Dr. Bronner's is a person who has suffered injury in fact and has lost money as a result of these Defendants' unfair competition, within the meaning of Cal. Bus. & Prof. Code § 17204.

19. Defendant OASIS is a commercial trade association of which many of the other Defendants in this action are members. This trade association is designed to represent and promote the commercial goals of its member companies in their efforts to sell "organic" personal care products. The members of this trade association include personal care product and ingredient manufacturers as well as distributors. The primary immediate goal of OASIS has been to issue an industry standard for "organic" personal care products, and to promote the commercial and sales goals of its members in the marketplace seeking to sell body care products to consumers seeking to purchase organic products. In doing so, OASIS acts as the agent of its trade association members as to whose products OASIS promotes through its purported certifications.

20. OASIS has issued a new and permissive industry standard, the development of which was promoted principally by Defendant Estee Lauder but which was also supported by other Defendants including Hain Celestial and Cosway. The OASIS standard allows a product to be labeled outright as "Organic" even if it contains main cleansing agents made from non-organic material that has been hydrogenated and/or sulfated, and preserved with synthetic petrochemicals, as alleged in more detail below.

21. Plaintiff has been informed by Tim Kapsner of Defendant Estee Lauder that Estee Lauder plans to imminently label its products as certified "Organic" in accordance with the standard of Defendant OASIS.

22. Plaintiff's staff spent a significant amount of time investigating Estee Lauder's plan imminently to engage in unfair and unlawful business practices and false and deceptive advertising.

23. Unless OASIS is enjoined from such deceptive certification of products, and Estee Lauder is enjoined from marketing such products, Dr. Bronner's will lose business to Defendants Estee Lauder and other companies, as a result of the fact that Defendant OASIS's certification of these products as "Organic" constitutes an unfair and unlawful business practice and false and

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

 

deceptive advertising, in that consumers who want to purchase only body care products that such consumers would consider "Organic" will be misled into buying these OASIS-certified products instead of personal care products manufactured and sold by Dr. Bronner's.

24. Accordingly, Dr. Bronner's is a person who has suffered, or is in imminent risk of suffering, actual injury in fact and loss of money as a result of Estee Lauder's and OASIS's unfair competition, within the meaning of Cal. Bus. & Prof. Code §§ 17203 & 17204.

25. Defendant Ecocert France is a certifying organization based in Europe and operating throughout the world. Defendant Ecocert U.S. performs certification activities in the United States on behalf of Ecocert-affiliated companies.

26. Ecocert France and/or its affiliates including but not limited to Ecocert U.S. (hereinafter collectively referred to as "Ecocert") have issued an industry standard that requires a product to be 100% organic in content if it is labeled outright as "Organic," and otherwise must make a more restricted "Made with Organic [specified ingredient]" claim. Nevertheless, Ecocert has in fact certified personal care products, including some made by Defendant YSL Beaute, Inc., that make outright "Organic" or "100% Organic" product claims, but which use cleansing agents that contain no organic material and/or that include cleansing agents made in part with petrochemicals, making false the representation that those products are "100% Organic" or "Organic."

27. Ecocert's standards permit the main cleansing ingredients in bodywashes and shampoos to be made from conventional material combined with petrochemical material such as Cocamidopropyl Betaine. No reasonable consumer seeking to purchase bodywash and shampoo products which such consumer considers to be "Organic" would expect petrochemical material to be included in the main ingredients of such products.

28. As set forth in greater detail herein, Ecocert has certified body and skincare products to be labeled outright as "Organic" in violation of its own standard, in that many of the products so labeled are not "Organic" as that term is defined by Ecocert's standard, or as that term is understood by reasonable consumers.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

 

29. Dr. Bronner's has lost business to Defendant YSL Beaute, Inc. as a result of the fact that Defendant Ecocert's certification of these products as "Organic" constitutes unfair and unlawful business practice and false and deceptive advertising, in that consumers who want to purchase only body care products that such consumers would consider to be "Organic" have been misled into buying these Ecocert-certified products instead of truly organic body, skin and hair care products manufactured and sold by Dr. Bronner's.

30. Accordingly, Dr. Bronner's is a person who has suffered injury in fact and has lost money as a result of Ecocert's unfair competition, within the meaning of Cal. Bus. & Prof. Code § 17204.

**KEY AGENTS IN SUBJECT PRODUCTS**

31. Skin, body and hair care products such as liquid soaps, body washes, cleansing gels and moisturizers, contain cleansing agents, known as "surfactants," and/or moisturizing agents, called "emollients," which are the main ingredients in such products. These skin, body and hair care products generally consist mostly of water (typically more than 70 percent).

32. As described in more detail below, it is common for manufacturers of such products seeking to brand or label them as "Organic" to use surfactants which are derived from agricultural material that was produced through conventional, rather than recognized organic methods, and thus have been produced using synthetic fertilizers, pesticides and/or herbicides.

33. In turning such agricultural material—such as coconut oil—into a surfactant, a manufacturer may convert the oils into fatty alcohols, by tranesterifying the vegetable oil with methanol (a petrochemical) to make methyl esters and then hydrogenate the methyl esters at high pressure in the presence of a metal catalyst, which breaks the ester linkage, making fatty alcohols and recovering the methanol. This process is referred to herein as "hydrogenation." These fatty alcohols can be used in their own right as emollient ingredients, or further reacted with other agricultural or petrochemical compounds, to produce surfactant or ester ingredients.

34. In turning a fatty alcohol into a surfactant, a manufacturer may employ the process of sulfation, which is the introduction into an organic substance of a molecule of the sulfuric ester group, in which the sulfur is linked through an oxygen atom to the parent molecule (fatty



alcohol). Sulfur is derived as a byproduct of coal and petroleum refining, and sulfur trioxide is attached to the fatty alcohol in a falling film reactor. This process makes agricultural material (fatty alcohol) effective as surface cleansing agents.

35. A number of surfactants are made with in part petrochemicals, meaning that they are derived in part from petroleum or natural gas. An example is Cocamidopropyl Betaine, also known as coconut oil Amidopropyl Betaine, which is made by combining coconut oil with Amidopropyl Betaine, a petrochemical. This process results in contamination with traces of the petrochemicals Sodium Monochloroacetate, Amidoamine (AA) and Dimethylaminopropylamine (DMAPA). Amidoamine is suspected of causing skin sensitization and allergic reactions even at very low levels for certain consumers.

36. In some cases, surfactants are created, in part, through a chemical process known as ethoxylation, in which the petrochemical (and carcinogenic) ethylene oxide (1,2-epoxyethane) is added to fatty alcohols (derived from vegetable oils) to make them more soluble in water, and thus more effective as a foaming and cleansing agent. This process results in 1,4-Dioxane being created in trace amounts. 1,4-Dioxane is considered a chemical "known to the State of California to cause cancer" under Proposition 65. In or about May, 2008, the Attorney General of California filed suit against Hain Celestial and others for failing to disclose 1,4-Dioxane contamination of certain of their products. 1,4-Dioxane is present in various Defendants' "Organic"-labeled products.

**LEGAL FRAMEWORK**

**A. Federal Law: Production and Labeling**

37. The federal Organic Food Products Act of 1990, 7 U.S.C. §§ 6501 *et seq.* ("OFPA"), requires the United States Department of Agriculture ("USDA") to implement a National Organic Program ("NOP"), providing for establishment and enforcement of standards for labeling of agricultural and food products as "Organic." Pursuant to this authority, USDA has issued regulations establishing standards for growing and raising organic agricultural products, 7 C.F.R §§ 205.200 *et seq.* (2008), and governing use of the term "Organic" with regard to agricultural and food products. 7 C.F.R. §§ 205.300 *et seq.*

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

38. OFPA requires that agricultural products labeled "Organic" be certified by a certifying agent accredited by USDA, as meeting the requirements of the regulations, and forbids the labeling as "Organic" of products that have not been so certified. 7 U.S.C. §§ 6514(a), 6515, 6519.

39. In December 2000, USDA issued regulations implementing the OFPA. National Organic Program, Final Rule, 65 Fed. Reg. 80548 (Dec. 21, 2000).

40. To be considered "organically" produced, ingredients must be produced by farms or processing operations certified by a state government or private certifying entity that is accredited by USDA. 7 C.F.R. §§ 205.100, 205.300. Each production, handling or manufacturing operation that produces any agricultural product intended to be labeled or sold as "Organic" or "Made with Organic [specified ingredients]" must be certified by a USDA-accredited certifying agent as meeting all the requirements of the NOP in its production facilities and processes. 7 C.F.R. § 205.100. Certification indicates that the farm or processing operation meets the standards for farming, production and handling set forth in the NOP regulations. *Id.* § 205.2 (definition of "certified operation").

41. The USDA National Organic Program regulates and monitors organic farming and is essentially an organic product "truth in advertising" labeling program, where organic consumers know they are buying products based on organic, not conventional, agriculture, free of petrochemicals, preservatives and other unnecessary synthetic ingredients. Non-organic synthetic allowances are tightly restricted, being made only after an extensive review process against strict criteria. Justia.com, http://law.justia.com/us/cfr/title07/7-3.1.1.9.31.7.344.1.html (last visited August 6, 2008).

42. Under the USDA regulations, a processed agricultural product sold or labeled as "Organic" must "contain (by weight or fluid volume, excluding water and salt), not less than 95% organically produced raw or processed agricultural products. Any remaining product ingredients must be organically produced in accordance with standards set forth in the regulations, "unless not commercially available in organic form, or must be nonagricultural substances or

nonorganically produced" products that are produced consistent with the regulatory standards. 7 C.F.R. § 205.301(b).

43. The few permissible non-organic substances are specifically listed in the regulations; any non-organic substance or synthetic, other than those listed, is not permitted to be included in products labeled "Organic." 7 C.F.R. § 205.301(b).

44. If a product may be labeled "Organic" under the USDA regulation, the term "Organic" may be used on the label to modify the name of the product, *i.e.*, be in letters as large as the name of the product itself. 7 C.F.R. § 205.303(a). The term "Organic" may be used on labels *only* in accordance with these rules. *Id.* § 205.200.

45. The USDA regulations also provide for another, separate category of products, at least 70% of the contents of which consist of certified organic ingredients. The remaining 30% of the contents can consist of conventional non-organic agricultural ingredients but the nature of those ingredients is also restricted: they cannot consist, for example, of genetically modified material or synthetic substances, with certain specified exceptions. 7 C.F.R. §§ 205.105(a), 205.301(c).

46. Under the NOP regulations, products meeting this 70% standard may not be labeled "Organic"; rather, they may only be labeled, on the principal display panel, as "Made with Organic [specified ingredients]" or "Made with Organic [specified food groups]." 7 C.F.R. § 205.304(a)(1)(i) & (ii). The NOP regulations do not permit the label of such a product to state simply that the product is "Made with Organic Ingredients," which inaccurately implies *all* ingredients are organic; rather, the term "Organic" must modify specified individual ingredients. *Id.* § 205.305. Further, the "Made with Organic [specified ingredients]" statement must appear in "letters that do not exceed one-half the size of the largest type size on the panel" and which appear in their entirety "in the same type size, style, and color without highlighting." *Id.* § 205.304(a)(1)(iii).

47. Under the NOP regulations, the percentage of organically-produced ingredients in a multi-ingredient finished food product, if liquid, is to be determined by dividing the fluid

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

volume of all organic ingredients (excluding water and salt) by the fluid volume of the finished product (excluding water and salt). 7 C.F.R. § 205.302.

48. Each production, handling or manufacturing operation that produces any agricultural product intended to be labeled or sold as "Organic" or "Made with Organic [up to three certified ingredients]" must be certified by a USDA-accredited certifying agent as meeting all the requirements of the NOP in its production facilities and processes. 7 C.F.R. § 205.100.

**B. Application to Body Care Products**

49. Ever since the National Organic Program was formally established in October of 2002, non-food agricultural products, such as supplements and personal care products, have been eligible voluntarily to be, and in fact have been, certified as meeting the criteria for the National Organic Program. NOP's official website states that, "[i]f a cosmetic, body care product or personal care product contains or is made up of agricultural ingredients, and can meet the USDA/NOP organic production, handling, processing and labeling standards, it may be eligible to be certified under the NOP regulations." National Organic Program, http://www.ams.usda.gov/AMSv1.0/getfile?dDocName=STELPRDC5068442 (last visited August 6, 2008).

50. The official website further explains that, "[o]nce certified, cosmetics, personal care products and body care products are eligible for the same 4 organic labeling categories as all other agricultural products. . . ." *Id.* Specifically, a personal care or body care product labeled "Organic" "must contain at least 95 percent organically produced ingredients (excluding water and salt). Remaining product ingredients must consist of nonagricultural substances approved on the National List or non-organically produced agricultural products that are not commercially available in organic form. . . ." *Id.* For products labeled "Made with Organic [specified ingredients]," the "product label can list up to three of the organic ingredients . . . on the principal display panel. For example, body lotion made with at least 70 percent organic ingredients (excluding water and salt) and only organic herbs may be labeled either 'body lotion made with organic lavender, rosemary, and chamomile,' or 'body lotion made with organic herbs.'" *Id.*

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400



51. The official NOP website further confirms that, "[a]ny cosmetic, body care product, or personal care product that does not meet the production, handling, processing, labeling, and certification standards described above, may not state, imply, or convey in any way that the product is USDA-certified organic or meets the USDA organic standards." *Id.*

52. Thus, the NOP criteria are permissive not mandatory as to any application to personal care products and do not preclude regulation of organic representations by private actions brought under state law. They allow personal care products that contain agricultural materials and actually comply with the NOP criteria to be voluntarily certified as meeting the USDA organic criteria and be labeled "Organic" or "Made with Organic [specified ingredients]." Personal care products that do not display any suggestion of being certified as USDA organic are not regulated by the USDA NOP regardless of their ingredients and regardless of whether they are labeled and represented to be "organic" independent of UDSA compliance, no matter how egregiously and flagrantly such products may flout basic organic consumer expectations and criteria. The NOP criteria only govern personal care products that voluntarily represent or imply that they meet the NOP criteria or carry the USDA organic seal. The NOP regulations do not apply to personal care products that represent that they are organic but do not purport to comply with the NOP organic criteria and do not carry or imply that they carry the USDA organic seal. Under the NOP, the cleansing and moisturizing agents in skin, body and hair care products which include agricultural material and are labeled as simply "Organic" or "Made with Organic [up to three specified ingredients]" cannot consist of or contain any synthetic petrochemicals or petrochemical compounds if the manufacturer wishes to represent that their products comply with the NOP criteria. Further, processes such as hydrogenation and sulfation are not allowed to be used to produce such agents. 7 C.F.R. §§ 205.105(a), 205.301(b) & (c).

53. Personal care products labeled as in compliance with "Organic" or "Made with Organic [up to three specified ingredients]" under the NOP criteria reflect basic organic consumer expectations and criteria, and make use of natural unrefined oils and waxes as moisturizers, rather than hydrogenated fatty alcohols, oils and synthetic silicones, and make use of natural simple soaps rather than synthetic surfactants made in part with petrochemicals.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

**C. Voluntary Industry Standards**

54. NSF International ("NSF") is a private company that works with various industries to promulgate safety and quality standards and to certify products as conforming to such standards once they are issued.

55. The American National Standards Institute ("ANSI") is a nonprofit organization that oversees the development, issuance and use of voluntary consensus industry standards for products and services and accredits agencies and entities to certify conformity of particular products and services with such standards.

56. Over the past four years, NSF and ANSI have undertaken a standards development process for organic personal care products, working with industry representatives including the Organic Trade Association, large organic certifiers such as Quality Assurance International, several of the Defendants, Dr. Bronner's, and representatives of consumer interests such as the Organic Consumers Association.

57. The standard resulting from this process has been issued in draft form for public comment, and is expected to be issued in final form later in 2008. In its current (and expected final) form, the standard affirms that a personal care product may be labeled as "Organic" only if it complies with the USDA NOP requirements, accurately reflecting basic organic consumer expectations regarding the contents of personal care products labeled outright as "Organic," including the expectation that such products be free of hydrogenated and sulfated cleansing agents, as well as petrochemical preservatives and compounds.

58. Under the current draft version of the NSF-ANSI standard, a personal care product could be labeled as "Made with Organic [up to three ingredients]" if, among other things, the product's cleansing agents are made from plant-based certified organic material as commercially available (meaning among other things, agricultural material grown without use of synthetic fertilizers, pesticides or herbicides) and do not consist of or contain petroleum compounds, even if processes such as hydrogenation and sulfation are used to modify the organic agricultural material. Under that standard, once a given processed ingredient is made from organic materials, only the organic form of that ingredient, rather than the conventional form, can be used in

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400



products labeled as "Made with Organic" ingredients. As under the NOP rules, however, use of processes such as hydrogenation and sulfation would preclude the labeling of a product as being outright "Organic."

59. Thus the NSF-ANSI standard under development would allow personal care products labeled as "Made with Organic [up to three ingredients]" to include plant-based surfactants, hydrogenated oils and other intensively processed agents as long as such agents are made from certified organic materials without any petroleum compounds. Only in the situation in which such certified organic materials are not yet commercially available for ingredients may the conventional form of the ingredient be used until such time as the certified organic form becomes commercially available.

60. Defendant OASIS has developed and issued an alternative industry standard based in part on the language and structure of the NSF standard. This standard was developed with no input from consumer groups or representatives. Development of this standard was promoted principally by Defendant Estee Lauder, who along with a few other industry members, were unhappy that the NSF-ANSI standard would respect basic organic consumer criteria, and not allow hydrogenation, sulfation and synthetic preservation of ingredients in outright "Organic" products.

61. Unlike the NSF-ANSI standard, the OASIS standard allows a product to be labeled outright as "Organic" (rather than as merely "Made with Organic [up to three ingredients]" as under the NSF-ANSI) even if that product contains hydrogenated and/or sulfated cleansing agents made from conventional agricultural materials—which may have been grown using synthetic fertilizers, pesticides or herbicides—rather than organic agricultural materials. Such labeling of a product as simply "Organic" is permissible, under OASIS, even if such agents are preserved with synthetic petrochemicals.

## STATEMENT OF FACTS

### A. Consumer Expectations

62. Reasonable consumers of organic skin, body and hair care products in California expect and believe that such a product labeled as "Organic," "Organics," "100% Organic Active

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

Ingredients" or "Made with Organic Ingredients" do not contain any petrochemicals or petrochemical compounds in ingredients whatsoever, and are thus entirely free of petrochemical contaminants that could pose any concern, such as Amidoamine in Cocamidopropyl Betaine and 1,4-Dioxane in ethoxylated surfactants.

63. Reasonable consumers of organic skin, body and hair care products in California expect and believe that such a product labeled "Organic," "Organics," "100% Organic Active Ingredients" or "Made with Organic Ingredients" do not contain synthetic preservatives.

64. Reasonable consumers of organic skin, body and hair care products in California expect and believe that such a product labeled "Organic," "Organics," "100% Organic Active Ingredients" or "Made with Organic Ingredients" do not contain cleansing or moisturizing agents derived from conventionally-produced agricultural materials that may have been grown using synthetic fertilizers, pesticides or herbicides, and may contain residues of such substances.

65. Reasonable consumers of organic skin, body and hair care products in California expect and believe that a personal care product labeled "Organic," "Organics," "100% Organic Active Ingredients" or "Made with Organic Ingredients" has more organic content than a product labeled "Made with Organic [specified ingredients]."

66. Reasonable consumers of organic skin, body and hair care products in California expect and believe that a personal care product labeled "Organic," "Organics," "100% Organic Active Ingredients" or "Made with Organic Ingredients" is as or more likely than a product merely labeled "Made with Organic [specified ingredients]" to be free of petrochemicals and/or to include cleansing or moisturizing agents derived from organic rather than conventional agricultural materials.

67. Reasonable consumers of organic skin, body and hair care products in California expect and believe that a personal care product labeled "Organic," "Organics," "100% Organic Active Ingredients" or "Made with Organic Ingredients" will not be so labeled based merely on the inclusion of water in which botanical material has been soaked or steamed. Rather such consumers expect that products so labeled will include main ingredients—cleansing and

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

moisturizing agents—that are derived from organic material and are free of petrochemical compounds.

68. All of the above noted basic organic consumer criteria and expectations are reflected in the USDA NOP criteria for organic personal care products.

69. Branding "Organics" onto a label is perceived by organic consumers as among the strongest of various organic label claims, and such branding on personal care products is understood by reasonable organic consumers to mean that the main cleansing and moisturizing ingredients of a personal care product are made with organic, rather than conventional, agricultural material, and are free of petroleum compounds.

70. Reasonable consumers of organic skin, body and hair care products in California believe that the terms "Organic" and "Organics," in the plural, mean the same thing and that a personal care product labeled "Organics" will have the characteristics described in paragraphs 62-69 above.

**B. <u>Dr. Bronner's Products and Labeling</u>**

71. Plaintiff Dr. Bronner's engages in the business, among other things, of manufacturing and selling, in California and throughout the United States, personal care and cosmetic products including the nation's top-selling natural brand of liquid and bar soap in a number of varieties under the "Dr. Bronner's Magic Soaps" brand and lotions, hair rinses, shampoos, hair conditioners, shaving gels and balms under the brand, "Dr. Bronner's Magic."

72. "Dr. Bronner's Magic Soaps" liquid soaps and other cleaning products are labeled as "Made with Organic Oils." These liquid soaps are all certified and labeled in accordance with the NOP voluntary criteria for labeling a personal care product as "Made with Organic [specified ingredients/types]".

73. Dr. Bronner's has chosen to comply with the USDA voluntary NOP organic criteria, which criteria properly reflect organic consumer criteria for organic personal care. In July 2003, a USDA-accredited certifying agent, Oregon Tilth Certified Organic, certified Dr. Bronner's as an organic operation with respect to nine specific bar soap products and six specific liquid soap products. Dr. Bronner's liquid and bar soaps comply with the USDA requirements for



labeling a product as "Made with Organic [specified ingredients]," and thus are labeled as such, on the front panel, with the words "Made with Organic [specified ingredients]" not exceeding 50% of the type size of the largest font otherwise appearing on the label.

74. Further, all of the cleansing and moisturizing ingredients in all of the products described in paragraphs 71-73 are made from organic material and are free of petrochemicals. In manufacturing these products, Dr. Bronner's uses certified organic oils to make all cleansing ingredients. All such cleansing ingredients are derived from organic, rather than conventionally-produced, agricultural material and do not contain any petrochemicals, petrochemical preservatives or synthetic surfactants.

75. Dr. Bronner's has also introduced a line of organic lip balms, body balms and lotions, and more recently shaving gels and organic hair care products in the form of a conditioning rinse and leave-in conditioner, all of which are certified as meeting the requirements of the NOP criteria for being labeled "Organic."

76. On February 27, 2005, Oregon Tilth, after analyzing a number of Dr. Bronner's products and the proposed labels for those products, certified Dr. Bronner's as "Organic" in accordance with the certifying agent's own standards identical to those of NOP, with respect to Dr. Bronner's Magic body balm, lip balm and lotion products. In reliance and based on this certification, Dr. Bronner's has at all relevant times since February 27, 2005 and continuing to the present time, labeled and marketed its "Organic" products, as listed on the February 27 certification, as "Certified Organic," *i.e.*, voluntarily certified to NOP criteria, and has displayed the USDA seal on such labels.

77. Dr. Bronner's products labeled as "Organic" and "made with Organic [specified ingredients]" meet all of the criteria of the NOP for being labeled as "Organic" and "made with Organic [specified ingredients]" in satisfaction of that program, and thus in satisfaction of the basic organic consumer expectations and criteria that the NOP criteria reflect.

78. The labeling of Dr. Bronner's liquid and bar soaps as "Made with Organic Oils" in accordance with the NOP rules ensures consumers that the principal cleansing ingredients of these Dr. Bronner's products are made with organic material with no petrochemical compounds


or preservatives. Dr. Bronner's is the only major brand in the natural personal care market in which the main cleansing ingredients are made from organic rather than conventional agricultural and/or petrochemical material.

C. **Products of Defendant Manufacturers/Distributors**

1. **Products Labeled and Sold as Organic**

79. Dr. Bronner's liquid soap products, under the "Dr. Bronner's Magic Soaps" brand, and properly labeled "Made with Organic [specified ingredients]" under the NOP criteria, and Dr. Bronner's lip balms, lotions, hair rinses, shampoos, conditioners and shaving gels labeled as "Organic" under the NOP criteria, are sold in direct competition with liquid soaps, bodywashes, shampoos, hair conditioners, hair rinses, cleansing milks, cleansing gels, foaming cleansers, lip balms and/or facial cleansers ("Personal Care Products") manufactured and sold by Defendants Hain Celestial, Kiss My Face, Levlad, Estee Lauder, Cosway, Juice Beauty, Country Life, YSL Beaute, Inc. and Giovanni. In the case of the products manufactured and sold by Defendants Hain Celestial, Kiss My Face, Levlad, Juice Beauty, Country Life and Giovanni, Dr. Bronner's products and Defendants' personal care products are typically sold in the same sections, and often on the same shelves, of the same retail outlets, including grocery stores, natural food stores, drugstores and other outlets.

80. Defendant Hain Celestial produces, and sells in California and throughout the United States, a line of personal care products labeled and advertised "JASON Pure Natural & Organic" and "Avalon Organics." The terms "Pure Natural & Organic" and "Organics" appear prominently on the label or container of each such product.

81. The major cleansing ingredients in the JASON or Avalon personal care products are not made from organic material; rather, all such ingredients are made from conventional agricultural material combined with petrochemicals.

82. The "Organic" content of these products consists primarily and often solely of water in which organic botanical material has been steamed or soaked, or of organic aloe vera, with effectively no cleansing function.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

83. The JASON liquid soap, bodywash and shampoo products, for instance, contain Sodium Myreth Sulfate, an ingredient made in significant part with the petrochemical ethylene oxide, as the primary cleansing ingredient. Further, because this ingredient is ethoxylated with the petrochemical ethylene oxide, its use results in the inclusion, in these products, of trace amounts of the carcinogenic substance 1,4-Dioxane.

84. None of the cleansing agents in these JASON products are derived from organic agricultural materials. All the JASON products are preserved with synthetic petrochemically-derived preservatives.

85. Defendant Hain Celestial's "Avalon Organics" products used for cleansing the body or hair contain Cocamidopropyl Betaine, which is made by combining petrochemical and conventional agricultural compounds, and which has no organic content.

86. None of the cleansing agents in the Avalon products described above are derived from organic agricultural materials. All of the Avalon products are preserved with synthetic petrochemical ingredients.

87. Because the JASON and Avalon products referenced above use principal cleansing agents which are derived from conventional agricultural material (produced using synthetic fertilizers, pesticides and/or herbicides), and are preserved with synthetic petrochemical preservatives, no reasonable consumer would consider any such product to be "Organic" or to be properly labeled "Organic" if such consumer were aware of the ingredients and composition of such product.

88. Defendant Kiss My Face produces, and sells in California and throughout the United States, a line of personal care products labeled and offered for sale as "Organic" and/or "Obsessively Organic," including but not limited to a line labeled and advertised as "Organic Self Foaming Liquid Soaps" and labeled "Obsessively Organic," with the latter words appearing directly above the primary product descriptor on the front label.

89. The Kiss My Face products for cleansing the skin and hair all contain cleansing ingredients which are derived from conventional agricultural material rather than organic agricultural materials and which are made with petrochemicals. Specifically, Olefin Sulfonate is

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

a pure petrochemical (misleadingly described on the labels of certain Kiss My Face products as being "from coconut") and Cocamidopropyl Betaine, which as noted in made from petrochemicals and conventional agricultural material.

90. Because the Kiss My Face cleansing products described above contain principal cleansing agents derived from petrochemicals and from conventional agricultural material (produced using synthetic fertilizers, pesticides and/or herbicides), no reasonable consumer would consider any such products to be "Organic" or to be properly labeled "Organic" if such consumer were aware of the ingredients and composition of such product.

91. Defendant Levlad produces, and sells in California and throughout the United States, under the brand name "Nature's Gate," a line of personal care products advertised, labeled and offered for sale as "Nature's Gate Organics."

92. The cleansing agents in the Nature's Gate Organics Personal Care Products contain petrochemicals or petrochemical compounds. These agents include Disodium Laureth Sulfosuccinate, made with Ethylene Oxide, and Cocamidopropyl Betaine. The use of an ingredient ethoxylated with the petrochemical Ethylene Oxide results in the inclusion, in these products, of trace amounts of the carcinogenic substance 1,4-Dioxane.

93. Because the Nature's Gate products contain cleansing agents derived from petrochemicals and from conventional agricultural material (produced using synthetic fertilizers, pesticides and/or herbicides), and because these products contain petrochemical preservatives, no reasonable consumer would consider any such product to be "Organic" or to be properly labeled "Organic" if such consumer were aware of the ingredients and composition of such products.

94. Because the Nature's Gate products referenced above contain some amount of a carcinogenic substance, no reasonable consumer would consider any such product to be "Organic" or to be properly labeled "Organic" if such consumer were aware of the ingredients and composition of such products.

95. Defendant Juice Beauty produces, and sells in California and throughout the United States, a line of liquid soaps, cleansing gels and cleansing milks labeled, advertised and offered for sale as "Juice Beauty Organics" and/or "The Organic Solution," including but not

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

limited to Juice Beauty "The Organic Solution Cleansing Gel," "Juice Beauty—The Organic Solution—Green Apple Mousse Body Cleaner," "Juice Beauty—The Organic Solution—Cleansing Milk" and "Juice Beauty Organics Brightening Cleanser."

96. The cleansing agents in the Juice Beauty products listed above contain petrochemicals or petrochemical compounds. These agents include Cocamidopropyl Betaine, made with Amidopropyl Betaine, a petrochemical; and Sodium Carboxymethyl Lauryl Glucoside, made with Carboxymethyl, a petrochemical.

97. The Juice Beauty products listed above also contain one or more synthetic petrochemical preservatives and/or EDTA, a synthetic substance of concern that takes a long time to biodegrade and re-releases heavy metals into ecosystems.

98. The cleansing ingredients in the Juice Beauty products listed above are derived from conventional, rather than organic, agricultural materials.

99. In addition to using the terms "Juice Beauty Organics" and "The Organic Solution" on the labels of these products, certain products are labeled simply as "Made with Organic Ingredients," without any specification of which ingredients are organic, thereby implying that all of them are.

100. Because the Juice Beauty products listed above contain principal cleansing ingredients made with petrochemicals and/or petrochemical preservatives and/or EDTA, and because the cleansing agents in these products are derived from conventional agricultural material (produced using synthetic fertilizers, pesticides and/or herbicides), no reasonable consumer would consider any such product to be "Organic" or to be properly labeled "Organic" or "Made with Organic Ingredients" if such consumer were aware of the ingredients and composition of such products.

101. Furthermore, Juice Beauty displays its "Made with Organic Ingredients" claim in a round seal that is misleadingly and confusingly similar to the USDA "Organic" seal. Juice Beauty has also made statements on their website and in the press falsely implying that their products meet USDA NOP criteria for being labeled "Organic."

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400



102. Defendant YSL Beaute produces, and sells in California and throughout the United States, a line of products called "CARE" including a "cleansing milk" and "purifying foaming cleanser" which are labeled, advertised and offered for sale as "100% Organic Active Ingredients."

103. On information and belief, the YSL Beaute products listed above are not 100% organic. YSL Beaute's facial cleansing product consists of fatty alcohols as primary ingredients, made from conventional rather than organic agricultural material, by combining the petrochemical methanol with conventional vegetable oil, and then hydrogenating at high pressure to produce the fatty alcohol and recover the methanol.

104. Because the YSL Beaute products listed above consist of substantially less than 100% organically produced ingredients, no reasonable consumer would consider any such product to be "Organic" or as "100% Organic."

105. Reasonable consumers believe and understand the term "100% Organic" to mean that a product so labeled meets the NOP criteria for a product labeled as simply "Organic" and/or consists entirely of certified "Organic" ingredients. Because the YSL Beaute products described above do not meet those criteria and do not consist almost entirely of certified "Organic" ingredients, no reasonable consumer would consider these products to be properly labeled "100% Organic," if such consumer were aware of the ingredients and composition of such products.

106. YSL Beaute's CARE line, including the cleansing products described above, is labeled as being certified by Ecocert. YSL Beaute products are not properly certified to be labeled as "100% Organic" even under Ecocert's own standards. In a complaint recently filed in this Court, Ecocert suggested that Stella McCartney, a distributor of YSL Beaute, Inc. products, does not sell any cleansing products, indicating that Ecocert does not believe that Stella McCartney and hence YSL Beaute, Inc. is selling cleansing products labeled as certified by Ecocert. Thus, Ecocert has failed to enforce its own standards with respect to the labeling of these products. Complaint ¶ 11, *Ecocert France (SAS) et al. v. All One God Faith, Inc.*, No. CGC-08-474413 (Cal. Super. Ct., S.F. County, filed April 18, 2008).

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400



107. Defendant Giovanni produces, and sells in California and throughout the United States, personal care products advertised and offered for sale as "Giovanni Organic Cosmetics" and/or "Organic Cosmetics," including but not limited to "Giovanni Organic Body Wash" in "Cucumber Song," "Grapefruit Sky," "Lavender Vanilla Snow," "Raspberry Winter" and "Tea Tree Triple Treat," all also labeled "Organic Cosmetics" on the front label.

108. A main cleansing agent in the Giovanni liquid body wash products is Cocamidopropyl Betaine, made with Amidopropyl Betaine, a petrochemical.

109. The cleansing ingredients in the Giovanni products listed above are derived from conventional, rather than organic, agricultural materials.

110. Because the Giovanni products listed above contain petrochemicals and/or petrochemical compounds and because the cleansing agents in these products are derived from conventional agricultural material (produced using synthetic fertilizers, pesticides and/or herbicides), no reasonable consumer would consider any such product to be "Organic" or to be properly labeled "Organic" if such consumer were aware of the ingredients and composition of such products.

111. Defendant Cosway produces, and sells in California and throughout the United States, a line of shampoos and conditioners under the "Head Organics" brand, which are labeled, advertised and offered for sale as "Head Organics," including "Head Organics Shampoo." On information and belief, Cosway also manufactures under private label arrangements, diverse personal care products that are labeled "Organic," "Organics" or that use similar terms.

112. The cleansing agents in Head Organics Shampoo consist of and/or contain petrochemicals or petrochemical compounds. These agents include Cocamidopropyl Betaine, made with Amidopropyl Betaine; Sodium Lauryl Sulfoacetate, containing Sulfoacetate made from chloracetic acid; and Cocamidopropyl Hydrosultaine made from Hydrosultaine.

113. The cleansing ingredients in Head Organics Shampoo and, on information and belief, in products manufactured by Cosway for third parties under the brands of those third parties, are derived from conventional, rather than organic, agricultural materials. Head Organics products are preserved with synthetic petrochemical preservatives.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

 

114. Because Head Organics Shampoo products and/or other products manufactured by Cosway contain petrochemicals and/or petrochemical compounds and because the cleansing agents in these products are derived from conventional agricultural material (produced using synthetic fertilizers, pesticides and/or herbicides), no reasonable consumer would consider any such product to be "Organic" or to be properly labeled "Organic" if such consumer were aware of the ingredients and composition of such products.

115. Defendant Country Life produces, and sells in California and throughout the United States, a line of body washes and shampoos under the brand "Desert Essence Organics" and which are labeled, advertised and offered for sale as "Desert Essence Organics." The cleansing agents in the "Desert Essence Organics" body washes consist of and/or contain petrochemicals or petrochemical compounds. These agents include Cocamidopropyl Betaine, made with the petrochemical Amidopropyl Betaine.

116. These and other non-organic cleansing agents are listed in the ingredient list displayed on the label of these Desert Essence products as "Certified Organic by Ecocert." In fact, these ingredients, like Desert Essence brand products, are not organic and are not themselves certified as "Organic" by Ecocert.

117. Ecocert's standards allow such non-organic cleansing agents to be included in products that Ecocert certifies as "Organic." Ecocert does not, however, in any way certify these ingredients *in themselves* to be "Organic." Thus Country Life has misrepresented the nature and meaning of the certification of its ingredients by Ecocert.

118. The cleansing ingredients in Desert Essence Organic bodywashes are derived from conventional, rather than organic, agricultural materials

119. Desert Essence Organics products are preserved with synthetic petrochemical preservatives.

120. Because Desert Essence Organics bodywash products contain petrochemicals and/or petrochemical compounds and because the cleansing agents in these products are derived from conventional agricultural material (produced using synthetic fertilizers, pesticides and/or herbicides), no reasonable consumer would consider any such product to be "Organic" or to be

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400



properly labeled "Organic" if such consumer were aware of the ingredients and composition of such products.

121. Estee Lauder produces, and sells in California and throughout the United States, a line of personal care products under the "Aveda" brand. Plaintiff has been informed by Tim Kapsner of Defendant Estee Lauder that Estee Lauder will label its products as certified "Organic" in accordance with the standard of Defendant OASIS.

122. Ellen Maguire, Vice President of Global Communications for Aveda told Sustainable is Good, an industry blog, that she expected products from Aveda would be OASIS certified imminently. Sustainable is Good, http://www.sustainableisgood.com/blog/2008/03/cosmetic-indust.html (last visited August 6, 2008).

123. Tim Kapsner of Estee Lauder has represented to David Bronner of Dr. Bronner's as recently as mid-May of this year, that Estee Lauder intends immediately to move forward with the labeling of Aveda products as "Organic" in reliance on the certification by OASIS. An Aveda spokesperson represented to media in early March that OASIS-certified Aveda "organic" products are expected "within the next year."

124. Thus, on information and belief, Estee Lauder plans imminently to label, advertise and offer for sale Aveda products as "Organic," based on certification by OASIS that the products conform to the OASIS standard.

125. The main cleansing ingredients in the Aveda products are hydrogenated, sulfated and preserved with synthetic petrochemical preservatives.

126. Because the main cleansing ingredients in Aveda products described above are hydrogenated and sulfated and preserved with petrochemical preservatives, no reasonable consumer would consider any such product to be "Organic" or to be properly labeled "Organic" if such consumer were aware of the ingredients and composition of such products.

127. Estee Lauder does offer for sale, under its "Origins Organics" brand, a line of successful products that are properly certified and labeled as "Organic" and "Made with Organic [specified ingredients]" in accordance with the USDA NOP criteria, that is properly reflective of

basic organic consumer expectations that "organic" personal care be free of hydrogenated, sulfated and synthetically preserved ingredients. Estee Lauder has solicited, from plaintiff Dr. Bronner's, additional formulations for personal care products that can be labeled "Organic" or "Made with Organic" under the NOP critera. Estee Lauder has thus effectively acknowledged that a personal care product is properly labeled "Organic" only if it complies with the NOP criteria, which reflect basic organic consumer criteria and expectations that organic products not be hydrogenated, sulfated or synthetically preserved, and be free of any petrochemical compounds.

128. Yet Estee Lauder plans to label certain of its Aveda products as being outright "Organic" even though such products do not comply with the NOP and basic organic consumer criteria and will meet only the much more permissive purported OASIS standard. That Estee Lauder will then be selling and distributing some products that are properly labeled as "Organic" and/or "Made with Organic" ingredients under the NOP criteria, while selling other products as "Organic" that do not meet the NOP criteria but only the much more lenient OASIS standard, will further confuse and mislead consumers into believing that the Aveda products labeled "Organic" meet the NOP and basic organic consumer criteria for being labeled "Organic" when in fact they do not.

**D. <u>Certifying Organizations</u>**

129. The Defendant OASIS trade association has issued a new, permissive industry standard, the development of which has been promoted principally by Defendant Estee Lauder. This standard allows a product to be labeled outright as "Organic" even if it contains cleansing agents made from non-organic material that is hydrogenated or sulfated, and preserved with synthetic petrochemicals.

130. Ms. Gay Timmons, the chairperson of the OASIS trade association, has confirmed the organization's goal by representing to the cosmetic industry at an industry convention that:

> The OASIS Seal tells buyers throughout the world that your product has met the highest international Standard for the Health and Beauty industry.

<u>OASIS Power Point Presentation at the Natural Beauty Summit</u>, NYC, May, 2008

OASIS has been actively soliciting and recruiting companies to obtain certification from OASIS at various industry trade shows including but not limited to Expo West in March in Anaheim, the country's largest natural products show.

131. On information and belief, Defendants Estee Lauder, Hain Celestial and Cosway plan imminently to label their products as certified "Organic" in accordance with the standard of Defendant OASIS trade association, whereas the products so labeled are not "Organic" as that term is understood by reasonable consumers, for the reasons set forth above.

132. Defendant Ecocert has issued a purported industry standard that requires a product to be 100% organic in content if it is labeled outright as "Organic"; otherwise only a more restricted "Made with Organic [specified ingredient(s)]" representation is allowed. Nevertheless, Ecocert has in fact certified body and skincare products outright as "Organic," including some made by Defendant YSL Beaute, which use cleansing agents that contain no organic material and that include cleansing agents made in part with petrochemicals. Such products contain substantially less than 100% organic content.

133. Ecocert has certified body and skincare products to be labeled outright as "Organic" in violation of its own standard, in that many of the products so labeled are not "Organic" as that term is understood by reasonable consumers.

134. Ecocert's standards permit the inclusion, in products certified to be labeled "Made with Organic [specified ingredients]," of cleansing agents made with petrochemicals (such as Cocamidopropyl Betaine). Not even the permissive OASIS standard allows the inclusion of such cleaning agents in a product labeled "Made with Organic [specified ingredients]."

**FIRST CAUSE OF ACTION**

**(For Unfair Competition and Misleading Advertising [Cal. Bus. & Prof. Code § 17200])**

**(Against Defendants Hain Celestial, Kiss My Face, Levlad, Juice Beauty, YSL Beaute, Country Life, Giovanni and Cosway)**

135. Plaintiff realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 134, above.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

136. The labeling, advertising, representations and offering for sale, by each of Defendants Hain Celestial, Kiss My Face, Levlad, Juice Beauty, YSL Beaute, Country Life, Giovanni and Cosway, of each of its personal care products, as alleged herein, are misleading, confusing and deceptive to reasonable consumers because a reasonable consumer would not regard as "Organic," "Organics," "100% Organic Active Ingredients," "The Organic Solution," or "Organic Cosmetics," a product that does not meet the requirements of the NOP criteria for being labeled "Organic," which criteria reflect basic organic consumer expectations and criteria that "Organic" personal care products be made from organic, not conventional, agricultural material, and be free of hydrogenated, sulfated and synthetically preserved ingredients, or petrochemical compounds of any kind.

137. The labeling, advertising, representations and offering for sale, by each Defendant, of each of its personal care products, as alleged herein, as "Organic," "Organics," "100% Organic Active Ingredients," "Made with Organic Ingredients," "The Organic Solution," or "Organic Cosmetics," are misleading and deceptive to reasonable consumers because: (1) a reasonable consumer would not regard as "Organic," "Organics," "100% Organic Active Ingredients," "The Organic Solution," or "Organic Cosmetics," any product the main cleansing ingredients of which are made from petrochemical compounds and/or derived from conventional, rather than organic, agricultural materials; and (2) no reasonable consumer would believe that any product was properly labeled using any of these terms, if such product contained hydrogenated, sulfated and/or synthetically preserved ingredients.

138. Dr. Bronner's sells personal care products which directly compete with Defendants' personal care products in California and throughout the United States, for the business of consumers desiring to purchase products such consumers consider to be "Organic" or "Made with Organic [specified ingredients]."

139. The labeling of a personal care product as "Made with Organic Oils", in accordance with the USDA NOP rules, as Dr. Bronner's does, ensures consumers that the cleansing ingredients in such product are made with organic material with no petrochemical compounds or preservatives.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

140. A reasonable consumer desiring to purchase a personal care product that such consumer considers "Organic" would purchase a product labeled "Organic" rather than one labeled "Made with Organic [up to three specified ingredients]."

141. Dr. Bronner's sells products that are properly and truthfully labeled in accordance with the NOP criteria as being certified "made with Organic Oils." All of the cleansing and moisturizing ingredients in these products are made from organic material without petrochemical compounds, and thus meet basic organic consumer criteria.

142. A reasonable consumer would view Dr. Bronner's products that are labeled as "Made with Organic Oils" as being "less organic" than the Defendants' personal care products. Yet Dr. Bronner's personal care products would in fact be regarded by such a consumer as being *more* organic that the Defendants' personal care products, if such consumer were aware of the true nature of the ingredients of the subject products, because Defendants' products use cleansing agents made from conventional rather than organic agricultural material.

143. A reasonable consumer desiring to purchase a personal care product that such consumer considers "Organic" would not purchase a product that contains petrochemicals and the cleansing ingredients of which are made from conventional, rather than organic, agricultural material, if such consumer were aware of these facts, but would instead look for another brand, such as Dr. Bronner's, that has no petrochemicals and that has cleansing ingredients made from certified organic agricultural material.

144. Many consumers are not aware of the true ingredients and composition of Defendants' products but instead, relying on the labeling of these products as "Organic," "Organics," "100% Organic Active Ingredients," "The Organic Solution," or "Organic Cosmetics," believe that the products so labeled do not contain any petrochemicals or petrochemical compounds, or cleansing ingredients made from or including such petrochemicals or compounds, and believe that the cleansing ingredients in these products are made from organic, rather than conventional, agricultural material.

145. For the reasons set forth in paragraphs 135-144, many consumers are being misled and deceived by Defendants' labeling and representation of their products as "Organic,"

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

"Organics," "100% Organic Active Ingredients," "The Organic Solution," or "Organic Cosmetics," to purchase Defendants' personal care products rather than Dr. Bronner's personal care products.

146. In fact, the main cleansing and moisturizing ingredients in Dr. Bronner's products are made from organic, rather than conventional, agricultural material. These products do not contain any petrochemicals and use only cleansing agents not made with petrochemicals.

147. A reasonable consumer of personal care products desiring to purchase a product such consumer considers "Organic" would, if such consumer was made fully aware of the true composition of these competing products, purchase Dr. Bronner's products rather than the products of any of the Defendants.

148. A reasonable consumer of personal care products desiring to purchase a product using cleansing ingredients not made from any petrochemicals or petrochemical compounds would, if such consumer was made fully aware of the true composition of these competing products, purchase Dr. Bronner's products rather than the products of any of the Defendants.

149. A reasonable consumer of personal care products desiring to purchase a product using cleansing agents made only from organic, rather than conventionally produced, agricultural materials, would, if such consumer was made fully aware of the true composition of these competing products, purchase Dr. Bronner's products rather than the products of any of the Defendants.

150. By advertising, labeling, representing and offering for sale as "Organic," "Organics," "100% Organic Active Ingredients," "The Organic Solution," and/or "Organic Cosmetics" products which a reasonable consumer would not regard as "Organic" or as properly labeled using any of these terms, if such consumer understood the true composition of such products, each Defendant has increased its share of the retail market for personal care products regarded as "Organic" by consumers, at the expense of Dr. Bronner's.

151. Accordingly, the labeling, advertising, representation and offering for sale, by each Defendant, of its products as "Organic," "Organics," "100% Organic Active Ingredients," "The

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

Organic Solution," or "Organic Cosmetics," as alleged herein, has unfairly harmed, monetarily damaged and continues to harm the business of Dr. Bronner's.

152. Thus, Dr. Bronner's is a person who has suffered injury in fact and has actually lost money as a result of Defendants' unfair competition, within the meaning of Cal. Bus. & Prof. Code § 17204.

153. Each Defendant has violated Cal. Bus. & Prof. Code § 17200 by engaging in unfair and fraudulent business practices and unfair, deceptive, untrue and misleading advertising.

**SECOND CAUSE OF ACTION**

**(For Unfair Competition and Misleading Advertising [Cal. Bus. & Prof. Code § 17200])**

**(Against Defendant Estee Lauder)**

154. Plaintiff realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 153, above.

155. When Defendant Estee Lauder begins to advertise, label, represent and offer for sale its Aveda liquid soap and body cleanser products as "Organic" based on the OASIS standard, such labeling and advertising will constitute misleading and deceptive representations to reasonable consumers because Aveda products include primary cleansing and moisturizing ingredients that are hydrogenated and/or sulfated, and preserved with synthetic petrochemical preservatives. Certification pursuant to the OASIS standard would also permit such primary cleansing ingredients to be derived from conventional rather than organic agricultural material on a temporary basis, and to consist of less than 95% organic ingredients.

156. When Defendant Estee Lauder begins to advertise, label, represent and offer for sale its Aveda personal care products as "Organic" based on the OASIS standard, such labeling and advertising will constitute misleading and deceptive representations to reasonable consumers because Aveda products contain moisturizing and cleansing agents made from conventional, rather than organic, agricultural materials, that are hydrogenated and/or sulfated; and because no reasonable consumer would believed that such a product is "Organic" or could properly be labeled as "Organic."

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

157. Dr. Bronner's sells personal care products certified and labeled as "Organic" and "Made With Organic [up to three specified ingredients]" which directly compete with Estee Lauder's Aveda personal care products for the business of consumers, in California and throughout the United States, desiring to purchase products made with "Organic" ingredients.

158. A reasonable consumer desiring to purchase a personal care product whose main moisturizing and cleansing ingredients are made from organic material, free of hydrogenation and sulfation and synthetic preservatives, would purchase a product labeled "Organic" rather than one labeled "Made with Organic [specified ingredients]." Such a consumer would assume that the product labeled "Organic" contained a greater portion of organic ingredients than the product labeled "Made with Organic [specified ingredients]."

159. A reasonable consumer desiring to purchase a personal care product that such consumer considers "Organic" would not purchase a product the main cleansing ingredients of which are hydrogenated and/or sulfated, preserved with petrochemical preservatives, or are made from conventional, rather than organic, agricultural material, if such consumer were aware of these facts, but would instead look for another brand, such as Dr. Bronner's, that has no petrochemical preservatives and the cleansing ingredients of which are made from certified organic agricultural material.

160. Many consumers, unaware of the true ingredients and composition of Aveda products, will instead, relying on the labeling of these products as "Organic," believe that the products so labeled will have cleansing ingredients in these products which are made from organic rather than conventional agricultural material and which have not been hydrogenated, sulfated or synthetically preserved.

161. For the reasons set forth in paragraphs 154-160, many consumers will be misled by Estee Lauder's labeling of its Aveda products as "Organic" to purchase Aveda personal care products rather than Dr. Bronner's products.

162. In fact, however, Dr. Bronner's personal care products' main ingredients are made from organic material, with no hydrogenation, sulfation or synthetic preservatives.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

163. A reasonable consumer of personal care products desiring to purchase a product the main ingredients of which are made from organic material without hydrogenation , sulfation or synthetic preservations, would, if such consumer was made fully aware of the true composition of these competing products, purchase Dr. Bronner's products rather than Aveda products.

164. By advertising, labeling, representing and offering for sale as "Organic" products which no reasonable consumer, if such consumer understood the true composition of such products, would regard as "Organic" or as properly labeled as "Organic," Estee Lauder will increase its share of the retail market for organic personal care products, at the expense of Dr. Bronner's.

165. Dr. Bronner's is also a person who has lost money or property based on the loss of staff time in investigating Estee Lauder's plan imminently to engage in unfair and fraudulent business practices within the meaning of Cal. Bus. & Prof. Code § 17203 and in violation of § 17200, and has suffered a diversion of staff time including communications with Estee Lauder to discuss a portion of Estee Lauder's plan.

166. Dr. Bronner's has suffered actual injury based on loss of financial resources in investigating and dealing with Estee Lauder's plan and based on diversion of staff time from Dr. Bronner's normal ongoing business activities.

167. Accordingly, the labeling, advertising, representing and offering for sale, by Estee Lauder of its Aveda products as "Organic" as alleged herein, will harm and has harmed the business of Dr. Bronner's.

168. Dr. Bronner's is a person who will suffer and has suffered injury in fact and will actually lose money as a result of Estee Lauder's unfair competition, within the meaning of Cal. Bus. & Prof. Code § 17204.

169. Estee Lauder is a person threatening, planning, and proposing to engage in unfair and fraudulent business practices and unfair, deceptive, untrue and misleading advertising, within the meaning of Cal. Bus. & Prof. Code § 17203 and in violation of § 17200.

**THIRD CAUSE OF ACTION**

**(For Unfair Competition and Misleading Advertising [Cal. Bus. & Prof. Code § 17200])**

**(Against Defendants OASIS and Ecocert)**

170. Plaintiff realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 169, above.

171. The planned certification by the OASIS trade association of personal care products as "Organic" based on the OASIS standard will be misleading and deceptive to reasonable consumers because a reasonable consumer would not regard as "Organic" any such product containing main moisturizing and cleansing ingredients that have been hydrogenated, sulfated or preserved with petrochemical preservatives or containing cleansing ingredients derived solely from conventional, rather than organic, agricultural materials, though such products meet the OASIS standard and, on information and belief, will be certified by OASIS as "Organic."

172. Dr. Bronner's sells personal care products labeled as both "Organic" and "made with Organic [up to three ingredients]," which personal care products directly compete with products that will be certified by the OASIS trade association, for the business of consumers, in California and throughout the United States, desiring to purchase "Organic" products made with "Organic" ingredients.

173. A reasonable consumer desiring to purchase a personal care product, the main cleansing and moisturizing ingredients of which are made from organic material, would purchase a product labeled "Organic" rather than one labeled "Made with Organic [up to three specified ingredients]." Such a consumer would assume that the product labeled "Organic" would contain main moisturizing and cleansing ingredients made from organic material, and in greater portion than the product labeled "Made with Organic [specified ingredients]."

174. A reasonable consumer desiring to purchase a personal care product that such consumer considers "Organic" would not purchase a product that contains petrochemical preservatives or a product with cleansing ingredients that are hydrogenated or sulfated, or made from conventional, rather than organic, agricultural material, if such consumer were aware of these facts. Such a consumer would instead look for another brand, such as Dr. Bronner's

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

products, the main moisturizing and cleansing ingredients of which are made from certified organic agricultural material, with no hydrogenated, sulfated or synthetically preserved ingredients.

175. Many consumers will not be aware of the true ingredients and composition of products certified as "Organic" by the OASIS trade association but instead, relying on the labeling of these products as "Organic," will believe that the products so labeled do not contain main cleansing and moisturizing ingredients that are hydrogenated, sulfated, synthetically preserved, or are made from conventional, rather than organic, agricultural material.

176. For the reasons set forth in paragraphs 170-175, many consumers will be misled by the certification of products by the OASIS trade association as "Organic" to purchase such products rather than Dr. Bronner's soap products.

177. In fact, however, the main ingredients in Dr. Bronner's personal care products are made from organic, not conventional, material without hydrogenation or sulfation, and do not contain any petrochemical preservatives as the OASIS trade association standard allows.

178. A reasonable consumer of personal care products desiring to purchase a product such a consumer considers "Organic" would if such consumer was made fully aware of the true composition of these competing products, purchase Dr. Bronner's products rather than products certified as "Organic" by the OASIS trade association.

179. A reasonable consumer of personal care products desiring to purchase a product using cleansing and moisturizing agents made only from organic, rather than conventionally produced, agricultural materials, would, if such consumer was made fully aware of the true composition of these competing products, purchase Dr. Bronner's products rather than products certified as "Organic" by the OASIS trade association.

180. By certifying products as "Organic" that meet the OASIS trade association standard but contain petrochemical preservatives and/or cleansing agents made from conventional rather than organic agricultural materials, as well as hydrogenated and/or sulfated ingredients, the OASIS trade association will cause Dr. Bronner's competitors to increase their share of the retail market for personal care products at the expense of Dr. Bronner's.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

181. Unless the OASIS trade association is enjoined from certifying such products, Dr. Bronner's will lose business to Defendants Estee Lauder, Hain Celestial, Cosway and others, as a result of the fact that Defendant OASIS's certification of these products as "Organic" constitutes an unfair and unlawful business practice and false and deceptive advertising, in that consumers who want to purchase only organic body care products will be misled into buying these OASIS-certified products instead of organic body, skin and hair products.

182. Defendant Ecocert has issued a purported industry standard that requires a product to be 100% organic in content if it is labeled outright as "Organic," and allows a product with less organic content to be labeled only as being "Made with Organic [specified ingredients]."

183. Nevertheless, Ecocert has in fact certified body and skincare products, including some made by Defendant YSL Beaute, Inc., which make outright "Organic" or "100% Organic" claims, that use cleansing agents containing no organic material and/or made in part with petrochemicals, and thus are substantially less than 100% organic.

184. Ecocert has certified body and skincare products to be labeled as "Organic" in cases in which the products so labeled do not meet the requirements of Ecocert's own standards for being so labeled and which products are not "Organic" as that term is understood by reasonable consumers.

185. Ecocert, in addition, has certified body and skincare products as being "Organic" based on inclusion in such products of water extracts of botanical material, even if such water extracts are five to twenty times the weight of the starting botanical material.

186. Ecocert permits main cleansing ingredients to contain petrochemical compounds, such as Cocamidopropyl Betaine, in products certified as "Made with Organic [specified ingredients]." Not even the OASIS standard permits petrochemicals in cleansing ingredients.

187. Dr. Bronner's sells personal care products labeled as "Made with Organic Oils," which directly compete with products (including certain products manufactured and sold by Defendant YSL Beaute, Inc.) that have been and are certified by Ecocert, for the business of consumers, in California and throughout the United States, desiring to purchase products made with "Organic" ingredients.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

188. A reasonable consumer desiring to purchase a personal care product such consumer considers "Organic" would purchase a product labeled "Organic" rather than one labeled "Made with Organic [up to three ingredients]." Such a consumer would assume that the product labeled "Organic" would be more organic than the product labeled "Made with Organic [up to three ingredients]."

189. A reasonable consumer desiring to purchase a personal care product that such consumer considers "Organic" would not purchase a product that contains petrochemical preservatives or main cleansing and moisturizing ingredients made from conventional, rather than organic, agricultural material, if such consumer were aware of these facts. Such a consumer would instead look for another brand, such as Dr. Bronner's, that contains no petrochemicals and contains cleansing and moisturizing ingredients made from certified organic agricultural material.

190. Many consumers are not aware of the true ingredients and composition of products certified as "Organic" by Ecocert but instead, relying on the labeling of these products as "Organic," believe that the products so labeled do not contain any petrochemicals and believe that the cleansing ingredients in these products are made from organic rather than conventional agricultural material.

191. For the reasons set forth in paragraphs 182-190, consumers have been and will be misled by the certification of products by Ecocert as "Organic" to purchase such products rather than Dr. Bronner's products.

192. In fact, however, Dr. Bronner's products' main cleansing ingredients are made from organic material whereas most if not all Ecocert-certified products are not. Dr. Bronner's products do not contain any petrochemicals and exclusively use cleansing agents which are made from organic, rather than conventional, agricultural material.

193. A reasonable consumer of personal care products desiring to purchase a product such consumer regarded as "Organic" would, if such consumer was made fully aware of the true composition of these competing products, purchase Dr. Bronner's products rather than products certified as "Organic" by Ecocert.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

194. A reasonable consumer of personal care products desiring to purchase a product using cleansing ingredients not made from any petrochemical compounds would, if such consumer was made fully aware of the true composition of these competing products, purchase Dr. Bronner's products rather than products certified as "Organic" by Ecocert.

195. A reasonable consumer of personal care products desiring to purchase a product using cleansing agents made only from organic, rather than conventionally produced, agricultural materials, would, if such consumer was made fully aware of the true composition of these competing products, purchase Dr. Bronner's products rather than products certified as "Organic" by Ecocert.

196. By certifying as "Organic" or "100% Organic" products that contain far less than 100% certified organic ingredients and the main cleansing and moisturizing ingredients of which are not organic, Ecocert has caused Dr. Bronner's competitors to increase their share of the retail market for personal care products, at the expense of Dr. Bronner's.

197. By certifying as "Organic" or "100% Organic" products that contain petrochemical preservatives and/or cleansing agents made from conventional and/or petrochemical material rather than organic material, Ecocert has caused Dr. Bronner's competitors to increase their share of the retail market for personal care products, at the expense of Dr. Bronner's.

198. Unless Ecocert is enjoined from certifying such products, Dr. Bronner's will continue to lose business to other companies as a result of the fact that Defendant Ecocert's certification of these products as "Organic" constitutes an unfair and unlawful business practice and false and deceptive advertising, in that consumers who want to purchase only organic body care products will be misled and deceived into buying these Ecocert-certified products instead of organic body, skin and hair products.

199. Accordingly, certification of personal care products as "Organic" by Ecocert, as alleged herein, has harmed the business of Dr. Bronner's.

200. Dr. Bronner's is a person who has suffered injury in fact and has lost money as a result of Ecocert's unfair competition, within the meaning of Cal. Bus. & Prof. Code § 17204.

201. Ecocert has violated Cal. Bus. & Prof. Code § 17200 by engaging in unfair and fraudulent business practices and unfair, deceptive, untrue and misleading advertising.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands:

(1) that each of Defendants Hain Celestial, Kiss My Face, Levlad, Juice Beauty, YSL Beaute, Country Life, Giovanni, and Cosway herein be permanently enjoined from advertising, labeling, representing or offering for sale within the State of California, as "Organic," "Organics," "100% Organic Active Ingredients," "Made with Organic Ingredients" (without specifying ingredients) "The Organic Solution," or "Organic Cosmetics," any product which could not be labeled as "Organic" under the USDA NOP criteria which properly reflect basic organic consumer expectations and criteria for personal care, and/or which contains any cleansing or moisturizing ingredient made in any part from any petrochemical or petrochemical compound; and/or which contains any cleansing or moisturizing ingredient not made exclusively from organic rather than conventional organic material;

(2) that each of Defendants Hain Celestial, Kiss My Face, Levlad, Juice Beauty, YSL Beaute, Country Life, Giovanni, and Cosway herein be permanently enjoined from advertising, labeling, representing or offering for sale within the State of California as "Made with Organic [up to three specified ingredients]" any product unless such product (i) is composed of at least 70% certified organic ingredients; (ii) does not contain any cleansing or moisturizing ingredient made in any part from any petrochemical or petrochemical compound; and (iii) does not contain any cleansing or moisturizing ingredient which is not made exclusively from organic rather than conventional organic material except to the extent organic material is not commercially available;

(3) that Defendant Estee Lauder be permanently enjoined from advertising, labeling, representing or offering for sale within the State of California, as "Organic," based on the OASIS standard or on any other basis, any product which cannot lawfully be labeled as "Organic" under the NOP criteria which properly reflect organic consumer expectations and criteria for personal care products, which OASIS does not;

(4) that Defendants OASIS and Ecocert be permanently enjoined from certifying as

"Organic" any product for sale within the State of California which cannot lawfully be labeled as "Organic" under the NOP criteria, which NOP criteria properly reflects and incorporates basic organic consumer expectations and criteria that OASIS and Ecocert do not;

(5) that Defendant Ecocert be permanently enjoined from certifying as "Made with Organic [up to three specified ingredients]" any product which does not meet basic organic consumer criteria, namely: (i) is composed of less than 70% certified organic ingredients, not including the water in organic botanical extracts as an "organic" ingredient; (ii) contains cleansing or moisturizing ingredients made in any part from any petrochemical or petrochemical compound; (iii) contains cleansing ingredients not made exclusively from organic, rather than conventional, agricultural material, except to the extent such organic agricultural material is not commercially available;

(6) the reasonable costs of suit herein incurred; and

(7) such other relief as the Court deems just and proper.

Dated: August 6, 2008

FARELLA BRAUN & MARTEL LLP

By: [signature]
John L. Cooper

Attorneys for Plaintiffs
ALL ONE GOD FAITH, INC.,
d/b/a DR. BRONNER'S MAGIC SOAPS,
a California corporation

Of Counsel:

Joseph E. Sandler
John Hardin Young
SANDLER, REIFF & YOUNG, P.C.
300 M Street, S.E. #1102
Washington, D.C. 20003

**PROOF OF SERVICE**

I, Barbara Westburg, declare:

I am a citizen of the United States and employed in San Francisco County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 235 Montgomery Street, 17th Floor, San Francisco, California 94104. On August 6, 2008, I served a copy of the within document(s):

**FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AGAINST UNFAIR AND UNLAWFUL BUSINESS ACTS AND PRACTICES AND DECEPTIVE AND FALSE ADVERTISING**

☒ by **E-MAIL** by transmitting via e-mail the document(s) listed above to the e-mail address(es) set forth below on this date before 5:00 p.m.

Thomas H. Clarke, Jr.
Timothy A. Dolan
Ropers, Majeski, Kohn & Bentley
201 Spear Street, Suite 1000
San Francisco, CA 94105
T: (415) 543-4800
F: (415) 972-6301
E-mail: tclarke@ropers.com
tdolan@ropers.com

Attorneys for Ecocert, Inc. and Ecocert France (SAS)

Simon J. Frankel
Meg Wilkinson
Covington & Burling LLP
One Front Street
San Francisco, CA 94111-5356
T: (415) 591-6000
F: (415) 591-6091
E-mail: sfrankel@cov.com
mwilkinson@cov.com

Attorneys for The Hain Celestial Group, Inc., Kiss My Face Corporation and Levlad, Inc.

William J. Friedman
Law Offices of William J. Friedman
107 S. West Street
Alexandria, VA 22314
E-mail: pedlarfarm@gmail.com

Attorneys for The Hain Celestial Group, Inc., Kiss My Face Corporation and Levlad, Inc.

Kathleen D. Patterson
Rocky C. Tsai
Orrick, Herrington & Sutcliffe LLP
405 Howard Street
San Francisco, CA 94105-2669
T: (415) 773-5700
F: (415) 773-5759
E-mail: kpatterson@orrick.com;
rtsai@orrick.com

Attorneys for Estee Lauder, Inc.

James M. Mattesich
Marc B. Koenigsberg
Angela Diesch
Greenberg Traurig LLP
1201 K Street, Suite 1100
Sacramento, CA 95814-3938
T: (916) 442-1111
F: (916) 448-1709
E-mail: mattesichj@gtlaw.com
koenigsbergm@gtlaw.com
diescha@gtlaw.com

Attorneys for YSL Beaute, Inc.

Rhonda Klick, Esq.
Westrup Klick LLP
444 West Ocean Blvd., Suite 1614
Long Beach, CA 90802-4524
T: (562) 432-2551
F: (562) 435-4856
E-mail: rklick@wkalaw.com

Attorneys for Cosway Company, Inc.

David Greene
James R. Wheaton
First Amendment Project
1736 Franklin Street, 9th Floor
Oakland, CA 94612-3442
T: (510) 208-7744
F: (510) 208-4562
E-mail: dgreene@thefirstamendment.org
wheaton@thefirstamendment.org

Attorneys for Organic and Sustainable Industry Standards, Inc.

David Gurnick
Stephen T. Holzer
Lewitt, Hackman, Shapiro, Marshall & Harlan LLP
16633 Ventura Boulevard, 11th Floor
Encino, CA 91436-1865
T: (818) 907-3285
F: (818) 981-4764
E-mail: dgurnick@lewitthackman.com
sholzer@lewitthackman.com

Attorneys for Giovanni Cosmetics, Inc.

Benjamin K. Riley
Howrey LLP
525 Market Street, Suite 3600
San Francisco, CA 94105-2708
T: (415) 848-4950
F: (415) 848-4999
E-mail: rileyb@howrey.com

Attorneys for Country Life, LLC

Karen Behnke
Juice Beauty
711 Grand Avenue, Suite 290
San Rafael, CA 94901
T: (415) 457-4600 x239
F: (415) 457-4605
E-mail: karen@juicebeauty.com

Alan M. Mayer
Law Offices of Alan M. Mayer, Inc.
1120 Nye Street, Suite 200
San Rafael, CA 94901
T: (415) 457-4082
F: (415) 457-6439
E-mail: mayerlaw1@aol.com

Attorney for Juice Beauty, Inc.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on August 6, 2008, at San Francisco, California.

Barbara Westburg