ORIGINAL

1  John L. Cooper (State Bar No. 50324)
      jcooper@fbm.com
2  Morgan T. Jackson (State Bar No. 250910)
      mjackson@fbm.com
3  FARELLA BRAUN & MARTEL LLP
   235 Montgomery Street, 17th Floor
4  San Francisco, CA 94104
   Telephone: (415) 954-4400
5  Fax: (415) 954-4480

6  Attorneys for Plaintiff
   ALL ONE GOD FAITH, INC., d/b/a DR.
7  BRONNER'S MAGIC SOAPS, a California
   corporation

8

9            IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                IN AND FOR THE COUNTY OF SAN FRANCISCO

11

12  ALL ONE GOD FAITH, INC., d/b/a DR.        Case No.  474701
    BRONNER'S MAGIC SOAPS, a
13  California corporation,                   **SECOND AMENDED COMPLAINT FOR**
                                              **DAMAGES FOR AND INJUNCTIVE**
14           Plaintiff,                       **RELIEF AGAINST FALSE ADVERTISING**
                                              **IN VIOLATION OF SECTION 43(A) OF**
15       vs.                                  **THE LANHAM ACT**

16  THE HAIN CELESTIAL GROUP, INC., a
    Delaware corporation; KISS MY FACE
17  CORPORATION, a New York
    corporation; LEVLAD, LLC, a California
18  limited liability company; YSL BEAUTE,
    INC., a New York corporation;
19  GIOVANNI COSMETICS, INC., a
    California corporation; COSWAY
20  COMPANY, INC., a California
    corporation; COUNTRY LIFE, LLC, a
21  New York limited liability company;
    ORGANIC AND SUSTAINABLE
22  INDUSTRY STANDARDS, INC., a
    Nevada corporation; ECOCERT FRANCE
23  (SAS), a French corporation; and
    ECOCERT, INC., a Delaware corporation;

24           Defendants.

25

26       Plaintiff All One God Faith, Inc., d/b/a Dr. Bronner's Magic Soaps ("Dr. Bronner's"), for

27  its Second Amended Complaint, hereby alleges as follows:

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

23183\1976669.3
23183\1976669.4

SECOND AMENDED COMPLAINT

F I L E D
Superior Court of California
County of San Francisco

JUL 0 1 2009

GORDON PARK-LI, Clerk
BY: _____ Deputy Clerk

## GENERAL ALLEGATIONS

1.      Plaintiff Dr. Bronner's is, and at all times herein mentioned was, a California corporation qualified to do business in California.  Its principal place of business is located at 2751 Auto Park Way, Escondido, CA 92029.

2.      Defendant The Hain Celestial Group, Inc. ("Hain Celestial") is, and at all times herein mentioned was, a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Melville, New York, registered with the California Secretary of State as a foreign corporation qualified to do business in California, and doing business in the County of San Francisco, State of California.

3.      Defendant Kiss My Face Corporation ("Kiss My Face") is, and at all times herein mentioned was, a corporation organized and existing under the laws of the State of New York, with its principal place of business located in Gardiner, New York, registered with the California Secretary of State as a foreign corporation qualified to do business in California, and doing business in the County of San Francisco, State of California.

4.      Defendant Levlad, LLC ("Levlad") is, and at all times herein mentioned was, a limited liability company organized and existing under the laws of the State of California, with its principal place of business located in Chatsworth, California and doing business in the County of San Francisco, State of California.

5.      Defendant YSL Beaute, Inc. ("YSL") is, and at all times herein mentioned was, a corporation organized and existing under the laws of the State of New York, with its principal place of business located in New York, New York, registered with the California Secretary of State as a foreign corporation qualified to do business in California, and doing business in the County of San Francisco, State of California.

6.      Defendant Giovanni Cosmetics, Inc. ("Giovanni") is, and at all times herein mentioned was, a corporation organized and existing under the laws of the State of California, with its principal place of business located in Compton, California and doing business in the County of San Francisco, State of California.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

23183\1976669.3
23183\1976669.4

SECOND AMENDED COMPLAINT

1       7.     Defendant Cosway Company, Inc. ("Cosway") is, and at all times herein

2 mentioned was, a corporation organized and existing under the laws of the State of California,

3 with its principal place of business located in Carson, California and doing business in the County

4 of San Francisco, State of California.

5       8.     Defendant Country Life, LLC ("Country Life") is, and at all times herein

6 mentioned was, a limited liability company organized and existing under the laws of the State of

7 New York, with its principal place of business located in Hauppauge, New York, registered with

8 the California Secretary of State as a foreign corporation qualified to do business in California,

9 and doing business in the County of San Francisco, State of California.

10       9.     Defendant Organic and Sustainable Industry Standards, Inc. ("OASIS") is, and at

11 all times herein mentioned was, a corporation organized and existing under the laws of the State

12 of Nevada, with its principal place of business located in Milpitas, California and doing business

13 in the County of San Francisco, State of California.

14       10.     Defendant Ecocert France (SAS) ("Ecocert France") is a French corporation doing

15 business in the County of San Francisco, State of California.

16       11.     Defendant Ecocert, Inc. ("Ecocert U.S."), is an affiliate of Ecocert France; is a

17 corporation organized and existing under the laws of the State of Delaware, with its principal

18 place of business in the City and County of San Francisco, California; is registered with the

19 California Secretary of State as a foreign corporation qualified to do business in California; and is

20 doing business in the County of San Francisco, State of California.

21       12.     As set forth in detail below, Hain Celestial, Kiss My Face, Levlad, YSL, Giovanni,

22 Cosway and Country Life (the "Count One Defendants") sell liquid soaps, bodywashes, facial

23 cleansers, shampoos, conditioners, lip balms and/or moisturizing lotions ("personal care

24 products") in competition with liquid soaps, bodywashes, facial cleansers, shampoos,

25 conditioners, lip balms and/or moisturizing lotions manufactured and sold by plaintiff Dr.

26 Bronner's. Count One Defendants have, throughout the nation, in interstate commerce, labeled,

27 advertised, and marketed their products as "Organic" or "Organics," (for example, "Nature's Gate

28 Organics," "Desert Essence Organics"). In fact none of the subject products are "Organic" as

Fawds Brown & Martel LLP
215 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

23183\1976669.3
23183\1976669.4

1  those terms are understood by a substantial segment of the consuming public at which this
2  promotion, labeling and advertising is and has been directed.  Thus such labeling and advertising
3  is literally false, is false by implication and has also misled, confused and deceived a substantial
4  segment of its targeted audience, namely, the consuming public desiring to purchase personal care
5  products that are organic or are made with organic ingredients; and has therefore actually
6  deceived and has the tendency to deceive a substantial segment of that consuming public.

7      13.    The deceptive and false labeling, advertising and promotion by Count One
8  Defendants of their products as "Organic," as described in paragraph 12 and in more detail below,
9  has influenced the purchasing decisions of consumers in that consumers who want to purchase
10  body care products that such consumers consider "Organic" or "Made with Organic [specified
11  ingredients]" have been misled into buying Count One Defendants' products which are
12  deceptively labeled "Organic" instead of the truly organic products made by Dr. Bronner's.  Dr.
13  Bronner's has suffered monetary damages through diversion of sales from itself to Count One
14  Defendants as a result of their false advertising.

15      14.    For the reasons stated in paragraphs 12 and 13, Count One Defendants' labeling of
16  their products as "Organic" constitutes false advertising, namely, a use in interstate commerce of
17  a false or misleading description of fact or false or misleading representation of fact which, in
18  commercial advertising and promotion, misrepresents the nature, characteristics and qualities of
19  defendants' goods, within the meaning and in violation of section 43(a) of the Lanham Act, 15
20  U.S.C. § 43(a)(1)(B).

21      15.    Defendant OASIS is a commercial trade association, the members of which
22  include personal care product manufacturers, including some of the other defendants in this
23  action, and ingredient suppliers and distributors.  OASIS acts on behalf of its members in the
24  marketplace and is designed to promote the sale of personal care products. OASIS has developed,
25  and on information and belief, has issued a purported standard for "organic" personal care
26  products.  OASIS has developed a logo for its standard that it has or will imminently register as a
27  certification mark with the United States Patent and Trademark Office.  In the imminent future
28  OASIS will authorize its members to label personal care products as "Organic," as "Verified

Fenic Rean & Mand LLP
215 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

23183\1976669.3
23183\1976669.4

1   Organic to OASIS Standard 100," and to bear OASIS' registered certification mark. These acts

2   are statements by OASIS that the products so certified and labeled are organic. Only OASIS'

3   members will be authorized to advertise and label products as organic pursuant to OASIS'

4   standard. Personal care product companies must pay a fee to become members and gain access to

5   the OASIS standard.

6       16.     Only members of OASIS who have or are seeking certification of a product to the

7   OASIS standard may vote on the OASIS standard. The new OASIS Standard 100 allows a

8   personal care product to be labeled as "Organic" even if the product contains main cleansing

9   agents made entirely from non-organic material that has been hydrogenated and/or sulfated,

10  and/or is preserved with synthetic petrochemicals, as alleged in more detail below.

11      17.     Defendant OASIS' imminent statements that products are "Organic" will

12  constitute commercial advertising and promotion that misrepresents the nature, characteristics and

13  qualities of these products within the meaning of section 43(a)(1)(B) of the Lanham Act and

14  therefore constitutes false advertising in violation of section 43(a)(1)(B). This deceptive and false

15  advertising and promotion is likely to influence the purchasing decisions of consumers, in that

16  consumers who want to purchase only body care products that they consider organic will be

17  confused and misled into buying these OASIS-certified products instead of the truly organic

18  personal care products manufactured and sold by Dr. Bronner's. Unless OASIS is enjoined from

19  such deceptive certification and promotion of products, Dr. Bronner's will further lose business to

20  the companies obtaining such certification and labeling their products as "Organic" based on such

21  certification and using OASIS' registered certification mark on products, and part of the sales

22  revenue lost to Dr. Bronner's will be diverted directly to OASIS in the form of fees and dues

23  charged by OASIS to companies obtaining certification of their products from OASIS.

24      18.     OASIS is a direct competitor of Dr. Bronner's because OASIS consists of and acts

25  on behalf of personal care product manufacturers who are Dr. Bronner's' direct competitors.

26      19.     Defendant Ecocert France is a certifying organization based in Europe and

27  operating throughout the world. Defendant Ecocert U.S. performs certification activities in the

28  United States on behalf of Ecocert-affiliated companies.

Foote Pham & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

23183\1976669.3
23183\1976669.4

20.   Ecocert France and/or its affiliates including but not limited to Ecocert U.S. (hereinafter collectively referred to as "Ecocert") have issued an industry standard that requires a product to be 100% organic in content if it is labeled outright as "Organic," and otherwise must make a more restricted "Made with Organic [specified ingredient]" claim. However the Ecocert standard contradicts that policy in mandating that products certified under the standard with as little as 10% organic content should be described in marketing information as a "Natural and Organic Cosmetic certified by Ecocert." Further, Ecocert has in fact certified personal care products, including some made by Defendant YSL, that make outright "Organic" or "100% Organic" front label product claims, but which use cleansing agents that contain no organic material and/or that include cleansing agents made in part with petrochemicals, thus falsely representing to consumer that those products are "100% Organic" or "Organic."

21.   Ecocert's standards permit the main cleansing ingredients in bodywashes and shampoos to be made from conventional agricultural material combined with petrochemical material, such as Cocamidopropyl Betaine. A substantial segment of the consuming public at which Ecocert's certifications are directed, seeking to purchase bodywash and shampoo products which such consumers consider to be "Organic," does not expect any petrochemical material to be included in the main ingredients of such products.

22.   Further, as set forth in greater detail herein, Ecocert has certified body and skincare products to be labeled outright as "Organic" in violation of its own standard, in that many of the products so labeled are not "Organic" as that term is defined by Ecocert's standard, or as that term is understood by a substantial segment of the consuming public at which Ecocert's certifications are directed, and at which the promotion and advertising of companies selling Ecocert-certified personal care products, are directed.

23.   For the reasons set forth in paragraphs 20 through 22 and as set forth in more detail below, Ecocert's certification of body and skincare products as described in paragraphs 20 through 22 is literally false, is false by implication and has misled, confused and/or deceived the consuming public; and therefore has actually deceived or has the tendency to deceive a substantial segment of the consuming public at which such certifications are directed.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

23183\1976669.3
23183\1976669.4

24. Ecocert's deception has influenced and will influence the purchasing decisions of consumers. Specifically, Dr. Bronner's has lost business to Defendant YSL and other companies selling personal care products certified by Ecocert as a result of the fact that Defendant Ecocert's certification of these products as "Organic" constitutes false advertising, in that consumers who want to purchase only body care products that such consumers would consider to be "Organic" have been deceived and misled into buying these Ecocert-certified products, and will continue to be deceived and misled into buying these Ecocert-certified products, instead of truly organic body, skin and hair care products manufactured and sold by Dr. Bronner's.

25. For the reasons set forth in paragraphs 20 through 24, and as set forth in more detail below, Dr. Bronner's has been injured and is likely to be injured in the future as a result of Ecocert's false advertising, as a result of direct diversion of sales from Dr. Bronner's to companies selling body, skin and hair care products certified as "Organic" by Ecocert; and as a result of the fact that the part of the sales revenue lost to Dr. Bronner's will be diverted directly to Ecocert in the form of fees and dues charged by Ecocert to companies obtaining certification of their products from Ecocert; and as a result of the lessening of goodwill associated with Dr. Bronner's products.

## KEY AGENTS IN SUBJECT PRODUCTS

26. Skin, body and hair care products such as liquid soaps, body washes, cleansing gels and moisturizers, contain cleansing agents, known as "surfactants," and/or moisturizing agents, called "emollients," which are the main ingredients in such products. These skin, body and hair care products generally consist mostly of water (typically more than 70 percent).

27. It is common for manufacturers of such products seeking to brand or label them as "Organic" to use surfactants which are derived from petrochemicals or non-organic agricultural material that was produced through conventional, rather than recognized organic methods, and thus have been produced using synthetic fertilizers, pesticides and/or herbicides.

28. In turning such agricultural material—such as coconut oil—into a surfactant, a manufacturer may convert the oils into fatty alcohols, by tranesterifying the vegetable oil with methanol (a petrochemical) to make methyl esters, and then flow hydrogen through the methyl

- 7 -

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

2318311976669.3
2318311976669.4

SECOND AMENDED COMPLAINT

1     esters at high pressure in the presence of a metal catalyst. This process, known as hydrogentation,

2     breaks down the methyl esters, leaving fatty alcohols and methanol, which can then be recovered.

3     The resulting fatty alcohols can be used in their own right as emollient ingredients, or further

4     reacted with other agricultural or petrochemical compounds, to produce surfactants or ester

5     ingredients.

6           29.     In turning a fatty alcohol into a surfactant, a manufacturer may employ the process

7     of sulfation, which would entail introducing, in a falling film reactor, a sulfuric ester group

8     molecule into a fatty alcohol, such that sulfur from the sulfuric ester group molecule is linked

9     through an oxygen atom to the fatty alcohol molecule. Sulfuric ester molecules are petroleum

10     compounds derived as a byproduct of coal and petroleum refining. This process renders

11     agricultural material (fatty alcohol) effective as surface cleansing agents.

12          30.     A number of surfactants are made in part from petrochemicals, meaning that they

13     are derived in part from petroleum or natural gas. An example is Cocamidopropyl Betaine, which

14     is made by combining coconut oil with Amidopropyl Betaine, a petrochemical. This process

15     results in contamination with traces of the petrochemicals Sodium Monochloroacetate,

16     Amidoamine (AA) and Dimethylaminopropylamine (DMAPA). Amidoamine is suspected of

17     causing skin sensitization and allergic reactions even at very low levels for certain users.

18          31.     In some cases, surfactants are created, in part, through a chemical process known

19     as ethoxylation, in which the petrochemical (and carcinogenic) ethylene oxide (1,2-epoxyethane)

20     is added to fatty alcohols (derived from non-organic vegetable oils) to make them more soluble in

21     water, and thus more effective as a foaming and cleansing agent. This process results in 1,4-

22     Dioxane being created in at least trace amounts. 1,4-Dioxane is considered a chemical "known to

23     the State of California to cause cancer" under Proposition 65. In or about May, 2008, the

24     Attorney General of California filed suit against Hain Celestial and others for failing to disclose

25     1,4-Dioxane contamination of certain of their products. 1,4-Dioxane is present in various

26     Defendants' "Organic"-labeled products.

27

28

Fundie Fires & Martel LLP
215 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

- 8 -

SECOND AMENDED COMPLAINT

1     32.    Synthetic petrochemical preservatives present in Defendants' products are made

2     from non-organic petrochemical material, and synthetic preservatives as an ingredient class are

3     often implicated in consumer allergic reactions to personal care products.

4                                    LEGAL FRAMEWORK

5     A.     Federal Law: Production and Labeling

6     33.    The federal Organic Food Products Act of 1990, 7 U.S.C. §§ 6501 *et seq.*

7     ("OFPA"), requires the United States Department of Agriculture ("USDA") to implement a

8     National Organic Program ("NOP"), providing for establishment and enforcement of standards

9     for labeling of agricultural and food products as "Organic." Pursuant to this authority, USDA has

10    issued regulations establishing standards for growing and raising organic agricultural products,

11    7 C.F.R. Part 205, Subpart C, and governing use of the term "Organic" with regard to agricultural

12    and food products. 7 C.F.R. Part 205, Subpart D.

13    34.    OFPA requires that agricultural products labeled "Organic" be certified by a

14    certifying agent accredited by USDA, as meeting the requirements of the regulations, and forbids

15    the labeling as "Organic" of products that have not been so certified. 7 U.S.C. §§ 6514(a), 6515,

16    6519.

17    35.    In December 2000, USDA issued regulations implementing the OFPA. National

18    Organic Program, Final Rule, 65 Fed. Reg. 80548 (Dec. 21, 2000).

19    36.    To be considered "organically" produced, ingredients must be produced by farms

20    or processing operations certified by a state government or private certifying entity that is

21    accredited by USDA. 7 C.F.R. §§ 205.100, 205.300. Each production, handling or

22    manufacturing operation that produces any agricultural product intended to be labeled or sold as

23    "Organic" or "Made with Organic [specified ingredients]" must be certified by a USDA-

24    accredited certifying agent as meeting all the requirements of the NOP in its production facilities

25    and processes. 7 C.F.R. § 205.100. Certification indicates that the farm or processing operation

26    meets the standards for farming, production and handling set forth in the NOP regulations. *Id.*

27    § 205.2 (definition of "certified operation").

28

Fordia Braun & Martel LLP
215 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

23183\1976669.3
23183\1976669.4

SECOND AMENDED COMPLAINT

1    37.    The USDA National Organic Program regulates and monitors organic farming and

2    is essentially an organic product "truth in advertising" labeling program, where organic

3    consumers know they are buying products based on organic, not conventional, agriculture, free of

4    petrochemicals, preservatives and other unnecessary synthetic ingredients. Non-organic synthetic

5    allowances are tightly restricted, being made only after an extensive review process against strict

6    criteria: http://law.justia.com/us/cfr/title07/7-3.1.1.9.31.7.344.1.html

7    38.    Under the USDA regulations, a processed agricultural product sold or labeled as

8    "Organic" must "contain (by weight or fluid volume, excluding water and salt), not less than 95%

9    organically produced raw or processed agricultural products. Any remaining product ingredients

10   must be organically produced in accordance with standards set forth in the regulations, "unless

11   not commercially available in organic form, or must be nonagricultural substances or

12   nonorganically produced" products that are produced consistent with the regulatory standards.

13   7 C.F.R. § 205.301(b).

14   39.    The few permissible non-organic substances are specifically listed in the

15   regulations; any non-organic substance or synthetic, other than those listed, is not permitted to be

16   included in products labeled "Organic." 7 C.F.R. § 205.301(b).

17   40.    If a product may be labeled "Organic" under the USDA regulations, the term

18   "Organic" may be used on the label to modify the name of the product, *i.e.*, be in letters as large

19   as the name of the product itself. 7 C.F.R. § 205.303(a). The term "Organic" may be used on

20   labels *only* in accordance with these rules. *Id.* § 205.200.

21   41.    The USDA regulations also provide for another, separate category of products, at

22   least 70% of the contents of which consist of certified organic ingredients. The remaining 30% of

23   the contents can consist of conventional non-organic agricultural ingredients but the nature of

24   those ingredients is also restricted: they cannot consist, for example, of genetically modified

25   material or synthetic substances, with certain specified exceptions. 7 C.F.R. §§ 205.105(a),

26   205.301(c).

27   42.    Under the NOP regulations, products meeting this 70% standard may not be

28   labeled "Organic"; rather, they may only be labeled, on the principal display panel, as "Made

23183\1976669.3
23183\1976669.4

1   with Organic [specified ingredients]" or "Made with Organic [specified groups]."  7 C F R.

2   § 205.304(a)(1)(i) & (ii).  The NOP regulations do not permit the label of such a product to state

3   simply that the product is "Made with Organic Ingredients," which inaccurately implies *all*

4   ingredients are organic; rather, the term "Organic" must modify specified individual ingredients.

5   *Id.* § 205.305.  Further, the "Made with Organic [specified ingredients]" statement must appear in

6   "letters that do not exceed one-half the size of the largest type size on the panel" and which

7   appear in their entirety "in the same type size, style, and color without highlighting."  *Id.*

8   § 205.304(a)(1)(iii).

9       43.     Under the NOP regulations, the percentage of organically-produced ingredients in

10  a multi-ingredient finished food product, if liquid, is to be determined by dividing the fluid

11  volume of all organic ingredients (excluding water and salt) by the fluid volume of the finished

12  product (excluding water and salt).  7 C.F.R. § 205.302.

13      44.     Each production, handling or manufacturing operation that produces any

14  agricultural product intended to be labeled or sold as "Organic" or "Made with Organic [up to

15  three certified ingredients]" must be certified by a USDA-accredited certifying agent as meeting

16  all the requirements of the NOP in its production facilities and processes. 7 C.F.R. § 205.100.

17  **B.     Application to Body Care Products**

18      45.     Currently the USDA/NOP standards are not mandatory for the labeling of

19  personal and body care products.  However, a manufacturer or seller of personal or body care

20  products can voluntarily seek certification of its products from a USDA-accredited certifier and,

21  if such products meet the USDA/NOP standards, those products can be labeled "Organic" or

22  "Made With Organic" specific ingredients in accordance with the NOP rules.

23      46.     Specifically, in April 2008, USDA issued guidance on application of the NOP to

24  personal care, body care and cosmetic products.  This guidance statement confirmed USDA's

25  position as to the voluntary, non-mandatory nature of the NOP as applied to labeling of personal

26  care products:

27

28          If a cosmetic, body care product or personal care product contains or is made

Foote Russ & Morel LLP
215 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

SECOND AMENDED COMPLAINT

1    up of agricultural ingredients, and can meet the USDA/NOP organic
2    production, handling, processing and labeling standard, it may be eligible to
     be certified under the NOP regulations.

3    *Id.* (emphasis added). At the same time, USDA made clear that, since the federal regulatory

4    regime is not mandatory as to finished personal care products, USDA will not enforce that regime

5    with respect to personal care products, as long as the labeling does not imply compliance with the

6    specific USDA NOP standards. The USDA stated:

7
8        • Any cosmetic, body care product or personal care product that does not
           meet the production, handling, processing, labeling, and certification
           standards described above, may not state, imply or convey in any way that
9          the products is USDA-certified organic or meets the USDA organic
           standards.
10
         However:
11
12       • USDA has no authority over the production and labeling of cosmetics,
           body care products and personal care products that are not made up of
13         agricultural ingredients or do not make any claims to meeting USDA organic
           standards.
14
15       • Cosmetics, body care products, and personal care products may be certified
           to other, private standards and be marketed to those private standards in the
16         United States. These standards might include foreign organics standards,
           eco-labels, earth friendly, etc. USDA's NOP does not regulate these labels at
17         this time.

18       47.    Thus the current regulatory situation is that, under certain circumstances, a product

19   that meets the NOP standards may be eligible to carry the USDA label; those not meeting the

20   standards may not carry the USDA label and "may not state, imply or convey in any way that the

21   products is USDA certified organic or meets the USDA organic standards." The USDA is also

22   clear that it "has no authority over the production and labeling" of personal care products that do

23   *not* make claims of meeting the specific USDA standards.

24       48.    The USDA official website explains that, "[o]nce certified, cosmetics, personal

25   care products and body care products are eligible for the same 4 organic labeling categories as all

26   other agricultural products. . . ." *Id.* Specifically, a personal care or body care product labeled

27   "Organic" "must contain at least 95 percent organically produced ingredients (excluding water

28   and salt). Remaining product ingredients must consist of nonagricultural substances approved on

Fenix Brown & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

- 12 -

23183\1976669.3
23183\1976669.4

1 the National List or non-organically produced agricultural products that are not commercially
2 available in organic form. . . ." *Id.* For products labeled "Made with Organic [specified
3 ingredients]," the "product label can list up to three of the organic ingredients . . . on the principal
4 display panel. For example, body lotion made with at least 70 percent organic ingredients
5 (excluding water and salt) and only organic herbs may be labeled either 'body lotion made with
6 organic lavender, rosemary, and chamomile,' or 'body lotion made with organic herbs.'" *Id.*

7     49.     Under the NOP, the cleansing and moisturizing agents in skin, body and hair care
8 products which include agricultural material and are labeled as simply "Organic" or "Made with
9 Organic [up to three specified ingredients]" cannot consist of or contain any synthetic
10 petrochemicals or petrochemical compounds if the manufacturer wishes to represent that their
11 products comply with the NOP criteria. Further, processes such as hydrogenation and sulfation
12 are not allowed to be used to produce such agents. 7 C.F.R. §§ 205.105(a), 205.301(b) & (c).

13     50.     The official NOP website confirms that, "[a]ny cosmetic, body care product, or
14 personal care product that does not meet the production, handling, processing, labeling, and
15 certification standards described above, may not state, imply, or convey in any way that the
16 product is USDA-certified organic or meets the USDA organic standards." Personal care
17 products that do not display any suggestion of being certified as USDA organic are not regulated
18 by the USDA NOP regardless of their ingredients and regardless of whether they are labeled and
19 represented to be "organic" independent of UDSA compliance, no matter how egregiously and
20 flagrantly such products may flout basic organic consumer expectations and criteria.

21     51.     For consumers of organic personal and body care products, the terms "Organic,'
22 "Organics," "Pure Organic Technology," "100% Organic Ingredients," and similar outright
23 "Organic" claims, when used on the labeling and in the advertising and promotion of personal
24 care products, mean that the product is organic and complies with the USDA/NOP standards for
25 labeling a product as "Organic." That understanding exists even though personal and body care
26 products are not currently required to comply with USDA/NOP standards and USDA/NOP
27 currently does not and will not enforce such standards with respect to the labeling or advertising
28 of personal and body care products.

Foote Ross & Morel LLP
215 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

- 13 -

23183\1976669.3
23183\1976669.4

C.    **Voluntary Industry Standards**

52.    NSF International ("NSF") is a private company that works with various industries to promulgate safety and quality standards and to certify products as conforming to such standards once they are issued.

53.    The American National Standards Institute ("ANSI") is a nonprofit organization that oversees the development, issuance and use of voluntary consensus industry standards for products and services and accredits agencies and entities to certify conformity of particular products and services with such standards.

54.    Over the past four years, NSF and ANSI have undertaken a standards development process for organic personal care products, working with industry representatives including the Organic Trade Association, large organic certifiers such as Quality Assurance International, several of the Defendants, Dr. Bronner's, and representatives of consumer interests such as the Organic Consumers Association.

55.    The standard resulting from this process was issued in final form on or about February 18, 2009 as NSF/ANSI Standard 305 ("NSF/ANSI 305"). NSF/ANSI 305 provides that a personal care product may be labeled as "Organic" only if it complies with the USDA NOP requirements, accurately reflecting basic organic consumer expectations regarding the contents of personal care products labeled outright as "Organic," including that the main cleansing and moisturizing ingredients are made from organic, not conventional agricultural or petrochemical, material, and the expectation that such products be free of hydrogenated and sulfated cleansing agents, as well as petrochemical preservatives and compounds.

56.    Under NSF/ANSI 305, a personal care product could be labeled as "Contains Organic Ingredients" if, among other things, the product's cleansing agents are made from plant-based certified organic material as commercially available (meaning among other things, agricultural material grown without use of synthetic fertilizers, pesticides or herbicides) and do not consist of or contain petroleum compounds, even if processes such as hydrogenation and sulfation are used to modify the organic agricultural material. Under the ANSI/NSF 305 standard, once a given processed ingredient is made from organic materials, only the organic

- 14 -

23183\1976669.3
23183\1976669.4

1     form of that ingredient, rather than the conventional form, can be used in products labeled as

2     "Contains Organic Ingredients". As under the NOP rules, however, use of processes such as

3     hydrogenation and sulfation would preclude the labeling of a product as being outright "Organic."

4         57.     Thus NSF/ANSI 305 allows personal care products labeled as "Contains Organic

5     Ingredients" to include plant-based surfactants, hydrogenated oils and other intensively processed

6     agents as long as such agents are made from certified organic materials without any petroleum

7     compounds. Only in the situation in which such certified organic materials are not yet

8     commercially available for ingredients may the conventional form of the ingredient be used until

9     such time as the certified organic form becomes commercially available.

10        58.     Defendant OASIS has developed and has issued or will imminently issue an

11     alternative industry standard based in part on the language and structure of the NSF standard.

12     OASIS' standard was developed with no input from consumer groups or representatives.

13     Development of this standard was promoted principally by representatives of certain companies

14     who were unhappy that the NSF-ASNI standard would respect basic organic consumer criteria by

15     not allowing conventional non-organic agricultural material to be used in main cleansing

16     ingredients, nor allow hydrogenation, sulfation and synthetic preservation of those ingredients, in

17     outright "Organic" labeled products.

18        59.     Unlike the NSF/ANSI standard, the OASIS standard allows a product to be labeled

19     outright as "Organic" (rather than as merely "Contains Organic Ingredients" as under the NSF-

20     ANSI standard) even if that product contains hydrogenated and/or sulfated cleansing agents made

21     from conventional agricultural materials—which may have been grown using synthetic fertilizers,

22     pesticides or herbicides—rather than organic agricultural materials. Such labeling of a product as

23     simply "Organic" is permissible under OASIS, even if such agents were preserved with synthetic

24     petrochemicals.

25                            **STATEMENT OF FACTS**

26     **A.    Consumer Understandings**

27         60.     A substantial segment of consumers of organic skin, body and hair care products

28     understands, expects and believes that such a product labeled, advertised, and promoted as

Farella Broun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

23183\19766669.3
23183\19766669.4

1  "Organic," "Organics," "100% Organic Active Ingredients," "Pure Organic Technology," or

2  "Made with Organic Ingredients" does not contain any petrochemicals or petrochemical

3  compounds in ingredients whatsoever, and are thus entirely free of petrochemical contaminants.

4      61.    A substantial segment of consumers of organic skin, body and hair care products

5  understands, expects and believes that a product labeled, advertised, or promoted as "Organic,"

6  "Organics," "100% Organic Active Ingredients," "Pure Organic Technology," or "Made with

7  Organic Ingredients" does not contain synthetic preservatives.

8      62.    A substantial segment of consumers of organic skin, body and hair care products

9  understands, expects and believes that a product labeled "Organic," "Organics," "100% Organic

10  Active Ingredients," "Pure Organic Technology," or "Made with Organic Ingredients" does not

11  contain cleansing or moisturizing agents derived from conventionally-produced agricultural

12  materials.

13      63.    A substantial segment of consumers of organic skin, body and hair care products

14  understands, expects and believes that a product labeled "Organic," "Organics," "100% Organic

15  Active Ingredients," "Pure Organic Technology," or "Made with Organic Ingredients" has more

16  organic content than a product labeled "Made with Organic [specified ingredients]."

17      64.    A substantial segment of consumers of organic skin, body and hair care products

18  understands, expects and believes that a product labeled "Organic," "Organics," "100% Organic

19  Active Ingredients," "Pure Organic Technology," or "Made with Organic Ingredients" is as likely

20  or more likely than a product merely labeled "Made with Organic [specified ingredients]" to be

21  free of petrochemicals.

22      65.    A substantial segment of consumers of organic skin, body and hair care products

23  understands, expects and believes that a product labeled "Organic," "Organics," "100% Organic

24  Active Ingredients," "Pure Organic Technology," or "Made with Organic Ingredients" is as likely

25  or more likely than a product merely labeled "Made with Organic [specified ingredients]" to

26  contain cleansing agents derived from organic rather than conventional agricultural materials.

27      66.    A substantial segment of consumers of organic skin, body and hair care products

28  understands, expects and believes that a product labeled "Organic," "Organics," "100% Organic

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

- 16 -

23183\1976669.3
23183\1976669.4

1    Active Ingredients," "Pure Organic Technology," or "Made with Organic Ingredients" is as likely

2    or more likely than a product merely labeled "Made with Organic [specified ingredients]" to

3    contain moisturizing agents derived from organic rather than conventional agricultural materials.

4         67.    A substantial segment of consumers of organic skin, body and hair care products

5    understands, expects and believes that a product labeled, advertised, or marketed as "Organic,"

6    "Organics," "100% Organic Active Ingredients," "Pure Organic Technology," or "Made with

7    Organic Ingredients" will not be so labeled, advertised, or marketed based merely on the

8    inclusion of water in which botanical material has been soaked or steamed.

9         68.    A substantial segment of consumers of organic skin, body and hair care products

10   understands, expects and believes that a product labeled, advertised, or marketed as "Organic,"

11   "Organics," "100% Organic Active Ingredients," "Pure Organic Technology," or "Made with

12   Organic Ingredients" will include main ingredients—cleansing and moisturizing agents—that are

13   derived from organic material and are free of petrochemical compounds.

14        69.    All of the basic organic consumer criteria and expectations discussed in paragraphs

15   60 through 68 are reflected in the USDA NOP criteria for organic personal care products.

16        70.    Including the word "Organic" or "Organics" in a brand name of a personal care

17   product, such as "Desert Essence Organics" or "Nature's Gate Organics," is perceived by

18   consumers as among the strongest of various organic label claims.

19        71.    Including the word "Organic" or "Organics" in a brand name of personal care

20   products, such as "Desert Essence Organics" or "Nature's Gate Organics," is understood by a

21   substantial segment of consumers of skin, body and hair care products to mean that the main

22   cleansing and moisturizing ingredients of a personal care product so branded are made with

23   organic, rather than conventional, agricultural material.

24        72.    Including the word "Organic" or "Organics" in a brand name of personal care

25   products is understood by a substantial segment of consumers of skin, body and hair care

26   products to mean that the products so branded are free of petroleum compounds.

27        73.    A substantial segment of consumers of organic skin, body and hair care products

28   understands, expects and believes that the terms "Organic," "Organics," "100% Organic Active

Foley Ross & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

23183\19766669.3
23183\19766669.4

1  Ingredients." or "Pure Organic Technology" mean the same thing and that a personal care product

2  so labeled will have the characteristics described in paragraphs 60 through 68 above.

3      74.     Labeling, advertising, branding, or marketing a personal product as "Organic,"

4  "Organics," "100% Organic Active Ingredients," or "Pure Organic Technology" is a

5  representation that the products so labeled, advertised, or marketed are organic.

6  **B.    Dr. Bronner's Products and Labeling**

7      75.     Plaintiff Dr. Bronner's engages in the business, among other things, of

8  manufacturing and selling, in California and throughout the United States, personal care and

9  cosmetic products including the nation's top-selling natural brand of liquid and bar soap in a

10  number of varieties under the "Dr. Bronner's Magic Soaps" brand, and lotions, hair rinses,

11  shampoos, hair conditioners, shaving gels and balms under the brand, "Dr. Bronner's Magic."

12      76.     "Dr. Bronner's Magic Soaps" liquid soaps and other cleaning products are labeled

13  as "Made with Organic Oils." These liquid soaps are all certified and labeled in accordance with

14  the NOP voluntary criteria for labeling a personal care product as "Made with Organic [specified

15  ingredients/types]".

16      77.     Dr. Bronner's has chosen to comply with the USDA voluntary NOP organic

17  criteria, which criteria properly reflect organic consumer criteria for organic personal care.  In

18  July 2003, a USDA-accredited certifying agent, Oregon Tilth Certified Organic, certified Dr.

19  Bronner's as an organic operation with respect to nine specific bar soap products and six specific

20  liquid soap products. Dr. Bronner's liquid and bar soaps comply with the USDA requirements for

21  labeling a product as "Made with Organic [specified ingredients]," and thus are labeled as such,

22  on the front panel, with the words "Made with Organic [specified ingredients]" not exceeding

23  50% of the type size of the largest font otherwise appearing on the label.

24      78.     Further, all of the cleansing and moisturizing ingredients in all of the products

25  described in paragraphs 75 through 77 are made from organic material and are free of

26  petrochemicals. In manufacturing these products, Dr. Bronner's uses certified organic oils to

27  make all cleansing ingredients. All such cleansing ingredients are derived from organic, rather

28

23183\1976669.3
23183\1976669.4

1  than conventionally-produced, agricultural material and do not contain any petrochemicals,

2  petrochemical preservatives or synthetic surfactants.

3       79.     Dr. Bronner's has also introduced a line of organic lip balms, body balms and

4  lotions, and more recently shaving gels and organic hair care products in the form of a

5  conditioning rinse and leave-in conditioner, all of which are certified as meeting the requirements

6  of the NOP criteria for being labeled "Organic."

7       80.     On February 27, 2005, Oregon Tilth, after analyzing a number of Dr. Bronner's

8  products and the proposed labels for those products, certified Dr. Bronner's as "Organic" in

9  accordance with the certifying agent's own standards identical to those of NOP, with respect to

10  Dr. Bronner's Magic body balm, lip balm and lotion products.  In reliance and based on this

11  certification, Dr. Bronner's has at all relevant times since February 27, 2005 and continuing to the

12  present time, labeled and marketed its "Organic" products, as listed on the February 27

13  certification, as "Certified Organic," *i.e.*, voluntarily certified to NOP criteria, and has displayed

14  the USDA seal on such labels.

15       81.     Dr. Bronner's products labeled as "Organic" and "made with Organic [specified

16  ingredients]" meet all of the criteria of the NOP for being labeled as "Organic" and "made with

17  Organic [specified ingredients]" in satisfaction of that program, and thus in satisfaction of the

18  basic organic consumer expectations and criteria that the NOP criteria reflect.

19       82.     The labeling of Dr. Bronner's liquid and bar soaps as "Made with Organic Oils" in

20  accordance with the NOP rules ensures consumers that the principal cleansing ingredients of

21  these Dr. Bronner's products are made with organic material with no petrochemical compounds

22  or preservatives. Dr. Bronner's is the major brand in the natural personal care market in which

23  the main cleansing ingredients are made from organic rather than conventional agricultural and/or

24  petrochemical material.

25  **C.   Products of Defendant Manufacturers/Distributors**

26       **1.   Products Labeled and Sold as Organic**

27       83.     Dr. Bronner's liquid soap products, under the "Dr. Bronner's Magic Soaps" brand,

28  and properly labeled "Made with Organic [specified ingredients]" under the NOP criteria, and Dr.

- 19 -

Fields Rows & Mand LLP
215 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

23183\1976669.3
23183\1976669.4

SECOND AMENDED COMPLAINT

1   Bronner's lip balms, lotions, hair rinses, shampoos, conditioners and shaving gels labeled as

2   "Organic" under the NOP criteria, are sold in direct competition with liquid soaps, bodywashes,

3   shampoos, hair conditioners, hair rinses, cleansing milks, cleansing gels, foaming cleansers, lip

4   balms, facial cleansers, and other personal care products manufactured and sold by Defendants

5   Hain Celestial, Kiss My Face, Levlad, Cosway, Country Life, YSL, and Giovanni.  In the case of

6   the products manufactured and sold by Defendants Hain Celestial, Kiss My Face, Levlad,

7   Country Life and Giovanni, Dr. Bronner's products and Defendants' personal care products are

8   typically sold in the same sections, and often on the same shelves, of the same retail outlets,

9   including grocery stores, natural food stores, drugstores and other outlets.

10      84.     Dr. Bronner's products are available for sale to consumers throughout the country

11   on websites that also feature for sale products from at least each of the following defendants:

12   Hain Celestial, Kiss My Face, Levlad, Giovanni, Cosway, Country Life.

13      85.     Defendant Hain Celestial produces, and sells in California and throughout the

14   United States, personal care products labeled and advertised with the brand names "JASON Pure

15   Natural & Organic," "Avalon Organics," and "Queen Helene Naturals Organic."  The terms

16   "Pure Natural & Organic," "Organic" and/or "Organics" appear prominently on the label or

17   container of the products so branded.

18      86.     The major cleansing ingredients in Hain Celestial's JASON Pure Natural and

19   Organic personal care products are not made from organic material; rather, all such ingredients

20   are made from conventional agricultural material combined with petrochemicals.

21      87.     The major cleansing ingredients in Hain Celestial's Avalon Organics personal

22   care products are not made from organic material; rather, all such ingredients are made from

23   conventional agricultural material combined with petrochemicals.

24      88.     The "Organic" content of these products consists primarily of water in which

25   organic botanical material has been steamed or soaked, or of organic aloe vera.

26      89.     The water in which organic botanical material has been steamed or soaked, and the

27   organic aloe vera contained in Hain Celestial's products as set forth in the preceding paragraph

28

Fenella Braun & Martel LLP
315 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

23183\1976669.3
23183\1976669.4

1   are not the primary cleansing ingredients in those products, and in fact have no cleansing
2   function.

3       90.     The JASON liquid soap, bodywash and shampoo products contain Sodium Myreth
4   Sulfate, an ingredient made in significant part with the petrochemical ethylene oxide, as the
5   primary cleansing ingredient. Further, because this ingredient is ethoxylated with the
6   petrochemical ethylene oxide, its use results in the inclusion, in these products, of trace amounts
7   of the carcinogenic substance 1,4-Dioxane.

8       91.     None of the cleansing agents in these JASON products are derived from organic
9   agricultural materials. All the JASON products are preserved with synthetic petrochemically-
10  derived preservatives.

11      92.     Defendant Hain Celestial's "Avalon Organics" products used for cleansing the
12  body or hair contain Cocamidopropyl Betaine, which is made by combining petrochemical and
13  conventional agricultural compounds, and which has no organic content.

14      93.     The main cleansing ingredient in Hain Celestial's "Avalon Organics" products that
15  are used for cleaning the body and hair is Cocamidopropyl Betaine.

16      94.     None of the cleansing agents in the Avalon Organics products made by Hain
17  Celestial are derived from organic agricultural materials. All of the Avalon Organics products are
18  preserved with synthetic petrochemical ingredients.

19      95.     The "Queen Helene Naturals Organic" Cocoa Butter Body Wash manufactured
20  and sold by Hain Celestial contains ingredients made from petrochemicals, including
21  Cocamidopropyl Hydroxysultaine,

22      96.     Because the JASON products are labeled as "Organic"and Avalon products are
23  labeled and advertised as "Organics," a substantial segment of consumers of organic skin, body
24  and hair care products understand, expect and believe, based on such labeling and advertising
25  that such products meet the NOP criteria for being labeled as "Organic;" that such products use
26  principal cleansing agents which are derived from organic rather than conventional agricultural
27  material (produced using synthetic fertilizers, pesticides and/or herbicides); that such products are

28

Forde Bass & Modd LLP
215 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

23183\1976669.3
23183\1976669.4

1   not preserved with synthetic petrochemical preservatives; and that such products do not contain
2   any petrochemical compounds.

3       97.     Because the JASON and Avalon products referenced in paragraphs 85 through 95
4   do not meet the NOP criteria for being labeled as "Organic;" use principal cleansing agents
5   derived from conventional rather than organic agricultural material; and are preserved with
6   synthetic petrochemical preservatives and/or contain petrochemical compounds, the labeling and
7   advertising or such products as "Organic" is literally false; is false by necessary implication; and
8   has misled, confused and/or deceived the consuming public.

9       98.     No product manufactured by Hain Celestial and sold under the Jason Pure Natural
10  and Organic brand is organic.

11      99.     No product manufactured by Hain Celestial and sold under the Avalon Organics
12  brand is organic.

13      100.    No product manufactured by Hain Celestial and sold under the Queen Helene
14  Naturals Organic brand is organic.

15      101.    Defendant Kiss My Face produces, and sells in California and throughout the
16  United States, a line of personal care products labeled and offered for sale as "Organic" and/or
17  "Obsessively Organic," including but not limited to a line labeled and advertised as "Organic Self
18  Foaming Liquid Soaps" and labeled "Obsessively Organic," with the latter words appearing
19  directly above the primary product descriptor on the front label; and a line of body washes and
20  liquid soaps branded "SUDZ by Kiss My Face" that includes products prominently labeled
21  "Organic Shower Gel" and "Organic Foaming Soap," in several varieties.

22      102.    The Kiss My Face products for cleansing the skin and hair that are labeled and/or
23  offered for sale as "Organic" all contain cleansing ingredients which are derived from
24  conventional agricultural material rather than organic agricultural materials and which are made
25  with petrochemicals, such as Olefin Sulfonate and Cocamidopropyl Betaine.

26      103.    Olefin Sulfonate is a pure petrochemical and is misleadingly described on the
27  labels of certain Kiss My Face products as being "from coconut."

28

Foote Bross & Maved LLP
215 Montgomery Street 17th Floor
San Francisco, CA  94104
(415) 954-4400

-22-

2318311976669.3
2318311976669.4

SECOND AMENDED COMPLAINT

1   104.   The Cocamidopropyl Betaine in Kiss My Face products is made from

2   petrochemicals and conventional agricultural material.

3   105.   Because the Kiss My Face products referenced in paragraph 101 are labeled and

4   advertised as "Organic," a substantial segment of consumers of organic skin, body and hair care

5   products understand, expect and believe, based on such labeling and advertising that such

6   products meet the NOP criteria for being labeled as "Organic;" that such products use principal

7   cleansing agents which are derived from organic rather than conventional agricultural material

8   (produced using synthetic fertilizers, pesticides and/or herbicides); and principal cleansing agents

9   which are not derived from or made with petrochemicals.

10   106.   Because the Kiss My Face products referenced in paragraph 101 do not meet the

11   NOP criteria for being labeled as "Organic;" use principal cleansing agents derived from

12   conventional rather than organic agricultural material; and use principal cleansing agents derived

13   from or made with petrochemicals, the labeling and advertising or such products as "Organic" is

14   literally false; is false by necessary implication; and has misled, confused and/or deceived the

15   consuming public.

.16   107.   Defendant Levlad produces, and sells in California and throughout the United

17   States, under the brand name "Nature's Gate," a line of personal care products advertised, labeled

18   and offered for sale as "Nature's Gate Organics."

19   108.   The cleansing agents in the Nature's Gate Organics personal care products that

20   contain cleansing ingredients, contain petrochemicals or petrochemical compounds, such as

21   Disodium Laureth Sulfosuccinate, made with Ethylene Oxide, and Cocamidopropyl Betaine.  The

22   use of an ingredient ethoxylated with the petrochemical Ethylene Oxide results in the inclusion, in

23   Nature's Gate Organics products, of trace amounts of the carcinogenic substance 1,4-Dioxane.

24   109.   Because the Nature's Gate products referenced in paragraph 107 are labeled and

25   advertised as "Organic," a substantial segment of consumers or organic skin, body and hair care

26   products understand, expect and believe, based on such labeling and advertising, that such

27   products meet the NOP criteria for being labeled as "Organic;" that such products use principal

28   cleansing agents which are derived from organic rather than conventional agricultural material

23183\1976669.3
23183\1976669.4

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

1   (produced using synthetic fertilizers, pesticides and/or herbicides); and that such products do not

2   contain petrochemical preservatives or any amount of any carcinogenic substance.

3       110.    Because the Nature's Gate products referenced in paragraph 107 do not meet the

4   NOP criteria for being labeled as "Organic;" use principal cleansing agents derived from

5   conventional rather than organic agricultural material; and contain petrochemical preservatives,

6   and some amount of a carcinogenic substance, the labeling and advertising of such products as

7   "Organic" is literally false; is false by necessary implication; and has misled, confused and/or

8   deceived the consuming public.

9       111.    Defendant YSL produces, and sells throughout the United States, a line of

10  products called "CARE" including a "cleansing milk" and "purifying foaming cleanser" which

11  are labeled, advertised and offered for sale as "100% Organic Active Ingredients."

12      112.    On information and belief, the YSL products listed above are not 100% organic.

13  YSL's facial cleansing product consists of fatty alcohols as primary ingredients, made from

14  conventional rather than organic agricultural material, by combining the petrochemical methanol

15  with conventional vegetable oil, and then hydrogenating at high pressure to produce the fatty

16  alcohol and recover the methanol.

17      113.    Because the YSL products referenced in paragraph 111 are labeled and advertised

18  as "100 % Organic Active Ingredients," a substantial segment of consumers of organic skin, body

19  and hair care products understand, expect and believe, based on such labeling and advertising,

20  that such products meet the NOP criteria for being labeled as "Organic;" and that such products

21  consist in fact of 100% organically produced ingredients.

22      114.    Because the YSL products referenced in paragraph 111 do not meet the NOP

23  criteria for being labeled as "Organic;" and consist of substantially less than 100% organically

24  produced ingredients, the labeling and advertising of such products as "100% Organic Active

25  Ingredients" is literally false; is false by necessary implication; and has misled, confused and/or

26  deceived the consuming public.

27      115.    YSL's CARE line, including the cleansing products described above, is labeled as

28  being certified by Ecocert.  YSL products are not properly certified to be labeled as "100%

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

23183\1976669.3
23183\1976669.4

1   Organic" even under Ecocert's own standards. In a complaint filed in this Court, Ecocert

2   suggested that Stella McCartney, a distributor of YSL products, does not sell any cleansing

3   products, indicating that Ecocert does not believe that Stella McCartney and hence YSL is selling

4   cleansing products labeled as certified by Ecocert. Thus, Ecocert has failed to enforce its own

5   standards with respect to the labeling of these products. Complaint ¶ 11, *Ecocert France (SAS) et*

6   *al. v. All One God Faith, Inc.*, No. CGC-08-474413 (Cal. Super. Ct., S.F. County, filed April 18,

7   2008).

8       116.    Defendant Giovanni produces, and sells in California and throughout the United

9   States, personal care products advertised and offered for sale as "Giovanni Organic Cosmetics,"

10  "Organic Body Care" and/or "Organic Hair Care," including but not limited to "Giovanni

11  Organic Body Care Cleanse Body Wash" in several varieties and products advertised and offered

12  for sale as "Giovanni Organic Body Care Cleanse Body Wash Pure Organic Technology" in

13  several varieties.

14      117.    A main cleansing agent in the Giovanni liquid body wash products described is

15  Cocamidopropyl Betaine, made with Amidopropyl Betaine, a petrochemical.

16      118.    The cleansing ingredients in the Giovanni products described in paragraph 116

17  above are derived from conventional, rather than organic, agricultural materials.

18      119. · Because the Giovanni products referenced in paragraph 116 are labeled and

19  advertised as "Organic" and/or "Pure Organic Technology," a substantial segment of consumers

20  or organic skin, body and hair care products understand, expect and believe, based on such

21  labeling and advertising that such products meet the NOP criteria for being labeled as "Organic;"

22  that such products use principal cleansing agents which are derived from organic rather than

23  conventional agricultural material (produced using synthetic fertilizers, pesticides and/or

24  herbicides); and that such products do not contain petrochemicals and/or petrochemical

25  compounds.

26      120.    Because the Giovanni products referenced in paragraph 116 do not meet the NOP

27  criteria for being labeled as "Organic;" use principal cleansing agents derived from conventional

28  rather than organic agricultural material; and contain petrochemicals and/or petrochemical

Fenda Rosen & Mend LLP
233 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

23183\1976669.3
23183\1976669.4

1   compounds, the labeling and advertising of such products as "Organic" is literally false; is false

2   by necessary implication; and has misled, confused and/or deceived the consuming public.

3       121.    Defendant Cosway produces, and sells in California and throughout the United

4   States, a line of shampoos and conditioners under the "Head Organics" brand, which are labeled,

5   advertised and offered for sale as "Head Organics," including "Head Organics Clearly Head

6   Shampoo." On information and belief, Cosway also manufactures under private label

7   arrangements, diverse personal care products that are labeled "Organic," "Organics" or that use

8   similar terms.

9       122.    The cleansing agents in Head Organics Shampoo consist of and/or contain

10   petrochemicals or petrochemical compounds. These agents include Cocamidopropyl Betaine,

11   made with Amidopropyl Betaine; Sodium Lauryl Sulfoacetate, containing Sulfoacetate made

12   from chloracetic acid; and Cocamidopropyl Hydrosultaine made from Hydrosultaine.

13       123.    The cleansing ingredients in Head Organics Shampoo and, on information and

14   belief, in products manufactured by Cosway for third parties under the brands of those third

15   parties, are derived from conventional, rather than organic, agricultural materials. Head Organics

16   products are preserved with synthetic petrochemical preservatives.

17       124.    Because the Head Organics Shampoo products and/or other products manufactured

18   by Cosway are labeled and advertised as "Organic," a substantial segment of consumers or

19   organic skin, body and hair care products understand, expect and believe, based on such labeling

20   and advertising that such products meet the NOP criteria for being labeled as "Organic;" that

21   such products use principal cleansing agents which are derived from organic rather than

22   conventional agricultural material (produced using synthetic fertilizers, pesticides and/or

23   herbicides); and that such products do not contain petrochemicals and/or petrochemical

24   compounds.

25       125.    Because the Head Organics Shampoo products and other products manufactured

26   by Cosway referenced in paragraph 121 do not meet the NOP criteria for being labeled as

27   "Organic;" use principal cleansing agents derived form conventional rather than organic

28   agricultural material; and contain petrochemicals and/or petrochemical preservatives, the labeling

Foyle Ross & Mand LLP
215 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

23183\1976669.3
23183\1976669.4



1 │ and advertising of such products as "Organic" is literally false; is false by necessary implication;
2 │ and has misled, confused and/or deceived the consuming public.

3 │     126.   Defendant Country Life produces, and sells in California and throughout the
4 │ United States, a line of body washes, cleansing gels, shampoos and conditioners under the brand
5 │ "Desert Essence Organics" and which are labeled, advertised and offered for sale as "Desert
6 │ Essence Organics." The cleansing agents in the "Desert Essence Organics" body washes,
7 │ shampoos and conditioners consist of and/or contain petrochemicals or petrochemical
8 │ compounds. These agents include Cocamidopropyl Betaine, made with the petrochemical
9 │ Amidopropyl Betaine.

10 │     127.   The cleansing ingredients in Desert Essence Organic bodywashes, shampoos and
11 │ conditioners are derived from conventional, rather than organic, agricultural materials.

12 │     128.   Certain of the Desert Essence Organics products described in paragraph 126 are
13 │ preserved with synthetic petrochemical preservatives.

14 │     129.   Because the Desert Essence products referenced in paragraph 126 are labeled and
15 │ advertised as "Organic," a substantial segment of consumers or organic skin, body and hair care
16 │ products understand, expect and believe, based on such labeling and advertising, that such
17 │ products meet the NOP criteria for being labeled as "Organic;" that such products use principal
18 │ cleansing agents which are derived from organic rather than conventional agricultural material
19 │ (produced using synthetic fertilizers, pesticides and/or herbicides); and that such products do not
20 │ contain petrochemicals and/or petrochemical compounds.

21 │     130.   Because the Desert Essence products referenced in paragraph 126 do not meet the
22 │ NOP criteria for being labeled as "Organic;" use principal cleansing agents derived from
23 │ conventional rather than organic agricultural material; and contain petrochemicals and/or
24 │ petrochemical compounds,  the labeling and advertising or such products as "Organic" is literally
25 │ false; is false by necessary implication; and has misled, confused and/or deceived the consuming
26 │ public.

27
28

23183\1976669.3
23183\1976669.4

SECOND AMENDED COMPLAINT

**D.  Certifying Organizations**

131.    Defendant OASIS trade association has issued a permissive industry standard, the development of which has been promoted by several companies. This standard allows a product to be labeled outright as "Organic" even if it contains cleansing agents made from non-organic material that is hydrogenated or sulfated, and preserved with synthetic petrochemicals.

132.    Ms. Gay Timmons, the chairperson of the OASIS trade association has confirmed the organization's goal by representing to the cosmetic industry at an industry convention that:

> The OASIS Seal tells buyers throughout the world that your
> product has met the highest international Standard for the Health
> and Beauty industry.

OASIS Power Point Presentation at the Natural Beauty Summit, NYC, May, 2008.

OASIS has been actively soliciting and recruiting companies to obtain certification from OASIS at various industry trade shows including but not limited to Expo West in March 2008 in Anaheim, the country's largest natural products show.

133.    Ms. Timmons made a statement in May 2009, implying that at least sixty (60) companies were prepared to seek certification by OASIS at some point in the preceding year.

134.    Ms. Timmons made a statement in June 2009 that "OASIS is open for business."

135.    Defendant Ecocert has issued a purported industry standard that requires a product to be 100% organic in content if it is labeled outright as "Organic"; otherwise only a more restricted "Made with Organic [specified ingredient(s)]" representation is allowed. Nevertheless, Ecocert, one, permits products that are not 100% Organic to be marketed as a "Certified Organic Cosmetic" and labeled as such on the back of products, and two, has in fact certified body and skincare products labeled on the front Principal Display Panel outright as "Organic," including some made by Defendant YSL, which use cleansing agents that contain no organic material and that include cleansing agents made in part with petrochemicals. Such products contain substantially less than 100% organic content.

136. .  Ecocert has certified body and skincare products to be labeled outright as "Organic" in violation of its own standard, in that many of the products so labeled are not

-28-

Ferriter Plum & Mund LLP
291 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4490

23183\1976669.3
23183\1976669.4

1    "Organic" as that term is understood by a substantial segment of consumers of organic skin, body

2    and hair care products in California and throughout the United States.

3        137.    Ecocert's standards permit the inclusion, in products certified to be labeled "Made

4    with Organic [specified ingredients]," of cleansing agents made with petrochemicals (such as

5    Cocamidopropyl Betaine). Not even the permissive OASIS standard allows the inclusion of such

6    cleaning agents in a product labeled "Made with Organic [specified ingredients]."

7                                    **FIRST CAUSE OF ACTION**

8                    **For False Advertising Under Section 43(a) of the Lanham Act**

9    **Against Defendants Hain Celestial, Kiss My Face, Levlad, YSL, Country Life, Giovanni and**

10                                            **Cosway)**

11       138.    Plaintiff realleges and incorporates by reference herein each and every allegation

12·  contained in paragraphs 1 through 137, above.

13       139.    The labeling, advertising and promotion, by each of Defendants Hain Celestial,

14   Kiss My Face, Levlad, YSL, Country Life, Giovanni and Cosway, of each of its personal care

15   products, as alleged herein, as "Organic," "Organics," "Pure Organic Technology and/or "100%

16   Organic Active Ingredients" is literally false; false by necessary implication; and is likely to

17   mislead, deceive and/or confuse, and has in fact misled, deceived and confused, the consuming

18   public.

19       140.    The labeling, advertising, and promotion, by each Defendant, of each of its

20   personal care products, as alleged herein, as "Organic," "Organics," "Pure Organic Technology"

21   and/or "100% Organic Active Ingredients" has actually deceived or has the tendency to deceive a

22   substantial segment of the public at which such labeling, advertising and promotion are directed.

23       141.    Dr. Bronner's sells personal care products which directly compete with Count One

24   Defendants' personal care products in California and throughout the United States, for the

25   business of consumers desiring to purchase products such consumers consider to be "Organic" or

26   "Made with Organic [specified ingredients]."

27       142.    The labeling of a personal care product as "Made with Organic Oils," in

28   accordance with the USDA NOP rules, as Dr. Bronner's does, ensures consumers that the

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

1    cleansing ingredients in such product are made with organic material with no petrochemical

2    compounds or preservatives.

3        143.   A substantial segment of consumers desiring to purchase a personal care product

4    that such consumers consider "Organic" would purchase a product labeled "Organic" rather than

5    one labeled "Made with Organic [up to three specified ingredients]."

6        144.   Dr. Bronner's sells products that are properly and truthfully labeled in accordance

7    with the NOP criteria as being certified "made with Organic Oils." All of the cleansing and

8    moisturizing ingredients in these products are made from organic material without petrochemical

9    compounds, and thus meet basic organic consumer criteria.   In fact, the main cleansing and

10   moisturizing ingredients in Dr. Bronner's products are made from organic, rather than

11   conventional, agricultural material.  These products do not contain any petrochemicals and use

12   only cleansing agents not made with petrochemicals.

13       145.   A substantial segment of consumers in California and in the U.S. desiring to

14   purchase a personal care product that such consumers consider "Organic," views Dr. Bronner's

15   products that are labeled as "Made with Organic Oils" as being "less organic" than the Count One

16   Defendants' personal care products.  Yet Dr. Bronner's personal care products would in fact be

17   regarded by such consumers as being *more* organic than the Count One Defendants' personal care

18   products, if such consumers were aware of the true nature of the ingredients of the subject

19   products, because Count One Defendants' products use cleansing agents made from conventional

20   rather than organic agricultural material.

21       146.   A substantial segment of consumers in California and in the U.S. desiring to

22   purchase a personal care product that such consumers consider "Organic," would not purchase a

23   product that contains petrochemicals and the cleansing ingredients of which are made from

24   conventional, rather than organic, agricultural material, if such consumers were aware of these

25   facts, but would instead look for another brand, such as Dr. Bronner's, that has no petrochemicals

26   and that has cleansing ingredients made from certified organic agricultural material.

27       147.   For the reasons set forth in paragraphs 145 and 146, a substantial segment of the

28   consuming public for organic personal and body care products has been and is being confused,

SECOND AMENDED COMPLAINT

1  misled and deceived by Count One Defendants' labeling and representation of their products as

2  "Organic," "Organics," "Pure Organic technology" and/or "100% Organic Active Ingredients," to

3  purchase Count One Defendants' personal care products rather than Dr. Bronner's personal care

4  products.

5       148.  Many consumers have in fact been induced, through the literally false, impliedly

6  false and misleading, confusing and deceptive statements described in paragraphs 139-146, to

7  purchase bodywash, liquid soap, shampoo, conditioner, body lotion and other personal care

8  products manufactured and/or sold by Count One Defendants rather than the directly competing

9  personal care products of Dr. Bronner's.

10       149.  For the reasons stated in paragraphs 139 through 148, the false, misleading,

11  deceptive and confusing advertising, labeling, representing and offering for sale by Count One

12  Defendants of their personal care products as "Organic," "Organics," "100% Organic Active

13  Ingredients," and/or "Pure Organic Technology" has in fact caused, influenced and induced

14  many consumers to purchase Count One Defendants' personal care products rather than those of

15  Dr. Bronner's and has thus in fact influenced, and is likely to influence, the purchasing decisions

16  of consumers of personal care products desiring to purchase products such consumers consider

17  "Organic."

18       150.  The false, misleading, deceptive and confusing advertising, labeling, representing

19  and offering for sale by Count One Defendants of their personal care products as "Organic,"

20  "Organics," "Pure Organic Technology" and/or "100% Organic Active Ingredients," as described

21  in paragraphs 138 through 148 has taken place in interstate and foreign commerce in that Count

22  One Defendants have cause such advertising and labeling to take place in connection with the

23  distribution and sale of their products throughout the United States and in foreign countries.

24       151.  By reason of the false, misleading, deceptive and confusing labeling, promoting

25  and advertising by Count One Defendants of their personal care products as "Organic,"

26  "Organics," "Pure Organic Technology" and/or "100% Organic Active Ingredients," Dr.

27  Bronner's has in fact been injured, and is likely to be injured in the future, through a direct

28

Fells Frus & Mand LLP
255 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

-31-

23183\1976669.3
23183\1976669.4

1     diversion of sales form itself to Defendants and by a lessening of the goodwill associated with Dr.

2     Bronner's products that are truthfully labeled as "Organic" and "Made with Organic" ingredients.

3        152.    The false, misleading, deceptive and confusing labeling, promoting and

4     advertising by Count One Defendants of their personal care products as "Organic," "Organics,"

5     "Pure Organic Technology" and/or "100% Organic Active Ingredients," as described in

6     paragraphs 138 through 148, has been deliberate and willful. Among other things, each Count

7     One Defendant has continued such labeling, promoting and advertising for at least a year after

8     being warned, in writing, by Dr. Bronner's that its labeling, promoting and advertising of

9     personal care products as "Organic" was false and misleading, and was causing actual injury to

10     Dr. Bronner's.

11        153.    For the reasons stated in paragraphs 139 through 152, each Count One Defendant

12     has violated section 43(a) of the Lanham Act, 15 U.S.C. § 43(a) by engaging in false advertising

13     by, in commercial advertising and promotion, misrepresenting the nature, characteristics and

14     qualities of its good.

15                               **SECOND CAUSE OF ACTION**

16        **FOR FALSE ADVERTISING UNDER SECTION 43(A) OF THE LANHAM ACT**

17                      **(Against Defendants OASIS and Ecocert)**

18        154.    Plaintiff realleges and incorporates by reference herein each and every allegation

19     contained in paragraphs 1 through 153, above.

20        155.    The planned certification and authorization to use OASIS' registered certification

21     mark by the OASIS trade association of personal care products as "Organic" based on the OASIS

22     standard will be literally false, false by necessary implication and misleading, confusing and/or

23     deceptive to the consuming public for organic personal and body care products.

24        156.    Dr. Bronner's sells personal care products labeled as both "Organic" and "made

25     with Organic [up to three ingredients]," which personal care products directly compete with

26     products that OASIS will authorize to bear the OASIS seal and represent themselves as organic

27     pursuant to the OASIS standard, for the business of consumers, in California and throughout the

28

Fox the Brown & Island LLP
215 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

1   United States, desiring to purchase "Organic" products and products made with "Organic"

2   ingredients.

3       157.   A substantial segment of consumers in California and the United States desiring to

4   purchase organic personal care products, the main cleansing and moisturizing ingredients of

5   which are made from organic material, would purchase a product labeled "Organic" rather than

6   one labeled "Made with Organic [up to three specified ingredients]." Such consumers will

7   assume that the product labeled "Organic" would contain main moisturizing and cleansing

8   ingredients made from organic material, and in greater portion than the product labeled "Made

9   with Organic [specified ingredients]."

10       158.   Consumers of organic personal and body care products will not purchase a product

11   that contains petrochemical preservatives or a product with cleansing ingredients that are

12   hydrogenated or sulfated, or made from conventional, rather than organic, agricultural material, if

13   such consumers are aware of these facts. Such consumers will instead look for another brand,

14   such as Dr. Bronner's, the main moisturizing and cleansing ingredients of which are made from

15   certified organic agricultural material, with no hydrogenated, sulfated or synthetically preserved

16   ingredients.

17       159.   Many consumers will not be aware of the true ingredients and composition of

18   products certified as "Organic" by the OASIS trade association and/or to the OASIS standard but

19   instead, relying on the labeling of these products as "Organic" will believe that the products so

20   labeled do not contain main cleansing and moisturizing ingredients that are hydrogenated,

21   sulfated, synthetically preserved, or are made from conventional, rather than organic, agricultural

22   material.

23       160.   For the reasons set forth in paragraphs 154 through 159, many consumers will be

24   misled by the promotion of products by the OASIS trade association as "Organic" to purchase

25   such products rather than Dr. Bronner's products.

26       161.   In fact, however, the main ingredients in Dr. Bronner's personal care products are

27   made from organic, not conventional, material without hydrogenation or sulfation, and do not

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

23183\1976669.3
23183\1976669.4

1   contain any petrochemical preservatives as the OASIS trade association standard allows in

2   products that it promotes as organic.

3       162.   A substantial segment of consumers in California and the United States desiring to

4   purchase personal care products that such consumers consider "Organic" would, if such

5   consumers were made fully aware of the true composition of these competing products, purchase

6   Dr. Bronner's products rather than products promoted as "Organic" by the OASIS trade

7   association.

8       163.   A substantial segment of consumers in California and the United States desiring to

9   purchase personal care products that such consumers consider "Organic" expect that cleansing

10  and moisturizing agents are made only from organic, rather than conventionally produced,

11  agricultural materials and would, if such consumers was made fully aware of the true composition

12  of products certified by OASIS, purchase Dr. Bronner's products rather than products promoted

13  as "Organic" by OASIS.

14      164.   The literally false, impliedly false and confusing, deceptive and misleading

15  promotion by OASIS of personal care products is likely to cause, induce and influence many

16  consumers, desiring to purchase products they consider "Organic," to purchase body wash, liquid

17  soap, body gel, shampoo, conditioner and body lotion products promoted as "Organic" by OASIS

18  rather than the competing products sold by Dr. Bronner's.

19      165.   The imminent labeling and promotion by OASIS of personal care products as

20  "Organic" will result in physical certifications, and labeling reflecting such certifications, being

21  placed into interstate commerce.

22      166.   Unless the OASIS trade association is enjoined from labeling and promoting as

23  "Organic" such products, Dr. Bronner's will be injured, as a result of the false, misleading,

24  confusing  and deceptive labeling, through direct diversion of sales from Dr. Bronner's to

25  companies represented by and belonging to OASIS and/or receiving such OASIS certifications.

26      167.   On information and belief, part of the sales revenue realized by companies

27  obtaining certification to the OASIS standard will be paid to OASIS in the form of fees for

28  membership and/or for the certification process. Unless the OASIS trade association is enjoined

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

23183\1976669.3
23183\1976669.4

1   from certifying and promoting such products. Dr. Bronner's will be injured as a result of the false,

2   misleading, confusing and deceptive certifications and promotion, through diversion of sales

3   revenue from itself to OASIS in the form of such charges and/or fees.

4       168.    Defendant Ecocert has issued a purported industry standard that requires a product

5   to be 100% organic in content if it is labeled outright as "Organic," and allows a product with less

6   organic content to be labeled only as being "Made with Organic [specified ingredients]."

7       169.    Nevertheless, Ecocert has in fact certified body and skincare products, including

8   some made by Defendant YSL, which make outright "Organic" or "100% Organic" claims, that

9   use cleansing agents containing no organic material and/or made in part with petrochemicals, and

10   thus are substantially less than 100% organic.

11      170.    Ecocert has certified body and skincare products to be labeled as "Organic" in

12   cases in which the products so labeled do not meet the requirements of Ecocert's own standards

13   for being so labeled and which products are not "Organic" as that term is understood by

14   reasonable consumers.

15      171.    Ecocert, in addition, has certified body and skincare products as being "Organic"

16   based on inclusion in such products of water extracts of botanical material, even if such water

17   extracts are five to twenty times the weight of the starting botanical material.

18      172.    Ecocert permits main cleansing ingredients to contain petrochemical compounds,

19   such as Cocamidopropyl Betaine, in products certified as "Made with Organic [specified

20   ingredients]." Not even the OASIS standard permits petrochemicals in cleansing ingredients.

21      173.    Dr. Bronner's sells personal care products labeled as "Made with Organic Oils,"

22   which directly compete with products (including certain products manufactured and sold by

23   Defendant YSL) that have been and are certified by Ecocert, for the business of consumers, in

24   California and throughout the United States, desiring to purchase products made with "Organic"

25   ingredients.

26      174.    Ecocert receives certification fees from companies it certifies to its standard.

27      175.    A substantial segment of consumers of organic personal and body care products

28   has purchased products labeled "Organic" rather than ones labeled "Made with Organic [up to

- 35 -

€                                    (

1   three ingredients]." Such consumers have assumed and understood that the products labeled

2   "Organic" are more organic than the product labeled "Made with Organic [up to three

3   ingredients]."

4         176.   A substantial segment of consumers of organic personal and body care products

5   will not purchase products, the main cleansing and moisturizing ingredients of which are made

6   from non-organic conventional or petrochemical, rather than organic agricultural, material, if

7   such consumers are aware of these facts. Such consumers would instead look for another brand,

8   such as Dr. Bronner's, that contains no petrochemicals and contains cleansing and moisturizing

9   ingredients made from certified organic agricultural material.

10        177.   Many such consumers are not aware of the true ingredients and composition of

11   products certified as "Organic" by Ecocert but instead, relying on the labeling of these products

12   as "Organic," believe that the products so labeled do not contain any petrochemicals and believe

13   that the cleansing ingredients in these products are made from organic rather than conventional

14   agricultural material.

15        178.   Dr. Bronner's products' main cleansing ingredients are made from organic

16   material whereas most if not all Ecocert-certified products are not. Dr. Bronner's products do not

17   contain any petrochemicals and exclusively use cleansing agents which are made from organic,

18   rather than conventional, agricultural material.

19        179.   Consumers of organic personal and body care products, believing that products

20   certified as "Organic" by Ecocert contain main cleansing agents made only from organic, rather

21   than conventionally produced, agricultural materials, have been misled, confused and/or deceived

22   into purchasing Ecocert-certified products rather than the truthfully labeled products of Dr.

23   Bronner's.

24        180.   For the reasons set forth in paragraphs 175 through 179, consumers have actually

25   been and will continue to be induced, caused and influenced, by the literally false, impliedly false,

26   and misleading, confusing and/or deceptive certification of products by Ecocert as "Organic," to

27   purchase such Ecocert-certified products rather than Dr. Bronner's competing products.

28

Fzrella Rrazo & Martel LLP
375 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

- 36 -

2318311976669.3
2318311976669.4

1    181.    Ecocert's certification of the products described in paragraphs 168 through 172,
2    for the reasons set forth in paragraphs 169 through 180, has actually deceived and has the
3    tendency to deceive a substantial segment of consumers at which the certifications are directed,
4    namely, consumers of organic personal and body care products.

5    182.    Ecocert has caused its certifications of products as "Organic," as described in
6    paragraphs 169 through 173, to enter interstate and foreign commerce.

7    183.    For the reasons set forth in paragraphs 169 through 182, consumers have actually
8    been and will continue to be induced, caused and influenced, by the false, misleading and
9    deceptive certification of products by Ecocert as "Organic," to purchase such Ecocert-certified
10   products rather than Dr. Bronner's competing products.

11   184.    Dr. Bronner's has been and is likely to continue to be injured as a result of the
12   false, misleading and deceptive certification of products as "Organic" by Ecocert, by direct
13   diversion of sales from Dr. Bronner's to the companies selling the subject products certified by
14   Ecocert and by a lessening of the goodwill associated with Dr. Bronner's products.

15   185.    On information and belief, part of the sales revenue realized by companies
16   obtaining certification from Ecocert are paid to Ecocert in the form of charges and/or fees for the
17   certification process. Dr. Bronner's has been injured as a result of the false, misleading and
18   deceptive certifications, through diversion of sales revenue from itself to Ecocert in the form of
19   such charges and/or fees.

20   186.    For the reasons stated in paragraphs 169 through 185, Ecocert, by reason of its
21   certification of products as "Organic," has violated section 43(a) of the Lanham Act, 15 U.S.C. §
22   43(a) by engaging in false advertising and, in commercial advertising and promotion,
23   misrepresenting the nature, characteristics and qualities of goods sold by the companies whose
24   personal care products are certified by Ecocert.

25   187.    Unless Ecocert is enjoined from certifying such products, Dr. Bronner's will
26   continue to lose sales to these other direct competitor companies and to lose revenue to Ecocert,
27   as a result of the fact that Defendant Ecocert's certification of these products as "Organic"
28   constitutes false advertising.

- 37 -

Fundle Braus & Martel LLP
215 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

2318311976669.3
2318311976669.4

€                                    €

## PRAYER FOR RELIEF

WHEREFORE, pursuant to 15 U.S.C. section 43(a) and 1117(a), Plaintiff demands:

(1)    that each of Defendants Hain Celestial, Kiss My Face, Levlad, YSL, Country Life, Giovanni, and Cosway herein be permanently enjoined from advertising, labeling, promoting, representing or offering for sale as "Organic," "Organics," "100% Organic Active Ingredients," "Pure Organic Technology" any product which could not be labeled as "Organic" under the USDA NOP criteria and/or which contain any cleansing or moisturizing ingredient made in any part from any petrochemical or petrochemical compound; and/or which contain any cleansing or moisturizing ingredient not made exclusively from organic rather than conventional agricultural material;

(2)    that each of Defendants Hain Celestial, Kiss My Face, Levlad, YSL, Country Life, Giovanni, and Cosway herein be permanently enjoined from advertising, labeling, promoting, representing or offering for sale as "Made with Organic [up to three specified ingredients]" any product unless such product (i) is composed of at least 70% certified organic ingredients; (ii) does not contain any cleansing or moisturizing ingredient made in any part from any petrochemical or petrochemical compound; and (iii) does not contain any cleansing or moisturizing ingredient which is not made exclusively from organic rather than conventional organic material except to the extent organic material is not commercially available;

(3)    that Dr. Bronner's be awarded the profits of each of Defendants Hain Celestial, Kiss My Face, Levlad, YSL, Country Life, Giovanni, and Cosway derived from the literally false, impliedly false and confusing, misleading and/or deceptive advertising, labeling and promotion of personal care products as "Organic," "Organics," "Pure Organic Technology" and/or "100% Organic Active Ingredients," in an amount to be determined at trial;

(4)   that Dr. Bronner's be awarded actual monetary damages sustained by Dr. Bronner's, consisting of Dr. Bronner's own lost profits, in an amount to be determined at trial, resulting from the diversion of sales from Dr. Bronner's to each of the Defendants Hain Celestial, Kiss My Face, Levlad, YSL, Country Life, Giovanni, and Cosway as a result of the literally false, impliedly false and confusing, misleading and/or deceptive advertising, labeling and promotion of personal care

- 38 -

Foulke Brown & Martel LLP
215 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

23183\1976669.3
23183\1976669.4

SECOND AMENDED COMPLAINT

1    products as "Organic," "Organics," "Pure Organic technology" and/or "100% Organic Active

2    Ingredients," in an amount to be determined at trial;

3        (5) that Dr. Bronner's be awarded damages against Defendants Hain Celestial, Kiss My

4    Face, Levlad, YSL, County Life, Giovanni and Cosway for a sum above the amount found as

5    actual damages, to be determined by the Court according to the circumstances of the case, not

6    exceeding three times the amount of actual damages sustained by Dr. Bronner's;

7        (6) that Defendants OASIS and Ecocert be permanently enjoined from certifying,

8    promoting, or advertising, or representing as "Organic," by authorizing their certification marks

9    to appear on products, or otherwise, any product for sale within the United States which cannot

10   lawfully be labeled as "Organic" under the NOP criteria, which NOP criteria properly reflects and

11   incorporates basic organic consumer expectations and criteria that OASIS and Ecocert do not;

12       (7)    that Defendant Ecocert be permanently enjoined from certifying, promoting,

13   advertising, or representing as "Made with Organic [up to three specified ingredients]" any

14   product which does not meet basic organic consumer criteria, namely: (i) is composed of less than

15   70% certified organic ingredients, not including the water in organic botanical extracts as an

16   "organic" ingredient; (ii) contains cleansing or moisturizing ingredients made in any part from

17   any petrochemical or petrochemical compound; (iii) contains cleansing ingredients not made

18   exclusively from organic, rather than conventional, agricultural material, except to the extent such

19   organic agricultural material is not commercially available;

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

- 39 -

23183\1976669.3
23183\1976669.4

SECOND AMENDED COMPLAINT

1    (8)    the reasonable costs of suit herein incurred;

2    (9)    Plaintiff's reasonable attorney's fees;

3    and

4    (10)    such other relief as the Court deems just and proper.

5
     Dated: July 1, 2009                          FARELLA BRAUN & MARTEL LLP
6

7
                                                  By:
8                                                      John L. Cooper

9                                                 Attorneys for Plaintiffs
                                                  ALL ONE GOD FAITH, INC.,
10                                                d/b/a DR. BRONNER'S MAGIC SOAPS,
                                                  a California corporation
11
                                                  Of Counsel:
12
                                                  Joseph E. Sandler
13                                                John Hardin Young
                                                  SANDLER, REIFF & YOUNG, P.C.
14                                                300 M Street, S.E. #1102
                                                  Washington, D.C. 20003
15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                   - 40 -                          23183\1976669.3
                                                                   23183\1976669.4

                          SECOND AMENDED COMPLAINT

1

## PROOF OF SERVICE

2    I, Katherine Small, declare:

3    I am a citizen of the United States and employed in San Francisco County, California. I

4    am over the age of eighteen years and not a party to the within-entitled action. My business

5    address is 235 Montgomery Street, 17th Floor, San Francisco, California 94104. On July 1,

6    2009, I served a copy of the within document(s):

7

8    **PLAINTIFF ALL ONE GOD FAITH, INC.'S SECOND AMENDED COMPLAINT
     FOR DAMAGES FOR AND INJUNCTIVE RELIEF AGAINST FALSE
     ADVERTISING IN VIOLATION OF SECTION 43(A) OF THE LANHAM ACT**

9

10

11   ☒  **by E-MAIL** by transmitting via e-mail the document(s) listed above to the e-mail
        address(es) set forth below on this date before 5:00 p.m.

12   ☐  **by FACSIMILE** by transmitting the document(s) listed above to the fax number(s) set
        forth below.

13

14   ☒  **by U.S. MAIL.** I placed the document(s) listed above in a sealed envelope, addressed as
        set forth below, with postage thereon fully prepaid, and deposited such envelope for
15      collection. I am readily familiar with the practice of Farella Braun + Martel LLP for
        collection and processing of correspondence for mailing, said practice being that in the
        ordinary course of business, mail is deposited with the United States Postal Service the
16      same day as it is placed for collection.

17   ☐  **by OVERNIGHT DELIVERY.** I placed the document(s) listed above in a sealed
        envelope, addressed as set forth below, and deposited such envelope for collection. I am
18      readily familiar with the practice of Farella Braun + Martel LLP for collection and
        processing of correspondence for overnight delivery, said practice being that in the
19      ordinary course of business, the envelope(s) will be timely deposited in a box or other
        facility regularly maintained by the delivery service on the same day as it is placed for
20      collection.

21   ☐  **by HAND DELIVERY.** I placed the document(s) listed above in a sealed envelope,
        addressed as set forth below, and caused said envelope to be delivered by Messenger.
22

23

24

25

26

27

28

Proof of Service

23183\1983499.1

1   Thomas H. Clarke, Jr.
    Timothy A. Dolan
2   Ropers, Majeski, Kohn & Bentley
    201 Spear Street, Suite 1000
3   San Francisco, CA 94105
    T: (415) 543-4800
4   F: (415) 972-6301
    E-mail: tclarke@ropers.com
5   tdolan@ropers.com

6   Attorneys for Ecocert, Inc. and Ecocert France
    (SAS)
7

8   William J. Friedman
    Law Offices of William J. Friedman
9   107 S. West Street
    Alexandria, VA 22314
10  E-mail: pedlarfarm@gmail.com

11  Attorneys for The Hain Celestial Group, Inc.,
    Kiss My Face Corporation and Levlad, Inc.
12

13

14

15  James M. Mattesich
    Marc B. Koenigsberg
    Angela Diesch
16  Greenberg Traurig LLP
    1201 K Street, Suite 1100
17  Sacramento, CA 95814-3938
    T: (916) 442-1111
18  F: (916) 448-1709
    E-mail: mattesichi@gtlaw.com
19  koenigsbergm@gtlaw.com
    diescha@gtlaw.com

20  Attorneys for YSL Beaute, Inc.

21

22  Rhonda Klick, Esq.
    Westrup Klick LLP
23  444 West Ocean Blvd., Suite 1614
    Long Beach, CA 90802-4524
    T: (562) 432-2551
24  F: (562) 435-4856
    E-mail: rklick@wkalaw.com
25
    Attorneys for Cosway Company, Inc.
26

27

28

Simon J. Frankel
Meg Wilkinson
Covington & Burling LLP
One Front Street
San Francisco, CA 94111-5356
T: (415) 591-6000
F: (415) 591-6091
E-mail: sfrankel@cov.com
        mwilkinson@cov.com

Attorneys for The Hain Celestial Group, Inc., Kiss
My Face Corporation and Levlad, Inc.

David Greene
James R. Wheaton
First Amendment Project
1736 Franklin Street, 9th Floor
Oakland, CA 94612-3442
T: (510) 208-7744
F: (510) 208-4562
E-mail: dgreene@thefirstamendment.org
        wheaton@thefirstamendment.org

Attorneys for Organic and Sustainable Industry
Standards, Inc.

David Gurnick
Stephen T. Holzer
Lewitt, Hackman, Shapiro, Marshall &
Harlan LLP
16633 Ventura Boulevard, 11th Floor
Encino, CA 91436-1865
T: (818) 907-3285
F: (818) 981-4764
E-mail: dgurnick@lewitthackman.com
        sholzer@lewitthackman.com

Attorneys for Giovanni Cosmetics, Inc.

Benjamin K. Riley
Howrey LLP
525 Market Street, Suite 3600
San Francisco, CA 94105-2708
T: (415) 848-4950
F: (415) 848-4999
E-mail: rileyb@howrey.com

Attorneys for Country Life, LLC

1   Kathleen D. Patterson
    Rocky C. Tsai
2   Orrick, Herrington & Sutcliffe LLP
    405 Howard Street
3   San Francisco, CA  94105-2669
    T:  (415) 773-5700
4   F:  (415) 773-5759
    E-mail: kpatterson@orrick.com;
5            rtsai@orrick.com

6   Attorneys for Estee Lauder, Inc.

7       I declare under penalty of perjury under the laws of the State of California that the

8   foregoing is true and correct.

9       Executed on this 1st day of July, 2009, at San Francisco, California.

10

11

12                                              KATHERINE SMALL

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28