# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| ALL ONE GOD FAITH, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE HAIN CELESTIAL GROUP, INC. ET AL, <br><br> Defendants. | Case Number C 09-03517 JF (HRL) <br><br> **ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND GRANTING PLAINTIFF'S MOTION TO DISMISS ECOCERT'S COUNTER-CLAIM** <br><br> Re: Docket Nos. 15, 17, 25, 27, 39 |

## I. Background

### A. Factual and Procedural Background

Plaintiff All One God Faith, Inc., doing business as Dr. Bronner's Magic Soaps ("Plaintiff"), makes and sells personal care and cosmetic products. Plaintiff alleges that it labels and markets certain of its soap products as United States Department of Agriculture ("USDA") certified "organic" or "Made with Organic" oils in compliance with USDA National Organic Program ("NOP") standards. Second Amended Complaint ("SAC") ¶¶ 75-82. In 2003, Plaintiff held USDA certification with respect to nine specific bar soap products and six specific liquid soap products. *Id.* ¶ 77. Plaintiff alleges that its liquid and bar soaps comply with USDA requirements for labeling a product as "Made with Organic [specified ingredients]," are labeled as such, and are "thus in satisfaction of the basic organic consumer expectations and criteria that the NOP criteria reflect." *Id.*

Defendants Hain Celestial Group, Inc., Kiss my Face Corporation, and Levlad LLC ("The Hain Defendants"), Giovanni Cosmetics, Inc., Country Life, LLC, Cosway Company, Inc., and YSL Beaute ("Defendants") manufacture, sell and/or distribute liquid soaps, bodywashes, shampoos, hair conditioners, hair rinses, cleansing milks, cleansing gels, foaming cleansers, lip balms and/or facial cleansers ("personal care products") labeled as "organic" in direct competition with Plaintiff. *Id.* ¶ 83. Plaintiff claims that these products are not "organic" as that "term is understood by consumers" because the products are made from conventional agricultural material rather than organic material, contain ingredients made from petrochemicals, contain petrochemical compounds, and/or are preserved with synthetic petrochemical preservatives. *Id.* ¶¶ 60-70, 79-130, 136-37 (explaining that consumer expectations of personal care products labeled as organic are reflected in the NOP criteria for the same). Plaintiff alleges that Defendants falsely, misleadingly and confusingly label and advertise products as "organic," resulting in loss of sales by Plaintiff. *Id.* ¶¶ 136-151.

Defendant Ecocert[1] certifies products, including some of Defendants' products, as "organic" based on its own, privately-determined standards. The SAC alleges that Ecocert has products certified as "organic" in a manner that is inconsistent with consumer expectations and in some instances violates its own standards, resulting in loss of sales by Plaintiff. *Id.* ¶¶ 19-25, 115, 184-85. In its counter-claim, Ecocert alleges that Plaintiff's labeling is confusing and misleading to consumers because Plaintiff labels its products as USDA-certified but does not separately list sodium hydroxide as an ingredient, even though sodium hydroxide is used by Plaintiff in the saponification of organic oils. Counter-Claim ¶¶11-14, 16-17.

On April 28, 2008, Plaintiff filed its original complaint in the San Francisco Superior Court, alleging one cause of action under California Business & Professions Code Section 17200 ("Section 17200") against most of the Defendants herein. *See* Notice of Removal, Ex. A. On August 6, 2008, Plaintiff filed a first amended complaint, again alleging a single cause of action

---

[1] For clarification, Ecocert France (SAS) is a French corporation and Ecocert, Inc. is a corporate affiliate of Ecocert France organized under the laws of the State of Delaware.

under Section 17200.  *See id.,* Ex. B.  The basic claim in these pleadings was that Defendants have engaged in unfair competition by selling and marketing cosmetic products using the term "organic" when those products are not in fact "organic" as that term is defined in the NOP standards.  In particular, Plaintiff alleged that Ecocert had certified as "organic" products that no reasonable consumer would consider to be "organic" and that in some cases violated Ecocert's own labeling standards.  *See id.*  On June 1, 2009, the Superior Court entered an order granting Defendants' motion for judgment on the pleadings with leave to amend, concluding that Plaintiff lacked standing under California Business and Professions Code Section 17204.  *Id.*, Ex. E.

On July 1, 2009, Plaintiff filed the operative SAC, alleging that Defendants and Ecocert have violated Section 43(a) of the Lanham Act.  On July 31, 2009, all Defendants timely removed the action to this Court based upon federal question jurisdiction.[2]  28 U.S.C. § 1331.  On August 7, 2009, Ecocert filed its answer and its counter-claim against Plaintiff.  On August 7, 2009, the Hain Defendants moved to dismiss the SAC pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  Giovanni Cosmetics, Inc., Country Life, LLC, Cosway Company, Inc., and YSL Beaute subsequently joined in the motion, and YSL Beaute filed a separate motion to dismiss on independent grounds.  Plaintiff moves to dismiss Ecocert's counter-claim pursuant to Rule 12(b)(6).

---

[2]  On October 15, 2008, putative Defendant Organic and Sustainable Industry Standards, Inc. ("OASIS") filed a Notice of Appeal of the Superior Court's October 8, 2008 order denying its special motion to strike under California Code of Civil Procedure Section 426.16 (the Anti-SLAPP statute).  At the time the SAC was filed, Plaintiff's claim against OASIS was on appeal. The appeal of a ruling on an anti-SLAPP motion imposes an automatic stay of all further trial court proceedings on the merits. *Varian Med. Sys., Inc. v. Delfino*, 35 Cal.4th 180, 193-96 (2005); *see also* Cal. Civ. Proc. Code § 916.  The stay applies specifically to the filing of an amended complaint, and accordingly the complaint that was operative when OASIS filed its special motion to strike the FAC remains the operative pleading against OASIS.  *See Roberts v. Los Angeles County Bar Ass'n,* 105 Cal.App.4th 604, 612-13 (2003).  OASIS thus was not required to join in the petition for removal.  *United Computer Sys. Inc. v. AT&T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002).

3

## B. Regulatory Background

### 1. The Organic Foods Products Act and the NOP's production and labeling standards for agricultural products

The Organic Food Products Act of 1990, 7 U.S.C. §§ 6501 *et seq.* ("OFPA") authorized the USDA to implement the NOP, providing for establishment and enforcement of standards for labeling agriculture and food products as "organic." SAC ¶ 33. The purpose of the statute is "(1) to establish national standards governing the marketing of certain agricultural products as organically produced products; (2) to assure consumers that organically produced products meet a consistent standard; and (3) to facilitate interstate commerce in fresh and processed food that is organically produced." 7 U.S.C. §6501. The NOP was established in 2000. *See* National Organic Program, 65 Fed. Reg. 80,548 (Dec. 21, 2000) (codified as 7 C.F.R. pt. 205) ("the Final Rule"). The program includes standards for growing and producing organic agricultural products, including grains, fruits, vegetables, livestock, etc. *See* 7 C.F.R. Part 205, Subpart C. Among other things, the regulations govern use of the term "organic" in the labeling and marketing of such agricultural and food products. *See* 7 C.F.R. Part 205, Subpart D. The statute requires that agricultural products labeled as "organic" be certified as meeting the requirements of the regulations by a certifying agent accredited by the USDA, and forbids the labeling as "organic" products that have not been so certified. 7 U.S.C. §§ 6514(a), 6515, 6519." SAC ¶ 34. The NOP mandates that govern the production, marketing, and labeling of "organic" products are complex, detailed, and specific. *See* SAC ¶¶ 33- 44 (setting forth the USDA NOP's "legal framework" for production and labeling of organic products).

### 2. Enforcement of organic product standards

In enacting the OFPA, Congress created an exclusive federal mechanism for evaluating and approving synthetic materials and for challenging decisions made by the USDA pursuant to that mechanism. It expressly declined to create a private right of action to enforce the statute or its implementing regulations. In order to create a consistent national standard for organic products, Congress authorized the USDA to create a National List of approved and prohibited ingredients that may or may not be permitted in the production, handling, and processing of

4

organic products. *See* 7 U.S.C. § 6517. Congress created the National Organic Standards Board ("NOSB") to advise the Secretary of Agriculture with respect to the ingredients that should be approved or prohibited on the National List. *See* 7 U.S.C. § 6518. It also mandated that the NOSB "establish procedures under which persons may petition the [NOSB] for the purpose of evaluating substances for inclusion on the National List." 7 U.S.C. § 6518(n).

The statute requires the USDA to establish an "expedited administrative appeals procedure" that allows a person to appeal any action taken under the federal program by the USDA or its certifying agents if that action "(1) adversely affects such person; or (2) is inconsistent with the organic certification program established under this chapter." 7 U.S.C. § 6520(a). There also is a judicial remedy for persons dissatisfied with a "final decision" of the USDA. *See* 7 U.S.C. § 6520(b) (authorizing the appeal of a final decision by the Secretary to the United States District Court). Apart from this limited private remedy, only the federal government is authorized to initiate enforcement of the statute. *See* 7 U.S.C. § 6519(a) (establishing that "any person who knowingly sells or labels a product as organic, except in accordance with this chapter, shall be subject to a civil penalty of not more than $10,000).

The Final Rule provides that "[t]he NOP is ultimately responsible for the oversight and enforcement of the program, including...cases of fraudulent or misleading labeling." Final Rule at 80,557. The USDA has indicated that it accepts all consumer and business complaints regarding alleged misuse of the word "organic," and it has rejected private enforcement actions. According to the Final Rule,

> [a]nyone may file a complaint, with USDA, an [State Organic Program's] SOP's governing State official, or certifying agent, alleging violation of the Act or these regulations. Certifying agents, SOP's governing State officials, and USDA will receive, review, and investigate complaints alleging violations of the Act or these regulations. . .Citizens have no authority under the NOP to investigate complaints alleging violation of the Act or these regulations...Only USDA may bring an action under 7 U.S.C. § 6519.

*Id.* at 80,627; *see also id.* at 80,556 (noting, in a discussion of common law nuisance claims for pesticide drift onto organic farms, that the OFPA "itself does not provide for the right to bring suit as a Federal cause of action, and [the USDA] could not grant it through this regulation").

### 3. Application of the OFPA to personal care products

The OFPA defines the term "agricultural product" as "any agricultural commodity or product, whether raw or processed, including any commodity or product derived from livestock that is marketed in the United States for human or livestock consumption." 7 U.S.C. § 6502(1). The statute provides further that "no person may affix a label to, or provide other market information concerning, an agricultural product if such label or information implies, directly or indirectly, that such product is produced and handled using organic methods, except in accordance with this chapter." *Id.* at § 6505(a)(1)(B).

Relying upon this statutory language, Plaintiff contends that the entire regulatory regime, by its terms, applies *only* to food and "agricultural product[s]" that are "marketed in the United States for human or livestock consumption." 7 U.S.C. § 6502(1). Plaintiff suggests that the USDA consistently has made it clear that the comprehensive scheme of mandatory regulation of the use of the term "organic" in labeling does not apply to the labeling of personal care products. At the end of 2000, during deliberations on the regulations, commenters "asked that the NOP include in the final rule certification standards for cosmetics, body care products, and dietary supplements." Final Rule, 80,557. The USDA concluded, however, that "[t]he ultimate labeling of cosmetics, body care products, and dietary supplements...is outside the scope of these regulations." *Id.*

In May 2002, the USDA issued a "Policy Statement on National Organic Program Scope" indicating that because cosmetics and body care products may "contain agricultural products the producers and handlers of such products, classes of products and production systems are eligible to seek certification under the NOP." *See* Hain Defendants' Request for Judicial Notice in Support of Motion to Dismiss ("Def. RJN"), Ex. H.[3] At the same time, it clarified that NOP

---

[3] Plaintiff does not oppose the Hain Defendants' Requests for Judicial Notice of Exhibits A-M and this Court takes judicial notice of them as they are all matters of public record. *See* Fed. R. Evid. 201(b); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994) (finding that considering facts outside of those alleged in the complaint when contained in materials of which the court may take notice, such as "[r]ecords and reports of administrative bodies" is acceptable within a

6

labeling standards were not mandatory for personal care and cosmetic products, but that manufacturers of such products voluntarily could seek USDA certification and only then would be subject to complying with the NOP standards for organic labeling.

In April 2004, the USDA changed its position, declaring that producers of personal care and cosmetic products could not seek even voluntary participation in the NOP. In a Guidance Statement, the USDA stated that the "OFPA does not extend" to products over which "USDA has no regulatory authority," including such products as "personal care products." Def. RJN, Ex. I at 2-3. A few months later, the USDA again changed its position and suspended the Guidance Statement, thereby once again permitting qualified personal care product handlers voluntarily to certify and participate in the NOP. *See* Opp. Mot. at 7.

Plaintiff asserts that notwithstanding the voluntary nature of the NOP with respect to personal care products, Defendants' misrepresentation of their products violates the regulatory scheme. Relying upon a Letter Decision by the USDA in 2008, Plaintiff also alleges that there is no available administrative remedy for the conduct that is at issue in this lawsuit. USDA National Organic Program's March 9, 2005 Letter Decision, Plaintiff's Request for Judicial Notice In Support of Opposition ("P. RJN"), Ex. A[4] (denying an administrative complaint filed by the Organic Consumers Association about the mislabeling as "organic" a particular personal care product and holding expressly that the "U.S. Department of Agriculture (Department) has not asserted jurisdiction over the ultimate labeling of personal care products.")

The USDA issued its most recent guidance on the application of NOP standards to personal care products in April 2008. USDA Guidance Statement, "Cosmetics, Body Care Products and Personal Care Products." Def. RJN, Ex. B. This Guidance Statement confirmed again that producers and handlers of personal care products may seek USDA certification:

---

motion to dismiss).

[4] The Court will take judicial notice of Plaintiff's RJN, Exhibit A as it is a public record. *See* Fed. R. Evid. 201(b); *Barron,* 13 F.3d at 1377 (9th Cir. 1994).

> If a cosmetic body care product or personal care product contains or is made up of agricultural ingredients, and can meet the USDA/NOP organic production, handling, processing and labeling standards, it may be eligible to be certified under the NOP regulations...Any cosmetic, body care product or personal care product that does not meet the production, handling, processing, labeling, and certification standards described above, may not state, imply or convey in any way that the product is USDA-certified organic or meets the USDA organic standards.

*Id.* At the same time, the USDA again made clear that the NOP regulatory regime does not govern the labeling of personal care products unless the labeling itself implies certification under the specific NOP standards:

> USDA has no authority over the production and labeling of cosmetics, body care products and personal care products that are not made up of agricultural ingredients or do not make any claims to meeting USDA organic standards. Cosmetics, body care products, and personal care products may be certified to other, private standards and be marketed to those private standards in the United States. These standards might include foreign organic standards, eco-labels, earth friendly, etc. USDA's NOP does not regulate these labels at this time. *Id.*

Plaintiff contends that because a product that meets the NOP standards may be eligible to carry the USDA label, products that do not meet the standards may not carry the USDA label and "may not state, imply or convey in any way that the product is USDA-certified organic or meets the USDA organic standards." *Id.*

In March 2009, the NOSB adopted a discussion draft recommendation urging USDA to amend its existing regulations to (1) "assur[e] consumers that the federal government is policing [organic personal care product] claims"; and (2) "allow[] for the development of a complete federal organic cosmetic program." *See* Def. RJN, Ex. K (March 23, 2009, NOSB Discussion Document). These recommendations were to be considered for final adoption at the NOSB's November 2009 meeting; the results of that consideration are unknown to the Court as of the date of this Order.

## II. Legal Standard

### A. Motion to Dismiss Pursuant to Rule 12(b)(1)

Because Article III standing "pertain[s] to a federal court's subject-matter jurisdiction under Article III, [it is] properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) . . .". *White v. Leem,* 227 F.3d 1214, 1242 (9th Cir. 2002). "A Rule 12(b)(1)

8

jurisdictional attack may be facial or factual." *Safe Air For Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted). With a factual Rule 12(b)(1) attack, a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment. *See id.* It need not presume the truthfulness of the plaintiff's allegations. *White,* 227 F.3d at 1242, citing *Gemtel Corp. v. Community Redevelopment Agency,* 23 F.3d 1542, 1544 n.1 (9th Cir. 1994).

### B. Motion to Dismiss pursuant to Rule 12(b)(6)

Dismissal under Fed. R. Civ. P. 12(b)(6) "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Medical Center,* 521 F.3d 1097, 1104 (9th Cir. 2008). For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the court must construe the complaint in the light most favorable to the plaintiff. *Jenkins v. McKeithen,* 395 U.S. 411, 421 (1969). At the same time, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal citations omitted). Thus, a court need not accept as true conclusory allegations, unreasonable inferences, legal characterizations, or unwarranted deductions of fact contained in the complaint. *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754-755 (9th Cir. 1994). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'- 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 129 S.Ct. 1949, 1590 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Department of Corrections,* 66 F.3d 245, 248 (9th Cir. 1995). When amendment would be futile, however, dismissal may be ordered with prejudice. *Dumas v. Kipp,* 90 F.3d 386, 393 (9th Cir. 1996).

### III. Discussion

#### A. Defendants' Motion Pursuant to Rule 12(b)(1)

##### 1. Whether Plaintiff Has Failed to Exhaust Administrative Remedies

"Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975). A plaintiff that has failed to exhaust administrative remedies fails to establish subject-matter jurisdiction. *Id.* at 764-65. With respect to the claims at issue here, Congress mandated that the USDA establish an "expedited administrative appeals procedure" that allows appeal of any action taken under the federal program by the USDA or its organic certifying agents if that action "(1) adversely affects such person; or (2) is inconsistent with the organic certification program..." 7 U.S.C. § 6520(a). The OFPA also provides specifically that a district court has subject-matter jurisdiction only upon the appeal of a final decision of the Secretary of the USDA. *See* 7 U.S.C. § 6520(b).

It is undisputed that the USDA has declined expressly to impose the NOP standards on personal care products. However, this fact does not excuse Plaintiff from exhausting the USDA's administrative appeal procedure. As an adversely affected "person" under the OFPA, Plaintiff may file an administrative complaint with the USDA challenging that decision.[5]

---

[5] Plaintiff asserts that the best evidence that there is no administrative remedy, besides the USDA's April 2008 Guidance Statement on its "lack of authority," is a 2005 USDA administrative decision in response to a complaint brought by the Organic Consumers Association ("OCA") concerning a cosmetic product. In this complaint, OCA challenged the allegedly misleading labeling of certain personal care products as "organic." USDA dismissed the complaint concluding that "[t]he U.S. Department of Agriculture (Department) has not asserted jurisdiction over the ultimate labeling of personal care products." Plaintiff's RJN, Ex. A. The Court is not persuaded that it may exercise subject-matter jurisdiction based upon the language in this four-year old administrative decision given that the decision was not final and was never appealed to the Secretary under 7 U.S.C. § 6520(b), and in light of the fact that the USDA's position with respect to the application of NOP standards to personal care products appears to have evolved significantly since that date.

### 2. Primary Jurisdiction Doctrine

The primary jurisdiction doctrine does not implicate subject-matter jurisdiction as such, but it is a "prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decisionmaking responsibility should be performed by the relevant agency rather than the courts." *Syntek Semiconductor Co., Ltd v. Microchip Technology, Inc.*, 307 F.3d 775, 780 (9th Cir. 2002). The primary jurisdiction doctrine applies when both the court and an administrative agency have jurisdiction over the same matter. *United States v. Western Pac. R.R. Co.,* 352 U.S. 59, 63-64 (1956). Four factors traditionally are considered by the court in applying the doctrine: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Syntek Semiconductor Co., Ltd*, 307 F.3d at 781.

Plaintiff argues that in this case, the USDA has no jurisdiction at all and that the primary jurisdiction doctrine is inapplicable. Opp. Mot. at 20, citing Def. RJN, Ex. B (USDA April 2008 Guidance) (stating that the USDA "lacks authority" over the labeling as "organic" personal care products) and Plaintiff's RJN, Ex. A (March 9, 2005 NOP letter decision) (denying relief on a challenge to the labeling of personal care products and concluding that the USDA "has not asserted jurisdiction over the ultimate labeling of personal care products.") However, while to date the USDA has declined to exercise its authority with respect to the labeling of organic personal care products, it has asserted jurisdiction over such products in other ways, such as allowing producers and handlers of such products, including Plaintiff, to seek USDA certification under the NOP. Def. RJN, Ex. H. The USDA's jurisdiction over this product class is further evidenced by the NOSB Certification, Accreditation, and Compliance Committee Discussion Document, circulated on March 23, 2009, that details a plan to recommend mandatory regulation of the labeling of cosmetic products by the NOP. Def. RJN, Ex. K (National Organic Standards Board - Certification, Accreditation, and Compliance Committee - Discussion Document

Circulated March 23, 2009).  Although the discussion document has not been implemented, its existence presupposes that the USDA has jurisdiction over the products involved.

Plaintiff argues alternatively that its claims do not "require[] resolution of an issue of first impression or of a particularly complicated issue that Congress has committed to a regulatory agency." *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172 (9th Cir. 2002).  Plaintiff contends that the issues it raises are not complicated because they "involve[] simply comparing consumer understanding and expectations about the contents of Defendants' products to the actual contents of those products." Opp. Mot. at 21.  However, while Plaintiff might be able to assert a Lanham Act claim that presents this type of straight-forward allegation of misrepresentation based upon consumer expectations, the SAC goes much further.  As argued by Defendants, the Lanham Act claim in the SAC is premised on the very regulatory framework – labeled as the relevant "legal framework" in the SAC – developed by the USDA.  It also expressly asks this Court to enjoin Defendants from labeling its products as "organic" unless and until they comply with agency standards.  SAC ¶¶ 33-51, Prayer for Relief ¶ 1.  Under the primary jurisdiction doctrine, it would be inappropriate for this Court to assume the USDA's regulatory role, interpret the NOP's  regulatory framework, and impose standards that the USDA itself has refused to impose upon Defendants.

**B. Defendants' Motions Pursuant to Rule 12(b)(6)**

**1. Motion of Defendants Hain Celestial, Kiss My Face, Levlad, Giovanni, Cosway, Country Life, and YSL Beaute Pursuant to Rule 12(b)(6)**

A Lanham Act claim may not be maintained if evaluating the alleged falsity or misleading nature of the representation at issue would require a court to interpret and apply statutory or regulatory provisions that fall under the exclusive jurisdiction of a federal government agency.  *Mut. Pharm. Co. v. Ivax Pharm., Inc.*, 459 F.Supp.2d 925, 934-35 (C.D. Cal. 2006) ("courts have refused to allow a Lanham Act claim to proceed where, in order to determine the falsity or misleading nature of the representation at issue, the court would be required to interpret and then apply FDCA statutory or regulatory provisions"); *see also Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 231 (3rd Cir. 1990) (rejecting claim that

12

would require court to usurp administrative agencies' responsibility for interpreting and enforcing potentially ambiguous regulations). "On the other hand, 'the simple fact that a matter touches upon an area dealt with by [a regulatory agency] is not a bar to proceeding with a claim under the Lanham Act.'" *Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*, 642 F.Supp.2d 1112, 1118 (C.D. Cal. 2009) ("*Pom Wonderful II*"), quoting *Mut. Pharm. Co.*, 459 F.Supp.2d at 935; *see also Pom Wonderful LLC II*, 642 F.Supp2d at 1118, citing *Mut. Pharm. Co.. 459* F.Supp.2d at 925 (explaining further that "the key issue in the line of cases dealing with FFDCA or FDA regulation preclusion of Lanham Act claims is whether the false advertising involves a fact that can be 'easily verified,' without requiring the truth of the fact to be determined by the FDA").

As discussed above, the labeling and marketing of "organic" products falls within the exclusive jurisdiction of the USDA. The USDA's current position on the NOP standards and their application to personal care products is two-fold: (1) producers and handlers may comply voluntarily with the NOP standards, submit themselves to USDA organic certification, and market and label their products as USDA certified; and (2) compliance with the NOP standards is not mandated with respect to personal care products; instead, personal care products "may be certified by private standards and be marketed to those private standards in the United States. These standards might include foreign organic standards, eco-labels, earth friendly, etc. USDA's NOP does not regulate these labels at this time." Def. RJN, Ex. B. Personal care products that do not meet the NOP's production, handling, processing, labeling and certification standards may not be labeled or marketed as USDA-certified. *Id.*

While Plaintiff's opposition papers carefully craft an argument that potentially could sustain a viable Lanham Act claim without reference to the NOP standards, Defendants note correctly that the SAC itself is replete with references to and regulatory history of the NOP, its definition of "organic," and its standards for labeling organic products. SAC ¶¶ 33-59; Hain Defendants' Reply at 9, citing *Barbera v. WMC Mortgage Corp.,* No. C 04-3738 (SBA), 2006 WL 167632, at *2 n. 4 (N.D. Cal. Jan. 19, 2006) ("It is axiomatic that the complaint may not be

amended by the briefs in opposition to a motion to dismiss.") Indeed the SAC alleges explicitly that "all of the basic organic consumer criteria and expectations ...are reflected in the USDA NOP criteria for organic personal care products," SAC ¶ 69, and urges this Court to do precisely what the USDA repeatedly has refused to do, which is to enjoin Defendants "from advertising, labeling, promoting, representing or offering for sale as 'Organic,' 'Organics,' '100% Organic Active Ingredients,' 'Pure Organic Technology' any product which could not be labeled as 'Organic' under the USDA NOP criteria..." *Id.,* Prayer for Relief ¶ 1. The Court could not grant such relief without reference to and interpretation of the NOP, which would be in excess of its jurisdiction.[6] *Sandoz Pharm. Corp.*, 902 F.2d at 230-32. The injunctive relief requested by Plaintiff would negate the legislative bar on private actions and effectively would enforce the NOP standards against Defendants.

Despite these pleading defects, the Court is not persuaded that the SAC could not be amended to state a "valid (if hard to prove) complaint" in which the Lanham Act claim could survive. *Grove Fresh Distributors Inc. v. Everfresh Distributors, Inc.,* Nos. 89 C 1113, 89 C 1117 and 89 C 1118, 1989 WL 152670, at *3 (N.D. Ill. 1989) ("*Grove Fresh* II") (concluding that plaintiff could not rely upon the FDCA definition of "orange juice from concentrate" in establishing a violation of section 43(a), but could rely upon "other evidence establishing the proper market definition"); *Cytosport, Inc. v. Nature's Best, Inc.,* No. Civ. S-06-cv-1799, 2007 WL 1345379, at *3 (E.D. Cal. 2007) (concluding that plaintiff "does not need to rely on the FDCA or any FDA regulation to show that the statement...is misleading," but that plaintiff could

---

[6]  Plaintiff likens the present action to *Pom Wonderful LLC II*, in which the Court concluded that defendants' marketing of pomegranate and cranberry juices in its beverage product on the label when the product was almost entirely comprised of apple and grape juice stated a valid claim under the Lanham Act. However, the court's reasoning in that case highlights the difference between the factual allegations in the two cases. The court observed that, "it is theoretically possible to create a scenario where a court decision regarding Defendant's product label may conflict directly with FDA regulations; but on its face Plaintiff's complaint does not contest or attempt to enforce the FFDCA or FDA regulation requirements." *Pom Wonderful LLC*, 642 F.Supp.2d at 1120. In contrast, the SAC is replete with citations to the NOP standards and requests that the Court enjoin Defendants from labeling and marketing their products as "organic" unless and until they comply with these standards.

simply, "present evidence, such as consumer surveys, that indicate consumers would consider such statement misleading"), citing *Grove Fresh Distributors, Inc. v. Flavor Fresh Foods,* 720 F.Supp. 714, 716 (N.D. Ill. 1989) ("*Grove Fresh I*"). Accordingly, leave to amend will be granted.

## 2. YSL Beaute's Separate Motion Pursuant to 12(b)(6)

YSL Beaute contends separately that the SAC should be dismissed for failure to allege facts that would support a Lanham Act claim even assuming subject matter jurisdiction. To state a claim for false advertising under the Lanham Act, a plaintiff must allege that "(1) the defendant made a false statement either about the plaintiff's or its own product; (2) the statement was made in commercial advertisement or promotion; (3) the statement actually deceived or had the tendency to deceive a substantial segment of its audience; (4) the deception is material; (5) the defendant caused its false statement to enter interstate commerce; and (6) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to the defendant, or by a lessening of goodwill associated with plaintiff's product." *Newcal Industries, Inc., v. Ikon Office Solution*, 513 F.3d 1038, 1052 (9th Cir. 2008), quoting *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 n. 4 (9th Cir. 2002).

YSL Beaute claims that Plaintiff does not allege facts sufficient to show that Plaintiff's products compete directly with those of YSL Beaute. Plaintiff alleges that it sells liquid soaps throughout the United States; that YSL Beaute sells its "CARE" cleansing milk and purifying foaming cleanser throughout the United States, and that consumers "have in fact been induced" through YSL Beaute's false representations to purchase cosmetic products sold by YSL Beaute rather than the personal care products sold by Plaintiff. SAC ¶¶ 75, 111, 148. A mere allegation that YSL Beaute sells its liquid soaps and foaming cleanser throughout the United States and that consumers have been induced through false representations to purchase YSL Beaute's products rather than Plaintiff's is insufficient to state a Lanham Act claim. Plaintiff need not meet a heightened pleading requirement, but it does need to provide more than mere conclusory allegations or a repetition of the legal standard. *Clegg,* 18 F.3d at 754-755. "[W]here the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct the complaint has alleged-but it has not 'show[n]'- 'that the pleader is entitled to relief.'" *Iqbal,* 129 S.Ct. at 1950, quoting Fed. R. Civ. P. 8(a)(2). Plaintiff does not allege that its products can be found in the same store or even the same state as YSL Beaute's. Plaintiff asks the Court to infer that because both Plaintiff and YSL Beaute sell cosmetic products, both of which are labeled as organic, they compete directly with each other. This inference is unwarranted. *Clegg,* 18 F.3d at 754-755. Notably, Plaintiff alleges that the products of other Defendants are "typically sold in the same sections, and often on the same shelves, of the same retail outlets, including grocery stores, natural food stores, drug stores, and other outlets," SAC ¶ 83, and on the same websites. *Id.* ¶ 84.

### C. Plaintiff's motion to dismiss Ecocert's counter-claim

Ecocert's counter-claim fails to state a claim for false advertising under section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), for two reasons: (1) it is premised entirely on an alleged violation by Plaintiff of a labeling requirement alleged to have been promulgated by the USDA, but which in fact has not been promulgated and would force this court to interpret existing regulatory language; and (2) it fails to allege that Ecocert has been or is likely to be injured as a result of Plaintiff's false advertising.

Ecocert alleges that Plaintiff has violated NOP regulations by failing to identify separately in its ingredient list the ingredient used in the process of saponification of certified oils. Saponification is the process by which an organic oil is turned into soap and glycerin through hydrolyzation involving the addition of an alkali. Ecocert Opp. at 4. However, Ecocert's allegations with respect to this part are internally inconsistent. In its opposition papers, it alleges that Plaintiff fails to list glycerin, which remains in the finished product, *id.* at 4, while the counter-claim itself alleges that Plaintiff fails to list sodium hydroxide – not glycerin – in its ingredient list. Counter-Claim ¶¶ 11-14. It is undisputed that current NOP regulations require that an ingredient list include any substance "still present in the final commercial product as consumed." 7 C.F.R. § 205.2. However, the application of NOP regulations to the listing of an

ingredient used in saponification of organic oils but not present in the finished product on the product's label is uncertain.[7]  Sodium hydroxide no longer is retained in the finished product.

As discussed previously, this Court may not entertain a Lanham Act claim when doing so would require it to determine how a federal agency will interpret and enforce its own regulations. *Mut. Pharm. Co.,* 459 F.Supp.2d at 934 (holding that it is improper for a Court to "allow a Lanham Act claim to proceed where, in order to determine the falsity or misleading nature of the representations at issue, the court would be required to interpret and then apply [federal agency] statutory or regulatory provisions.")  The USDA recently has proposed requiring the listing of an ingredient used in the saponification of organic oils when that ingredient is not actually present in the finished product.  This proposal was made in a draft guidance document that has been circulated for comment but has not been adopted by the USDA.  Plaintiff's Request for Judicial Notice in Support of its Motion to Dismiss, Ex. B.[8]  The draft guidance is evidence that the alleged misrepresentation rests within an area of regulatory law that has not been settled by the agency.  Accordingly, the counter-claim fails to state a claim for false advertising under the Lanham Act.

Even if this Court were to find that Ecocert has pled a false statement based on a violation of established NOP standards, the counter-claim still would fail because Ecocert does not allege any injury or likelihood of injury as a result of Plaintiff's alleged false advertising.  Ecocert contends that Plaintiff's alleged mislabeling will injure Ecocert's "commercial interests and goodwill" and upset a "level playing field."  Ecocert Opp. at 6.  However, the counter-claim itself makes no such allegations or factual contentions.  In order to survive a motion to dismiss, a

---

[7]Ecocert does not cite any NOP regulation or guideline requiring the disclosure and separate identification of the NOP-allowed alkali used to make saponified organic oils included in the products. The NOP does maintain a short list of allowed synthetic ingredients that may be included in organic agricultural products, including alkalis such as potassium, sodium, and calcium hydroxide. *See* 7 C.F.R. §§ 205.605-606.

[8]The court will take judicial notice of Plaintiff's RJN, Exhibit B as it is a public record. *See* Fed. R. Evid. 201(b); *Barron,* 13 F.3d at 1377 (9th Cir. 1994).

17

complaint for false advertising under the Lanham Act must contain specific "allegations to satisfy the elements of the cause of action," including "how plaintiff has been or is likely to be damaged as a result of defendants' false statements." *AccuImage Diagnositcs Corp. v. Terarecon, Inc.*, 260 F.Supp.2d 941, 949 (N.D. Cal. 2003) .

## IV.  ORDER

Good cause therefore appearing, the motions to dismiss for lack of subject-matter jurisdiction are GRANTED as to Defendants The Hain Celestial Group, Inc, Kiss My Face Corporation, Levlad, LLC, Giovanni Cosmetics, Inc., Cosway Company, Inc., YSL Beaute and Country Life, Inc.  The motions to dismiss for failure to state a claim as to Defendants The Hain Celestial Group, Inc, Kiss My Face Corporation, Levlad, LLC, Giovanni Cosmetics, Inc., Cosway Company, Inc., Country Life, Inc, and YSL Beaute also are GRANTED.  Plaintiff's motion to dismiss the counter-claim filed by Ecocert is GRANTED.   Because it is not entirely clear that the defects in the pleadings could not be cured by amendment, both Plaintiff and Ecocert shall have leave to amend.  Any amended pleading shall be filed within thirty (30) days of the date of this order.  A case management conference is hereby scheduled for February 12, 2010.

**IT IS SO ORDERED.**

DATED: 12/14/09

_____
JEREMY FOGEL
United States District Judge__

18