**E-Filed 5/24/2010**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ALL ONE GOD FAITH, INC.,<br><br>Plaintiff,<br><br>v.<br><br>THE HAIN CELESTIAL GROUP, INC. ET AL,<br><br>Defendants. | Case Number C 09-03517 JF (HRL)<br><br>**ORDER[1] GRANTING YSL'S MOTION TO DISMISS AND STAYING ACTION AS TO ALL REMAINING DEFENDANTS**<br><br>Re: Docket Nos. 83, 84, 86, 87, 89, 94, 114 |

**I. Background**

**A. Factual and Procedural Background**

On January 13, 2010, Plaintiff All One God Faith, Inc., doing business as Dr. Bronner's Magic Soaps ("Plaintiff"), filed its third amended complaint ("TAC") alleging violations of Section 43(a) of the Lanham Act by Defendants Hain Celestial Group, Inc., Kiss my Face Corporation, and Levlad LLC (collectively, "The Hain Defendants"), Giovanni Cosmetics, Inc., Country Life, LLC, Cosway Company, Inc. ("Cosway"), YSL Beaute ("YSL") (collectively, "the Count I Defendants") and Ecocert France (SAS) and Ecocert, Inc. (collectively, "Ecocert"). Defendants[2] move to dismiss the TAC under the primary jurisdiction doctrine and pursuant to

---

[1] This disposition is not designated for publication in the official reports.

[2] On April 16, 2010, the parties stipulated to and the Court ordered the withdrawal of Levlad LLC's motion to dismiss *nunc pro tunc* in respect of the February 22, 2010 injunction

Fed. R. Civ. P. 12(b)(6). In addition, YSL and Cosway move to dismiss on independent grounds and Cosway also moves for a more definite statement.

On December 14, 2009, the Court granted Defendants' motions to dismiss Plaintiff's second amended complaint ("SAC") holding that: (1) Plaintiff has failed to exhaust administrative remedies available through the United States Department of Agriculture ("USDA"); (2) pursuant to the primary jurisdiction doctrine, it was inappropriate for this Court to interpret and impose the regulatory framework of the USDA National Organic Program ("NOP"), especially in light of the fact that the USDA itself has refused to apply the same standards to Defendants; and (3) Plaintiff has failed to state a claim under the Lanham Act because the allegations of the SAC required the Court to interpret, apply, and enforce federal regulatory standards that would negate the legislative prohibition against private actions. Order at 14, 18. The Court also concluded that Plaintiff had failed to state a Lanham Act claim against YSL because it did not allege adequately that Plaintiff's products and YSL's products are in competition. Because it was not entirely clear that the defects in the SAC could not be cured by amendment, Plaintiff was granted leave to amend.

The TAC does not invoke the NOP regulations explicitly. Instead, it alleges that the Count I Defendants' labeling of their products and Ecocert's certification of products as "Organic" or some derivation thereof are literally false, misleading or confusing to the consuming public because the products contain cleansing and moisturizing ingredients derived from conventional agricultural material, contain petrochemicals, or both. TAC ¶¶ 55-103. Plaintiff alleges that consumer survey research reflects the beliefs and expectations of consumers that personal care products labeled as organic will not contain synthetic compounds including preservatives, *id.* ¶ 34; cleansing or moisturizing agents derived from conventionally-produced agricultural materials, *id.* ¶ 35; or petrochemicals, *id.* ¶ 37. All of these alleged consumer

---

entered by the United States Bankruptcy Court for the District of Delaware in *In re: Natural Products Group, LLC, et al,* Case No. 10-10239 (BLS) (Defendant Levlad LLC's parent company).

2

Case Number C 09-03517 JF (HRL)
ORDER GRANTING YSL'S MOTION TO DISMISS WITHOUT LEAVE TO AMEND AND STAYING ACTION AS TO ALL REMAINING DEFENDANTS
(JFLC1)

expectations were alleged in the SAC, which expressly attributed these expectations to NOP criteria. MTD at 4 (asserting that "Plaintiff has merely switched the alleged source of consumer expectations from NOP criteria to consumer research surveys").

Plaintiff also amended its allegations with respect to its alleged competition with YSL in the marketplace. Plaintiff now asserts that its "liquid soaps and moisturizing lotions are available for sale directly to consumers, on the Internet, through Dr. Bronner's website," while YSL's products "are available for sale directly to consumers online, on the Internet, through a number of websites, including Sears and Fragrancenet.com, among others." *Id.* ¶ 54. Plaintiff and YSL thus allegedly "compete for the business of consumers searching online for 'Organic' liquid body cleansers and moisturizing lotions/creams." *Id.*

The day after it filed the TAC, Plaintiff also filed an administrative complaint with the USDA. In its administrative complaint, Plaintiff alleged that Defendants[3] do not comply with the NOP regulations in the labeling of their personal care products. Request for Judicial Notice ("RJN"), Ex. A (Plaintiff's Administrative Complaint).[4] It also contended that USDA has jurisdiction to impose mandatory regulation of the labeling as "organic" of personal care products and that Defendants' personal care products – because they are consumed by humans, marketed in the United States, and contain agricultural ingredients – are themselves agricultural products within the meaning of the OFPA and NOP regulations. *Id.* at 3, 6.

**B. Regulatory Background**

    **1. The Organic Foods Products Act and the NOP's production and labeling standards for agricultural products**

The Organic Food Products Act of 1990, 7 U.S.C. §§ 6501 *et seq.* ("OFPA") authorized the USDA to implement the NOP, providing for establishment and enforcement of standards for

---

[3] The respondent companies named in the administrative complaint include the same Defendants named in the instant action, as well as several additional companies.

[4] Plaintiff does not oppose any of Defendants' requests for judicial notice. The Court takes judicial notice of the administrative complaint as it is a matter of public record. *See Lee v. City of Los Angeles,* 250 F.3d 668, 688-89 (9th Cir. 2001), citing Fed. R. Evid. 201.

3

labeling agriculture and food products as "organic." The purpose of the statute is "(1) to establish national standards governing the marketing of certain agricultural products as organically produced products; (2) to assure consumers that organically produced products meet a consistent standard; and (3) to facilitate interstate commerce in fresh and processed food that is organically produced." 7 U.S.C. §6501. The NOP was established in 2000. *See* National Organic Program, 65 Fed. Reg. 80,548 (Dec. 21, 2000) (codified as 7 C.F.R. pt. 205) ("the Final Rule"). The program includes standards for growing and producing organic agricultural products, including grains, fruits, vegetables, livestock, etc. *See* 7 C.F.R. Part 205, Subpart C. Among other things, the regulations govern use of the term "organic" in the labeling and marketing of such agricultural and food products. *See* 7 C.F.R. Part 205, Subpart D. The statute requires that agricultural products labeled as "organic" be certified as meeting the requirements of the regulations by a certifying agent accredited by the USDA, and forbids the labeling as "organic" products that have not been so certified. 7 U.S.C. §§ 6514(a), 6515, 6519. The NOP mandates that govern the production, marketing, and labeling of "organic" products are complex, detailed, and specific.

### 2. Enforcement of organic product standards

In enacting the OFPA, Congress created an exclusive federal mechanism for evaluating and approving synthetic materials and for challenging decisions made by the USDA pursuant to that mechanism. It expressly declined to create a private right of action to enforce the statute or its implementing regulations. In order to create a consistent national standard for organic products, Congress authorized the USDA to create a National List of approved and prohibited ingredients that may or may not be permitted in the production, handling, and processing of organic products. *See* 7 U.S.C. § 6517. Congress created the National Organic Standards Board ("NOSB") to advise the Secretary of Agriculture with respect to the ingredients that should be approved or prohibited on the National List. *See* 7 U.S.C. § 6518. It also mandated that the NOSB "establish procedures under which persons may petition the [NOSB] for the purpose of evaluating substances for inclusion on the National List." 7 U.S.C. § 6518(n).

The statute requires the USDA to establish an "expedited administrative appeals procedure" that allows a person to appeal any action taken under the federal program by the USDA or its certifying agents if that action "(1) adversely affects such person; or (2) is inconsistent with the organic certification program established under this chapter." 7 U.S.C. § 6520(a). There also is a judicial remedy for persons dissatisfied with a "final decision" of the USDA. *See* 7 U.S.C. § 6520(b) (authorizing the appeal of a final decision by the Secretary to the United States District Court). Apart from this limited private remedy, only the federal government is authorized to initiate enforcement of the statute. *See* 7 U.S.C. § 6519(a) (establishing that "any person who knowingly sells or labels a product as organic, except in accordance with this chapter, shall be subject to a civil penalty of not more than $10,000).

The Final Rule provides that "[t]he NOP is ultimately responsible for the oversight and enforcement of the program, including...cases of fraudulent or misleading labeling." Final Rule at 80,557. The USDA has indicated that it accepts all consumer and business complaints regarding alleged misuse of the word "organic," and it has rejected private enforcement actions. According to the Final Rule,

> [a]nyone may file a complaint, with USDA, an [State Organic Program's] SOP's governing State official, or certifying agent, alleging violation of the Act or these regulations. Certifying agents, SOP's governing State officials, and USDA will receive, review, and investigate complaints alleging violations of the Act or these regulations. . .Citizens have no authority under the NOP to investigate complaints alleging violation of the Act or these regulations...Only USDA may bring an action under 7 U.S.C. § 6519.

*Id.* at 80,627; *see also id.* at 80,556 (noting, in a discussion of common law nuisance claims for pesticide drift onto organic farms, that the OFPA "itself does not provide for the right to bring suit as a Federal cause of action, and [the USDA] could not grant it through this regulation").

### 3. Application of the OFPA to personal care products

The OFPA defines the term "agricultural product" as "any agricultural commodity or product, whether raw or processed, including any commodity or product derived from livestock that is marketed in the United States for human or livestock consumption." 7 U.S.C. § 6502(1). The statute provides further that "no person may affix a label to, or provide other market

5

information concerning, an agricultural product if such label or information implies, directly or indirectly, that such product is produced and handled using organic methods, except in accordance with this chapter." *Id.* at § 6505(a)(1)(B).

At the end of 2000, during deliberations on the regulations, commenters "asked that the NOP include in the final rule certification standards for cosmetics, body care products, and dietary supplements." Final Rule, 80,557. The USDA concluded, however, that "[t]he ultimate labeling of cosmetics, body care products, and dietary supplements...is outside the scope of these regulations." *Id.*

In May 2002, the USDA issued a "Policy Statement on National Organic Program Scope" indicating that because cosmetics and body care products may "contain agricultural products the producers and handlers of such products, classes of products and production systems are eligible to seek certification under the NOP." *See* Hain Defendants' Request for Judicial Notice in Support of Motion to Dismiss the SAC ("Def. RJN SAC"), Ex. H.[5] At the same time, it clarified that NOP labeling standards were not mandatory for personal care and cosmetic products, but that manufacturers of such products voluntarily could seek USDA certification and only then would be subject to the NOP standards for organic labeling.

In April 2004, the USDA changed its position, declaring that producers of personal care and cosmetic products could not seek even voluntary participation in the NOP. In a Guidance Statement, the USDA stated that the "OFPA does not extend" to products over which "USDA has no regulatory authority," including such products as "personal care products." Def. RJN SAC, Ex. I at 2-3. A few months later, the USDA again changed its position and suspended the Guidance Statement, thereby once again permitting qualified personal care product handlers voluntarily to certify and participate in the NOP.

The USDA issued its most recent guidance on the application of NOP standards to

---

[5] The Court took judicial notice of Defendants' Exhibits A-M in its order dismissing Plaintiff's SAC. These documents remain a part of the record on this motion.

6

Case Number C 09-03517 JF (HRL)
ORDER GRANTING YSL'S MOTION TO DISMISS WITHOUT LEAVE TO AMEND AND STAYING ACTION AS TO ALL REMAINING DEFENDANTS
(JFLC1)

personal care products in April 2008. USDA Guidance Statement, "Cosmetics, Body Care Products and Personal Care Products." Def. RJN SAC, Ex. B. It confirmed again that producers and handlers of personal care products may seek USDA certification:

> If a cosmetic body care product or personal care product contains or is made up of agricultural ingredients, and can meet the USDA/NOP organic production, handling, processing and labeling standards, it may be eligible to be certified under the NOP regulations...Any cosmetic, body care product or personal care product that does not meet the production, handling, processing, labeling, and certification standards described above, may not state, imply or convey in any way that the product is USDA-certified organic or meets the USDA organic standards.

*Id.* At the same time, the USDA again made clear that the NOP regulatory regime does not govern the labeling of personal care products unless the labeling itself implies certification under the specific NOP standards:

> USDA has no authority over the production and labeling of cosmetics, body care products and personal care products that are not made up of agricultural ingredients or do not make any claims to meeting USDA organic standards. Cosmetics, body care products, and personal care products may be certified to other, private standards and be marketed to those private standards in the United States. These standards might include foreign organic standards, eco-labels, earth friendly, etc. USDA's NOP does not regulate these labels at this time. *Id.*

Plaintiff contends that because a product that meets the NOP standards may be eligible to carry the USDA label, products that do not meet the standards may not carry the USDA label and "may not state, imply or convey in any way that the product is USDA-certified organic or meets the USDA organic standards." *Id.*

Finally, in March 2009, the NOSB adopted a discussion draft recommendation urging USDA to amend its existing regulations to (1) "assur[e] consumers that the federal government is policing [organic personal care product] claims"; and (2) "allow[] for the development of a complete federal organic cosmetic program." *See* Def. RJN SAC, Ex. K (March 23, 2009, NOSB Discussion Document). On December 10, 2009, after the Court issued its order dismissing the SAC, the NOSB formally recommended that the existing rules be amended to provide that NOP standards for labeling a product as "organic" or "made with organic

[ingredient]" apply to personal care products. D. RJN TAC, Ex. B[6] (NOSB Formal Recommendation to the NOP).  On April 23, 2010, Miles McEvoy, Deputy Administrator of the NOP, issued an official memorandum stating that the NOP will:  (1) communicate with the Food and Drug Administration (FDA) and the Federal Trade Commission (FTC) regarding the use of the term "organic" in personal care products in order to achieve a "comprehensive approach" across agencies; (2) obtain information regarding organic labeling of personal care products in the marketplace; and (3) "consider the recommendations of the NOSB on rulemaking and take them under advisement for future incorporation."  Request for Judicial Notice (Dkt. 117), Ex. A.

## II. Legal Standard

**A. Motion to Dismiss pursuant to Rule 12(b)(6)**

Dismissal under Fed. R. Civ. P. 12(b)(6) "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Medical Center,* 521 F.3d 1097, 1104 (9th Cir. 2008).  For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the court must construe the complaint in the light most favorable to the plaintiff. *Jenkins v. McKeithen,* 395 U.S. 411, 421 (1969).  At the same time, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal citations omitted).  Thus, a court need not accept as true conclusory allegations, unreasonable inferences, legal characterizations, or unwarranted deductions of fact contained in the complaint. *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754-755 (9th Cir. 1994).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'- 'that the pleader is entitled to relief.'" *Ashcroft v.*

---

[6] Plaintiff does not object to Defendants' requests for judicial notice in support of their instant motion to dismiss.  The Court will take judicial notice of the NOSB's formal recommendation as it is a public record. Fed. R. Evid. 201(b).

*Iqbal,* 129 S.Ct. 1949, 1590 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Department of Corrections,* 66 F.3d 245, 248 (9th Cir. 1995). When amendment would be futile, however, dismissal may be ordered with prejudice. *Dumas v. Kipp,* 90 F.3d 386, 393 (9th Cir. 1996).

### III. Discussion

**A. Primary Jurisdiction Doctrine**

The primary jurisdiction doctrine does not implicate subject-matter jurisdiction as such, but it is a "prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decisionmaking responsibility should be performed by the relevant agency rather than the courts." *Syntek Semiconductor Co., Ltd v. Microchip Technology, Inc.*, 307 F.3d 775, 780 (9th Cir. 2002). The primary jurisdiction doctrine applies when both the court and an administrative agency have jurisdiction over the same matter. *United States v. Western Pac. R.R. Co.,* 352 U.S. 59, 63-64 (1956). Four factors traditionally are considered by the court in applying the doctrine: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Syntek Semiconductor Co., Ltd*, 307 F.3d at 781.

In its previous order, the Court determined that the USDA has jurisdiction over personal care products and that the primary jurisdiction doctrine is applicable. Order at 11-12 (holding that while to date the USDA has declined to exercise its authority with respect to the labeling of organic personal care products, it has asserted jurisdiction over such products in other ways, such as allowing producers and handlers of such products, including Plaintiff, to seek USDA certification under the NOP). Plaintiff, in an about face from its position on Defendants' previous motion to dismiss, but consistent with the Court's order, now contends in its administrative complaint that the USDA has jurisdiction over the labeling of organic personal

9

Case Number C 09-03517 JF (HRL)
ORDER GRANTING YSL'S MOTION TO DISMISS WITHOUT LEAVE TO AMEND AND STAYING ACTION AS TO ALL REMAINING DEFENDANTS
(JFLC1)

care products. RJN, Ex. A at 3, 6. Plaintiff's "extensive campaign to try to convince the [agency] to act on [defendant's] supposed misstatements and violations demonstrates that [plaintiff] understood that this subject fell within the [agency's] domain." *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 930 (9th Cir. 2010). Moreover, the NOSB's formal recommendation to the NOP – that the existing rules be amended to make clear that the NOP standards for labeling a product as "organic" apply to personal care products – presupposes that the USDA has jurisdiction over the products involved. RJN TAC, Ex. B

Plaintiff currently has an active administrative action pending before the USDA. While the TAC does not invoke the NOP regulations explicitly, it asserts essentially the same allegations found in Plaintiff's administrative complaint with respect to Defendants' labeling of personal care products. It also requests that the same product standards identified in the SAC be imposed on Defendants by this Court. Defendants contend that if the Court does not dismiss or stay the current action, it will be forced to evaluate how the "alleged consumer understandings line up with the existing regulations" and potentially "impose product standards that conflict with those selected by Congress" pursuant to the OFPA. MTD at 6-7, *comparing* TAC ¶¶ 33-44 (alleging that reasonable consumer expect that organic products have *no* synthetic ingredients or petrochemical compounds) (emphasis added), *with* 7 U.S.C. § 6510 and 7 C.F.R. § 205.301(b) (authorizing the use of some synthetic ingredients in "organic" products); *compare* RJN TAC, Ex. D (Q&A regarding petrochemicals) (noting that the National List, which contains materials eligible as a class for use in organic products, may include petrochemical-based ingredients); *with* TAC ¶ 35 (stating that survey research shows that consumers believe that a product labeled "organic," "organics," "100% Organic Active Ingredients," "Pure Organic Technology," or "Made with Organic Ingredients" does not contain cleansing or moisturizing agents derived from conventionally-produced agricultural materials ); 7 U.S.C. § 6510(a)(4) (allowing up to 5% non-organic content in an "organic" product) and 7 C.F.R. § 205.301(c) (permitting products labeled "made with organic ingredients" to contain up to 30% non-organic agricultural content).

10

Case Number C 09-03517 JF (HRL)
ORDER GRANTING YSL'S MOTION TO DISMISS WITHOUT LEAVE TO AMEND AND STAYING ACTION AS TO ALL REMAINING DEFENDANTS
(JFLC1)

1 Defendants argue persuasively that the TAC necessarily would require the Court to interpret and apply the NOP regulatory framework when determining questions such as what "organically produced," "nonagricultural," or "synthetic" mean. 7 C.F.R. § 205.2 (defining these and other terms utilized in NOP regulatory language). Each of these terms, as defined by the USDA, is utilized by Plaintiff in the TAC to describe consumer expectations, the science of manufacturing personal care products, and the prayer for relief's requested injunction. Because the USDA's enforcement of NOP standards governing personal care products has been recommended formally by the NOSB and currently is under the NOP's review, and because Plaintiff has an active administrative action pending before the USDA, it would be inappropriate for this Court to adjudicate Plaintiff's Lanham Act claim and impose a potentially conflicting set of standards. *See Shipley v. United States*, 608 F.2d 770, 775 (9th Cir. 1979) (holding that "where a pending administrative proceeding might render the relief sought in district court unnecessary, it is proper for the district court to stay the case before it pending the outcome of the administrative proceeding"); *see also Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 508-09 (7th Cir. 2009) (citations omitted) (holding that "[t]he FDA should be given a chance to opine on the proper labeling before a Lanham Act suit is filed...since it has more experience with consumers' understanding of drug labels than judges do").

"Whether to stay or dismiss without prejudice a case within an administrative agency's primary jurisdiction is a decision within the discretion of the district court." *Davel Commc'n, Inc. v. Qwest Corp.,* 460 F.3d 1075, 1091 (9th Cir. 2006), citing *Reiter v. Cooper,* 507 U.S. 258, 268-69, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993). "[W]here the court suspends proceedings to give preliminary deference to an administrative agency but further judicial proceedings are contemplated, then jurisdiction should ordinarily be retained via a stay of proceedings, not relinquished via a dismissal." *Id.,* citing *N. Cal. Dist. Council of Hod Carriers, Bldg. & Constr. Laborers, AFL-CIO v. Opinski,* 673 F.2d 1074, 1076 (9th Cir.1982). Defendants argue that dismissal is more appropriate than a stay because any questions remaining following the disposition of the administrative complaint should proceed under the review standards of the

Case Number C 09-03517 JF (HRL)
ORDER GRANTING YSL'S MOTION TO DISMISS WITHOUT LEAVE TO AMEND AND STAYING ACTION AS TO ALL REMAINING DEFENDANTS
(JFLC1)

Administrative Procedure Act, not before this Court under the Lanham Act. However, without knowing how the USDA will proceed regarding the NOSB's recommendation and Plaintiff's administrative complaint, the Court cannot presume that there will be nothing left for it to decide. Accordingly, the Court will exercise its discretion to stay the case pending further action by the USDA.[7]

### B. YSL's independent motion to dismiss pursuant to Rule 12(b)(6)

Notwithstanding the principles of primary jurisdiction, YSL contends that the TAC should be dismissed as to YSL on the separate basis that the facts as alleged are insufficient to support a Lanham Act claim. To state a claim for false advertising under the Lanham Act, a plaintiff must allege that "(1) the defendant made a false statement either about the plaintiff's or its own product; (2) the statement was made in commercial advertisement or promotion; (3) the statement actually deceived or had the tendency to deceive a substantial segment of its audience; (4) the deception is material; (5) the defendant caused its false statement to enter interstate commerce; and (6) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to the defendant, or by a lessening of goodwill associated with plaintiff's product." *Newcal Industries, Inc., v. Ikon Office Solution*, 513 F.3d 1038, 1052 (9th Cir. 2008), quoting *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 n. 4 (9th Cir. 2002). "For the purposes of the Lanham Act, 'competitors' are 'persons endeavoring to do the same thing and each offering to perform the act, furnish the merchandise, or render the services better or cheaper than his rival.'" *New.Net v. Lavasoft*, 356 F.Supp.2d 1090, 1116 (C.D. Cal. 2004), citing *Kournikova v. General Media Communications, Inc.*, 278 F.Supp.2d 1111, 1117 (C.D. Cal. May 2, 2003). "They are parties vying for the same dollars from the same consumer group." *Id.*

As it did in its previous motion to dismiss, YSL claims that Plaintiff fails to allege that its products compete directly with YSL's. In its previous pleading, Plaintiff did not allege that its

---

[7] The Court does not address the merits of Cosway's motions to dismiss and for a more definite statement. Instead, the motions will be terminated without prejudice in light of the stay.

12

Case Number C 09-03517 JF (HRL)
ORDER GRANTING YSL'S MOTION TO DISMISS WITHOUT LEAVE TO AMEND AND STAYING ACTION AS TO ALL REMAINING DEFENDANTS
(JFLC1)

products could be found in the same store or even the same state as YSL's. The Court declined to infer that merely because Plaintiff and YSL sell cosmetic products, both of which are labeled as organic, they compete directly with each other. The Court also noted that Plaintiff did allege that the products of other Defendants were "typically sold in the same sections, and often on the same shelves, of the same retail outlets, including grocery stores, natural food stores, drug stores, and other outlets," SAC ¶ 83, and on the same websites. *Id.* ¶ 84.

Plaintiff now alleges that its products and YSL's both are sold on the Internet and that in turn they "compete for the business of consumers searching online for 'Organic' liquid body cleansers and moisturizing lotions/creams." TAC ¶ 54. These newly alleged facts improve little upon Plaintiff's previous allegations. The fact that Plaintiff and YSL both sell their personal care products on the Internet does not mean that they are in direct competition. Plaintiff claims in its opposition papers that "when consumers search the internet for organic products those search results will very likely display web sites that contain both Dr. Bronner's and YSL Beaute's products," Opposition to YSL at 5, but the TAC itself contains no such allegation. Even in its opposition papers, Plaintiff only goes so far as to claim that it is *very likely* that such a search would yield both Plaintiff and YSL products. *See contra Kournikova,* 278 F.Supp.2d at 1117 (holding that the parties were competitors where they both sold merchandise specifically featuring Anna Kournikova over the internet, as well as in magazines and stores). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct the complaint has alleged-but it has not 'show[n]'- 'that the pleader is entitled to relief.'" *Iqbal,* 129 S.Ct. at 1950, quoting Fed. R. Civ. P. 8(a)(2).

The Court's previous order offered explicit detailed comments with respect to the deficiencies in Plaintiff's Lanham Act claim against YSL. It appears that Plaintiff cannot cure these deficiencies consistent with the requirements of Fed. R. Civ. P. 11. Accordingly, the Court will grant YSL's motion to dismiss without leave to amend.

### IV.  ORDER

Good cause therefore appearing, the instant action will be STAYED as to Defendants The

13

Case Number C 09-03517 JF (HRL)
ORDER GRANTING YSL'S MOTION TO DISMISS WITHOUT LEAVE TO AMEND AND STAYING ACTION AS TO ALL REMAINING DEFENDANTS
(JFLC1)

Hain Celestial Group, Inc, Kiss My Face Corporation, Levlad, LLC, Giovanni Cosmetics, Inc., Cosway, Ecocert, and Country Life, Inc. YSL's motion to dismiss will be GRANTED, without leave to amend. A case management conference to determine the progress of the administrative proceedings before the USDA is hereby scheduled for September 10, 2010.

**IT IS SO ORDERED.**

DATED: 5/24/2010

_____
JEREMY FOGEL
United States District Judge

Case Number C 09-03517 JF (HRL)
ORDER GRANTING YSL'S MOTION TO DISMISS WITHOUT LEAVE TO AMEND AND STAYING ACTION AS TO ALL REMAINING DEFENDANTS
(JFLC1)