IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ALL ONE GOD FAITH, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE HAIN CELESTIAL GROUP, INC. ET AL, <br><br> Defendants. | Case Number C 09-03517 JF (HRL) <br><br> **ORDER[1] EXTENDING STAY PENDING ADMINISTRATIVE ACTION** <br><br> Re: Docket Nos. 149, 153, 158, 159, 165, 166, 168 |

On January 13, 2010, Plaintiff All One God Faith, Inc., doing business as Dr. Bronner's Magic Soaps ("Plaintiff"), filed its third amended complaint ("TAC") alleging violations of Section 43(a) of the Lanham Act by Defendants Hain Celestial Group, Inc., Kiss my Face Corporation, and Levlad LLC (collectively, "The Hain Defendants"), Giovanni Cosmetics, Inc., Country Life, LLC, Cosway Company, Inc., YSL Beaute ("YSL") (collectively, "the Count I Defendants") and Ecocert France (SAS) and Ecocert, Inc. (collectively, "Ecocert"). On May 24, 2010, the Court dismissed the claim against YSL and stayed the action as to the remaining defendants pending resolution of a number of related issues by the United States Department of Agriculture ("USDA"). Defendants[2] now renew their motion to dismiss the TAC under the

---

[1] This disposition is not designated for publication in the official reports.

[2] On April 16, 2010, the parties stipulated to and the Court ordered the withdrawal of Levlad LLC's motion to dismiss *nunc pro tunc* in respect of the February 22, 2010 injunction

primary jurisdiction doctrine and Fed. R. Civ. P. 12(b)(6). Plaintiff moves to lift the stay and proceed pursuant to a proposed discovery plan.

## I. BACKGROUND

**A. Factual and Procedural History**

On December 14, 2009, the Court granted Defendants' motions to dismiss Plaintiff's second amended complaint ("SAC"), holding that: (1) Plaintiff had failed to exhaust administrative remedies available through the USDA; (2) pursuant to the primary jurisdiction doctrine, it was inappropriate for this Court to interpret and impose the regulatory framework of the USDA National Organic Program ("NOP"); and (3) Plaintiff had failed to state a claim under the Lanham Act because the allegations contained in the SAC required the Court to interpret, apply, and enforce federal regulatory standards that would negate the legislative prohibition against private actions. Order, Dec. 14, 2009 at 14, 18. The Court also concluded that Plaintiff had failed to state a Lanham Act claim against YSL because it did not allege adequately that Plaintiff's products and YSL's products are in competition. As it was not entirely clear that the defects in the SAC could not be cured by amendment, Plaintiff was granted leave to amend.

On January 13, 2010, Plaintiff filed its TAC. The TAC does not invoke the NOP regulations explicitly. Instead, it alleges that the Count I Defendants' labeling of their products and Ecocert's certification of products as "Organic" or some derivation thereof are literally false, misleading or confusing to the consuming public because the products contain cleansing and moisturizing ingredients derived from conventional agricultural material, contain petrochemicals, or both. TAC ¶¶ 55-103. Plaintiff claims that consumer survey research reflects the beliefs and expectations of consumers that personal care products labeled as organic will not contain synthetic compounds including preservatives, *id.* ¶ 34; cleansing or moisturizing agents derived from conventionally-produced agricultural materials, *id.* ¶ 35; or petrochemicals, *id.* ¶ 37. All of

---

entered by the United States Bankruptcy Court for the District of Delaware in *In re: Natural Products Group, LLC, et al,* Case No. 10-10239 (BLS) (Defendant Levlad LLC's parent company).

Case Number C 09-03517 JF (HRL)
ORDER EXTENDING STAY PENDING ADMINISTRATIVE ACTION
(JFLC1)

these purported consumer expectations were alleged in the SAC, which expressly attributed such expectations to NOP criteria. MTD, Feb. 16, 2010 at 4 (asserting that "Plaintiff has merely switched the alleged source of consumer expectations from NOP criteria to consumer research surveys").

The day after it filed the TAC, Plaintiff also filed an administrative complaint with the USDA. In its administrative complaint, Plaintiff alleged that Defendants[3] do not comply with NOP regulations in the labeling of their personal care products. Request for Judicial Notice, Feb. 16, 2010, Ex. A (Plaintiff's Administrative Complaint).[4] It also contended that the USDA has jurisdiction to impose mandatory regulation of the labeling as "organic" of personal care products and that Defendants' personal care products – because they are consumed by humans, marketed in the United States, and contain agricultural ingredients – are themselves "agricultural products" within the meaning of the NOP regulations. *Id.* at 3, 6.

On February 16, 2010, Defendants moved to dismiss the TAC under the primary jurisdiction doctrine and Fed. R. Civ. P. 12(b)(6). The Court concluded that the USDA had primary jurisdiction over the allegations in the TAC, and it determined that it would be inappropriate to adjudicate Plaintiff's claim because the agency was in the process of developing regulations governing the use of the term "organic" in the marketing of personal care products, and because the USDA had not yet resolved Plaintiff's administrative complaint. *See* Order, May 24, 2010. The Court exercised its discretion to stay the case pending further action by the USDA.

**B. Regulatory History**

    **1. The Organic Foods Products Act and the NOP's production and labeling standards for agricultural products**

---

[3] The respondent companies named in the administrative complaint include the same Defendants named in the instant action, as well as several additional companies.

[4] Plaintiff has not opposed any of Defendants' requests for judicial notice. The Court takes judicial notice of the administrative complaint and all other documents cited below as matters of public record. *See Lee v. City of Los Angeles,* 250 F.3d 668, 688-89 (9th Cir. 2001), citing Fed. R. Evid. 201.

The Organic Food Products Act of 1990 ("OFPA") is intended to (1) establish national standards governing the marketing of certain agricultural products as "organically produced" products; (2) assure consumers that organically produced products meet a consistent standard; and (3) facilitate interstate commerce in fresh and processed food that is organically produced. 7 U.S.C. §§ 6501 *et seq.* Under the authority of the OFPA, the USDA established the NOP in 2000. *See* National Organic Program, 65 Fed. Reg. 80,548 (Dec. 21, 2000) (codified as 7 C.F.R. pt. 205) ("the Final Rule"). The NOP includes standards for growing and producing organic agricultural products, including grains, fruits, vegetables and livestock. *See* 7 C.F.R. Part 205, Subpart C. Among other things, the regulations govern use of the term "organic" in the labeling and marketing of such agricultural and food products. *See* 7 C.F.R. Part 205, Subpart D. The statute requires that agricultural products labeled as organic be certified as meeting the requirements of the regulations by an agent accredited by the USDA, and forbids the labeling as organic of products that have not been so certified. 7 U.S.C. §§ 6514(a), 6515, 6519. The NOP provisions governing the production, marketing, and labeling of "organic" products are complex, detailed, and specific.

### 2. Enforcement of organic product standards

In enacting the OFPA, Congress created an exclusive federal mechanism for evaluating whether agricultural products may be labeled and marketed as "organic" and for challenging decisions made by the USDA pursuant to that mechanism. In order to create a consistent national standard for organic products, Congress authorized the USDA to create a National List of approved and prohibited ingredients that may or may not be permitted in the production, handling, and processing of organic products. *See* 7 U.S.C. § 6517. Congress also created the National Organic Standards Board ("NOSB") to advise the Secretary of Agriculture with respect to the ingredients that should be approved or prohibited on the National List. *See* 7 U.S.C. § 6518. It mandated that the NOSB "establish procedures under which persons may petition the [NOSB] for the purpose of evaluating substances for inclusion on the National List." 7 U.S.C. § 6518(n).

Legislators declined to create a private right of action to enforce the OFPA or its

implementing regulations.  *See* 7 U.S.C. § 6519.  Instead, the statute requires the USDA to establish an "expedited administrative appeals procedure" that allows a "person" to appeal any action taken under the federal program by the USDA or its certifying agents if that action "(1) adversely affects such person; or (2) is inconsistent with the organic certification program established under this chapter."  7 U.S.C. § 6520(a).  There is also a judicial remedy for persons dissatisfied with a "final decision" of the USDA.  *See* 7 U.S.C. § 6520(b) (authorizing the appeal of a final decision by the Secretary to the United States District Court).  Apart from this limited private remedy, only the federal government is authorized to initiate enforcement of the statute.  *See* 7 U.S.C. § 6519(a) (establishing that "any person who knowingly sells or labels a product as organic, except in accordance with this chapter, shall be subject to a civil penalty of not more than $10,000").

The Final Rule provides that "[t]he NOP is ultimately responsible for the oversight and enforcement of the program, including...cases of fraudulent or misleading labeling."  Final Rule at 80,557.  The USDA has indicated that it accepts all consumer and business complaints regarding alleged misuse of the word "organic," but has rejected private enforcement actions.  According to the Final Rule,

> [a]nyone may file a complaint, with USDA, an [State Organic Program's] SOP's governing State official, or certifying agent, alleging violation of the Act or these regulations.  Certifying agents, SOP's governing State officials, and USDA will receive, review, and investigate complaints alleging violations of the Act or these regulations. . .Citizens have no authority under the NOP to investigate complaints alleging violation of the Act or these regulations...Only USDA may bring an action under 7 U.S.C. § 6519.

*Id.* at 80,627; *see also id.* at 80,556 (noting, in a discussion of common law nuisance claims for pesticide drift onto organic farms, that the OFPA "itself does not provide for the right to bring suit as a Federal cause of action, and [the USDA] could not grant it through this regulation").

### 3. Application of the OFPA to personal care products

The OFPA defines the term "agricultural product" as "any agricultural commodity or product, whether raw or processed, including any commodity or product derived from livestock that is marketed in the United States for human or livestock consumption."  7 U.S.C. § 6502(1).

Case Number C 09-03517 JF (HRL)
ORDER EXTENDING STAY PENDING ADMINISTRATIVE ACTION
(JFLC1)

The statute provides further that "no person may affix a label to, or provide other market information concerning, an agricultural product if such label or information implies, directly or indirectly, that such product is produced and handled using organic methods, except in accordance with this chapter." *Id.* at § 6505(a)(1)(B).

At the end of 2000, during deliberations on the regulations, commenters "asked that the NOP include in the final rule certification standards for cosmetics, body care products, and dietary supplements." Final Rule, 80,557.  The USDA concluded, however, that "[t]he ultimate labeling of cosmetics, body care products, and dietary supplements...is outside the scope of these regulations." *Id.*

In May 2002, the USDA issued a "Policy Statement on National Organic Program Scope" indicating that because cosmetics and body care products may "contain agricultural products the producers and handlers of such products, classes of products and production systems are eligible to seek certification under the NOP." *See* Hain Defendants' Request for Judicial Notice in Support of Motion to Dismiss the SAC ("Def. RJN SAC"), Ex. H.  Two years later, in April 2004, the USDA changed its position, declaring that producers of personal care and cosmetic products could not seek even voluntary participation in the NOP.  In a Guidance Statement, the USDA stated that the "OFPA does not extend" to products over which "USDA has no regulatory authority," including such products as "personal care products." Def. RJN SAC, Ex. I at 2-3.  A few months later, the USDA again changed its position and suspended the Guidance Statement, once again permitting qualified personal care product handlers voluntarily to certify and participate in the NOP.

The USDA issued its most recent guidance on the application of NOP standards to personal care products in April 2008. *See* Def. RJN SAC, Ex. B (USDA Guidance Statement, "Cosmetics, Body Care Products and Personal Care Products").  It confirmed again that producers and handlers of personal care products may seek USDA certification:

> If a cosmetic body care product or personal care product contains or is made up of agricultural ingredients, and can meet the USDA/NOP organic production, handling, processing and labeling standards, it may be eligible to be certified under the NOP regulations...Any cosmetic, body care product or personal care product that does not meet the production, handling, processing, labeling, and

Case Number C 09-03517 JF (HRL)
ORDER EXTENDING STAY PENDING ADMINISTRATIVE ACTION
(JFLC1)

6

certification standards described above, may not state, imply or convey in any way that the product is USDA-certified organic or meets the USDA organic standards.

*Id.* At the same time, the USDA confirmed that the NOP regulatory regime does not govern the labeling of personal care products unless the labeling itself implies certification under the specific NOP standards:

> USDA has no authority over the production and labeling of cosmetics, body care products and personal care products that are not made up of agricultural ingredients or do not make any claims to meeting USDA organic standards. Cosmetics, body care products, and personal care products may be certified to other, private standards and be marketed to those private standards in the United States. These standards might include foreign organic standards, eco-labels, earth friendly, etc. USDA's NOP does not regulate these labels at this time. *Id.*

In March 2009, the NOSB adopted a discussion draft recommendation urging USDA to amend its existing regulations to (1) "assur[e] consumers that the federal government is policing [organic personal care product] claims"; and (2) "allow[] for the development of a complete federal organic cosmetic program." Def. RJN SAC, Ex. K (NOSB Discussion Document, March 23, 2009). On December 10, 2009, after this Court issued its order dismissing the SAC, the NOSB recommended formally that the existing rules be amended to provide that NOP standards for labeling a product as "organic" or "made with organic [ingredient]" apply to personal care products. Hain Defendants' Request for Judicial Notice in Support of Motion to Dismiss the TAC ("Def. RJN TAC"), Ex. B (NOSB Formal Recommendation to the NOP). On April 23, 2010, Miles McEvoy, Deputy Administrator of the NOP, issued an official memorandum stating that the NOP will: (1) communicate with the Food and Drug Administration (FDA) and the Federal Trade Commission (FTC) regarding the use of the term "organic" in personal care products in order to achieve a "comprehensive approach" across agencies; (2) obtain information regarding organic labeling of personal care products in the marketplace; and (3) "consider the recommendations of the NOSB on rulemaking and take them under advisement for future incorporation." Request for Judicial Notice (Dkt. 117), Ex. A.

In August 2010, the USDA issued the NOP Strategic Plan 2010-2012 ("Strategic Plan"). The Strategic Plan listed a number of "Priority Projects," including amendments to the NOP regulations concerning cosmetics, which was designated a low priority project, and a "consumer

survey of organic cosmetics," which was designated a high priority project. *See* Hain Defendants' Request for Judicial Notice in Support of Renewed Motion to Dismiss the TAC ("Def. RJN TAC Renewed"), Ex. A (NOP Strategic Plan 2010-2012) at 7-8.  Finally, on May 5, 2011, in response to a letter from the Court inquiring whether the USDA had any pertinent information other than the documents described above, the agency replied that "after considerable research, we do not have any additional information relevant to this case." Letter from USDA Agricultural Marketing Service (Dkt. 141).

## II. DISCUSSION

### A. Primary Jurisdiction Doctrine

The primary jurisdiction doctrine allows the Court, "under appropriate circumstances, [to] determine that the initial decisionmaking responsibility should be performed by the relevant agency rather than the courts." *Syntek Semiconductor Co., Ltd v. Microchip Technology, Inc.*, 307 F.3d 775, 780 (9th Cir. 2002).  The application of the doctrine does not imply that the court lacks subject-matter jurisdiction, but rather that the case "requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172 (9th Cir.2002). Although it is a discretionary question, courts applying the doctrine traditionally have found that "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Syntek*, 307 F.3d at 781.  Where primary jurisdiction lies with an agency, the court may stay the case pending administrative action or dismiss it without prejudice. *Davel Commc'n, Inc. v. Qwest Corp.,* 460 F.3d 1075, 1091 (9th Cir. 2006).

In its order of May 24, 2010, the Court concluded that the USDA had primary jurisdiction over the claims alleged in the TAC.  Although the TAC does not invoke the NOP regulations explicitly,  resolution of Plaintiff's claims "necessarily would require the Court to interpret and

apply the NOP regulatory framework when determining questions such as what 'organically produced,' 'nonagricultural,' or 'synthetic' mean." Order, May 24, 2010 at 11. Noting that the NOSB had recommended formally the application of NOP standards to personal care products and that Plaintiff had a parallel administrative action pending before the USDA, the Court determined that "it would be inappropriate...to adjudicate Plaintiff's Lanham Act claim and impose a potentially conflicting set of standards." *Id*. Accordingly, the Court stayed the case "pending further action by the USDA." *Id.* at 12.

It is unclear how much progress the USDA has made since that order was issued toward addressing the issues relevant to this case. Defendants argue that the August 2010 Strategic Plan indicates that the USDA has "prioritized the development of personal care product standards." Renewed Motion to Dismiss the Third Amended Complaint ("Renewed MTD") at 3-4. Defendants also contend that in recent months the USDA has "substantially increased its enforcement activity under the NOP." *Id*. at 4 (citing a Power Point presentation allegedly offered to the NOSB by NOP officials stating that during the first six months of 2011, the NOP had improved its complaint closure rate by 15% over 2010). Given the impending rulemaking and the fact that the agency has not dismissed Plaintiff's administrative complaint, Defendants argue that "there is no reason to believe that this Court will ever find itself in the position of needing to resolve Plaintiff's claims." *Id*.

Not surprisingly, Plaintiff proposes a different interpretation of what has transpired at the USDA over the last sixteen months. Plaintiff points out that the Strategic Plan classified the amendment of NOP regulations governing cosmetics as a "low priority" project, and that since the issuance of the plan, the USDA has made no further progress with respect to such rulemaking. *See* Opp. to Renewed MTD at 2. In addition, while the agency has not dismissed the administrative complaint, neither has it taken any action to resolve Plaintiff's claim. *See id.* at 4. Moreover, Plaintiff contends that the USDA's noncommital May 5, 2011 letter implied that the agency "has no intention of exercising its jurisdiction over the use of the term 'organic' in labeling and marketing of such products." *Id.* at 5. Plaintiff therefore complains that if it "is

unable to pursue its Lanham Act claims in this Court, there will be no remedy of any kind for the deceptive and misleading labeling and advertising that are the subjects of this action." *Id.* at 4.

While it is fair to say that the record is ambiguous, it appears that the USDA still is headed toward eventually promulgating applicable regulations. Certainly the agency has not explicitly declined to assert jurisdiction over either the subject matter or Plaintiff's administrative complaint. *See Davel Commc'n., Inc.*, 460 F.3d at 1090 ("Unless and until the FCC declines to determine the scope of the Waiver Order, questions regarding that scope, including those at the core of this case, are within the agency's primary jurisdiction."); *Owner-Operator Independent Drivers Ass'n, Inc. v. New Prime, Inc.*, 192 F.3d 778, 785-86 (8th Cir. 1999) ("When the agency declines to provide guidance or to commence a proceeding that might obviate the need for judicial action, the court can then proceed according to its own light.") (internal citations omitted). Without a clearer indication of the USDA's plans, the Court cannot conclude that the agency "has no intention of exercising its jurisdiction" over the issues at the heart of this lawsuit.

In addition, although the Court only need give the agency a "reasonable opportunity" to resolve an issue within its primary jurisdiction, *MCI Worldcom Network Servs., Inc.*, 277 F.3d at 1173, Plaintiff has cited no case holding that an eighteen-month delay in promulgating regulations or processing a complaint is unreasonable. Plaintiff points to several cases in which courts prospectively limited the duration of stays pending administrative action, but in each case the court allowed for an extension if needed. *See Coyle v. Hornell Brewing Co.*, Civ. No. 08-02792, 2010 WL 2539386, *5 n.7 (D.N.J. June 15, 2010) (six-month stay which can be "enlarged" for good cause); *PAC-West Telecomm, Inc. v. MCI Communications Servs., Inc.*, No. 1:10-cv-01051, 2011 WL 1087195 (C.D. Cal. March 23, 2011) (noting that the court cannot require the FCC to rule within the six-month stay period); *Golden Hill Paugussett Tribe of Indians v. Weicker*, 39 F.3d 51, 61 (2d. Cir 1994) (18-month stay pending BIA determination of Plaintiff's tribal status unless the agency or defendant can "show why the stay should not then be dissolved"). Moreover, these cases are distinguishable, as they concern well-established administrative processes. In contrast, the application of the NOP standards to personal care

Case Number C 09-03517 JF (HRL)
ORDER EXTENDING STAY PENDING ADMINISTRATIVE ACTION
(JFLC1)

products is in flux, making Plaintiff's administrative complaint more difficult to resolve. Given that the Court twice has found that this case is within the USDA's primary jurisdiction and that the agency seems to be making progress, albeit slowly, towards resolving the relevant issues, it is premature to lift the stay at this time.

"Normally, if the court concludes that the dispute which forms the basis of the action is within the agency's primary jurisdiction, the case should be dismissed without prejudice so that the parties may pursue their administrative remedies." *Syntek*, 307 F.3d at 783. However, where "further judicial proceedings are contemplated, then jurisdiction should ordinarily be retained via a stay of proceedings." *Davel Commc'n, Inc.,* 460 F.3d at 1091 (internal citations omitted). In addition, the Court may stay proceedings where dismissal would "unfairly disadvantage[]" the parties. *Id*. The factor most often considered in determining whether a party will be disadvantaged by dismissal is "whether there is a risk that the statute of limitations may run on the claims pending agency resolution of threshold issues." *Id.*

Defendants argue that because the USDA intends to address each of the issues relevant to this case, "there is no need...for this Court to retain jurisdiction over the TAC." Renewed MTD at 6. However, as the Court has already noted, "without knowing how the USDA will proceed regarding the NOSB's recommendation and Plaintiff's administrative complaint, the Court cannot presume that there will be nothing left for it to decide." Order, May 24, 2010 at 12. Little has changed with respect to either the rulemaking or Plaintiff's complaint, and it would be risky to predict the outcome of the administrative process. Moreover, regardless of the USDA's ruling, Plaintiff may continue to pursue a Lanham Act claim seeking damages. *See* 7 U.S.C. § 6519(a) (containing no provision for damages through the administrative process). It thus appears that "further judicial proceedings are contemplated." *Davel Commc'n, Inc.,* 460 F.3d at 1091.

Dismissal at this stage also would disadvantage Plaintiff because of the risk that its claims may be time-barred. The Lanham Act contains no explicit statute of limitations. *See Jarrow Formulas, Inc. v. Nutrition Now, Inc.,* 304 F.3d 829, 836 (9th Cir. 2002). However, in

considering a laches defense to a Lanham Act claim, the Ninth Circuit has held that the "analogous limitations period is California's period for fraud, which is three years." *Id*. This claim was filed in mid-2009. If this case is dismissed and Plaintiff is forced to wait for the USDA to act before refiling its Lanham Act claims, the three-year period may lapse, potentially barring the claims. *See U.S. v. Dan Caputo Co.,* 152 F.3d 1060, 1062 (9th Cir. 1998) ("Because this court has not clearly adopted the doctrine of equitable tolling in primary jurisdiction cases, there is a possibility that the Union would be unfairly disadvantaged by the district court's order of dismissal."). Accordingly, the Court will extend the stay for six months pending further action by the USDA[5].

### B. Limited Discovery

At the June 10, 2011 Case Management Conference, the Court suggested that Plaintiff propose a limited discovery plan pursuant to which this case could proceed pending agency action. Although the case remains stayed, the parties may exchange information concerning those matters relevant to Plaintiff's Lanham Act claim that will remain within the Court's subject matter jurisdiction even if the USDA promulgates applicable regulations or processes Plaintiff's administrative complaint. Any disputes over specific discovery requests are referred to Magistrate Judge Lloyd for resolution.

### III. ORDER

Good cause therefor appearing, the instant action will be STAYED for six months as to Defendants The Hain Celestial Group, Inc, Kiss My Face Corporation, Levlad, LLC, Giovanni Cosmetics, Inc., Cosway, Ecocert, and Country Life, Inc. Defendants' Motion to Dismiss will be TERMINATED without prejudice. Plaintiff's motion to proceed pursuant to a discovery plan will be GRANTED.

---

[5] In light of the foregoing, Defendants' motions to dismiss will be terminated without prejudice.

Case Number C 09-03517 JF (HRL)
ORDER EXTENDING STAY PENDING ADMINISTRATIVE ACTION
(JFLC1)

**IT IS SO ORDERED.**

DATED: 9/20/2011

_____
JEREMY FOGEL
United States District Judge

Case Number C 09-03517 JF (HRL)
ORDER EXTENDING STAY PENDING ADMINISTRATIVE ACTION
(JFLC1)