```
                                             Volume 1

                                             Pages 1 - 11

            UNITED STATES DISTRICT COURT

          NORTHERN DISTRICT OF CALIFORNIA

        BEFORE THE HONORABLE SUSAN ILLSTON, JUDGE

ALL ONE GOD FAITH, INC.,         )
                                 )
         Plaintiff,              )
                                 )
  VS.                            ) NO. C 09-03517-SI
                                 )
THE HAIN CELESTIAL GROUP, INC.,  )
ET AL.,                          )
                                 ) San Francisco, California
         Defendants.             ) Friday
                                 ) June 15, 2012
_____) 9:14 a.m.


                  TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Plaintiff:         SANDLER, REIFF & YOUNG, P.C.
                       300 M Street, S.E.
                       Suite 1102
                       Washington, D.C.  20003
                   BY: JOSEPH E. SANDLER, ESQ.
                       and
                       FARELLA, BRAUN & MARTEL LLP
                       235 Montgomery Street
                       San Francisco, California  94104
                   BY: JOHN L. COOPER, ESQ.
                       MORGAN JACKSON, ESQ.

For Defendant Hain Celestial Group, Inc.:
                       COVINGTON & BURLING, LLP
                       1201 Pennsylvania Avenue, N.W.
                       Washington, D.C.  20004-2401
                   BY: WILLIAM J. FRIEDMAN, ESQ.



 (Appearances continued, next page)



            Belle Ball, CSR #8785, RMR, CRR
         Official Reporter - U.S. District Court
                     (415) 373-2529
```

**APPEARANCES, CONTINUED:**

**For Defendant Country Life:**
              **BARTKO, ZANKEL, TARRANT & MILLER**
              900 Front Street
              Suite 300
              San Francisco, California  94111
    BY:  **BENJAMIN K. RILEY, ESQ.**

**For Defendant Ecocert:**
              **ROPERS MAJESKI KOHN BENTLEY**
              201 Spear Street
              Suite 1000
              San Francisco, California  94105
    BY:  **THOMAS H. CLARKE, JR., ESQ.**

**Reported by:**            **BELLE BALL, CSR #8785, RMR, CRR**
                          **Official Reporter, U.S. District Court**

```
 1  FRIDAY, JUNE 15, 2012                                 9:14 A.M.
 2                        P R O C E E D I N G S
 3          THE CLERK:  Calling Civil 09-3517, All One Good Faith
 4  (sic) versus The Hain Celestial Group, et al.
 5          THE COURT:  All One God Faith.
 6          THE CLERK:  Uh, All One God -- what did I say?  Okay,
 7  All One God Faith, I'm sorry.
 8          THE COURT:  State your appearances, please.
 9          (Reporter interruption)
10          THE COURT:  Yeah, we all need to speak right into the
11  mic so the court reporter can hear us.
12          MR. SANDLER:  Joseph Sandler of -- co-counsel for
13  Plaintiff, All One God Faith, Dr. Bronner's.
14          MR. FRIEDMAN:  William Friedman for Hain Celestial,
15  from Covington & Burling.
16          THE WITNESS:  Good morning.
17          MR. RILEY:  Good morning, Your Honor.  Ben Riley for
18  Defendant Country Life.
19          THE COURT:  Good morning.
20          MR. COOPER:  Good morning, Your Honor.  John Cooper
21  on behalf of All One God Faith.
22          MR. JACKSON:  Good morning, Your Honor.  Morgan
23  Jackson on behalf of Plaintiff All One God Faith.
24          THE COURT:  Good morning.
25          MR. CLARKE:  Good morning, Your Honor.  Thomas Clarke
```

1  on behalf of Ecocert.
2          I assume the other motion will go first, because its
3  determination will have an effect on our motion.
4          **THE COURT:**  Good morning.
5          **MR. CLARKE:**  Thank you.
6          **THE COURT:**  Mr. Riley, I'm looking for you.  Who do
7  you represent?
8          **MR. RILEY:**  I represent Country Life.  We joined in
9  the motion to dismiss, Your Honor.
10         **THE COURT:**  Okay.
11         **MR. RILEY:**  Thank you.
12         **THE COURT:**  There are a couple of things on, but the
13 first thing we will discuss is the motion to dismiss the Lanham
14 Act claim; alternatively, to continue the stay that Judge Fogel
15 had imposed.  Or, alternatively, to lift it and get going.
16         I'm inclined at this point to grant the motion to
17 dismiss, based on FDA primary jurisdiction.  So, that's where
18 I'm starting.  Perhaps you guys would like to go first.
19         **MR. SANDLER:**  Thank you, Your Honor.
20         From the beginning, the Defendants on this case have
21 basically taken the position that they are entitled to dwell on
22 this sort of legal netherworld where the U.S. Department of
23 Agriculture's regulations related to labeling of organic
24 products do not apply to them at all.
25         But on the other hand, there is no Lanham Act remedy

1  for Dr. Bronner's because the Department of Agriculture might,
2  someday, maybe begin to regulate use of the term "organic" in
3  the labeling and advertising of personal care products.
4          So in this legal netherworld, they remain free to
5  continue to label outright as organic products that we contend,
6  we allege, no reasonable consumer would regard as organic
7  because of their -- because of their contents.
8          Judge, look.  The legal test for whether a Lanham Act
9  case can proceed which was most recently articulated in the *POM*
10 *Wonderful versus Coca-Cola* case, the Ninth Circuit decision
11 that the Plaintiffs brought to the Court's attention, is that
12 where the Agency extensively regulates labeling or advertising
13 and Plaintiff can't bring a Lanham Act case, it would require
14 the Court to interpret, apply, or enforce those regulations.
15         As we sit here today, there is no mandatory U.S.
16 Department of Agriculture National Organic Program regulation
17 that governs the use of the term "organic" in the labeling or
18 advertising of soaps and moisturizers, creams, personal care
19 products.  So, Judge Fogel did not find that the case could not
20 proceed under the Lanham Act, but rather, that USDA had primary
21 jurisdiction, which assumes that both this Court and the Agency
22 have jurisdiction.  The USDA, though, under well-established
23 principles of primary jurisdiction, should be given the first
24 opportunity to act.
25         And two years after Judge Fogel's May, 2010 decision,

1  Department of Agriculture Natural Organic Program has done
2  literally nothing to exercise that jurisdiction that we all
3  agree -- both parties agree -- the Agency does have.
4          In September -- in the September, 2011 order,
5  Judge Fogel indicated that this case should continue, the case
6  shouldn't proceed, because 18 months was not too long to wait
7  for the Agency to act, but indicated that further proceedings
8  would be -- that, at a minimum, the case should be stayed
9  because the Plaintiffs could still pursue damages under the
10 Lanham Act, regardless of how the USDA acted.
11         And secondly, because if USDA failed to act, the case
12 was dismissed, we would have a Statute of Limitations problem
13 in refiling the Lanham Act -- the Lanham Act case.
14         **THE COURT:**  Based on laches?  Based on laches?  Was
15 that the issue?
16         **MR. SANDLER:**  Based on the Statute of Limitations
17 under the -- under the Lanham Act.  The -- I think it's --
18 looking for the September, 2010 order.  September 11.
19         This -- Judge Fogel ruled that dismissal would
20 disadvantage Plaintiff because of the risk that its claims may
21 be time-barred, indicating, yeah, laches defense to the
22 Lanham Act, bringing in the analogous --
23         **THE COURT:**  Right.  Well, I don't see how laches
24 would apply, since you filed the lawsuit, and it's been pending
25 all this time.  It seems to me that as far as that's concerned,

1  you are probably safe if you wanted to refile some other time.
2  So, I don't view it as --
3          **MR. SANDLER:**  Prejudicial.
4          **THE COURT:**  -- a prejudicial issue, in that sense.
5          **MR. SANDLER:**  So basically, in our view, the question
6  before the Court as to which there actually has not been a lot
7  of guidance for the Court is how long is too long to wait for
8  the Agency to act, or to have its first opportunity, under the
9  primary-jurisdiction doctrine, to provide some kind of
10 regulation in this area, which it has taken no steps at all,
11 actually, to do since Judge Fogel's May 2010 order.
12         **THE COURT:**  Thank you.
13         **MR. FRIEDMAN:**  Judge, in light of your prior remark,
14 I'll be very brief, unless you have a question that's come up
15 arising from the argument Counsel made.
16         The singular point that I think is most critical is
17 that USDA does regulate this product class.  USDA does actually
18 oversee the labeling.
19         **THE COURT:**  Well, has the power to, and the
20 distinction to.
21         **MR. FRIEDMAN:**  That's right. And under *POM*
22 *Wonderful*, the Ninth Circuit's made clear that if the Congress
23 has entrusted the Agency with that decisionmaking, that the
24 Court should respect that.  But beyond it just having power, it
25 actually does require, as set out in the 2005 guidance

1  document, it will allow products -- to be certified organic,
2  they have to follow all the rules for the food products.  And,
3  if you don't reach the percentage content necessary to
4  authorize the use of the word "organic," or "made with organic
5  ingredients," all of your agricultural ingredients that you do
6  use must be certified organic.  And that's the class that these
7  products fall into, and that's the way they are labeled.
8           So, I think there is a -- there is oversight by USDA
9  right now.  Of course, the complaint system indicates that, and
10 they filed a complaint.
11          The only other point I would make at this juncture is
12 that Judge Fogel did not determine there was Lanham Act
13 jurisdiction.  Judge Fogel concluded that he wasn't sure if
14 there would be Lanham Act jurisdiction or not.  And to avoid
15 prejudice, he would withhold a final decision.
16          And, under the pre-*POM* Lanham Act cases, he would
17 have simply been waiting to see if the Agency decided these in
18 fact do violate the federal program.  And that could presumably
19 be a predicate for coming in and asking for Lanham Act relief.
20 He wasn't deciding that the consumer expectation theory was
21 accepted under the Lanham Act, or anything like that.
22          And with that, I'll --
23          (Reporter interruption)
24          **MR. FRIEDMAN:**  That the consumer perception theory of
25 the case was acceptable under Lanham Act.  Which, clearly, in a

1  situation like this, it would not be.
2          **THE COURT:**  Do you agree with me that laches is not a
3  big worry for the Plaintiffs in this case?
4          **MR. FRIEDMAN:**  I do agree with that.  And I think
5  that you would -- a subsequent complaint would either relate
6  back, or an agreement could be reached regarding that.
7          **THE COURT:**  You surely wouldn't argue that laches
8  would preclude subsequent lawsuits.
9          **MR. FRIEDMAN:**  Actually, it'd never come up until
10 Judge Fogel put it in his order.  I think it's certainly
11 mentioned in some of the Lanham Act cases, but it wasn't a
12 focus for us, no.
13         **THE COURT:**  Yes.  Well, my question was a little bit
14 different.  You surely wouldn't urge that, would you?
15         **MR. FRIEDMAN:**  No.  I would not urge that.
16         **THE COURT:**  Okay.
17         **MR. FRIEDMAN:**  I think there's clarification from the
18 Agency, that it -- it would be fair.
19         **THE COURT:**  All right.  Well, is there anything else?
20 Or, the matter will be submitted.
21         **MR. SANDLER:**  Your Honor, just the -- the difference
22 in this situation, again, *POM Wonderful*, the Ninth Circuit
23 referred to "Congress's decision to entrust..."
24              (Reporter interruption)
25

1       **MR. SANDLER:**  "Congress's decision to entrust matters
2  of juice beverage labeling to the FDA and by the FDA's
3  comprehensive regulation of that labeling."
4       Again, as we sit here today, there's no mandatory
5  labeling requirements that the Department of Agriculture has
6  imposed, none, on the labeling of personal care products or the
7  use of the term "organic" in the labeling or advertising of
8  personal care products.
9       **THE COURT:**  All right.  Okay.  Thank you.
10      I'll submit the matter, and I'll get back to you
11 shortly.  Now, did we have a --
12      **MR. FRIEDMAN:**  Yes, at 3:00.
13      **THE COURT:**  Well, again, I think it probably makes
14 sense to get this resolved before we do that.  So I'll just
15 reschedule as needed.  How's that?
16      **MR. FRIEDMAN:**  Thank you, Your Honor.
17      **THE COURT:**  All right.
18      **MR. SANDLER:**  And there's also a motion for leave to
19 amend, and presumably that can be deferred until --
20      **THE COURT:**  Until after the decision here.
21      **MR. SANDLER:**  Yes, (Inaudible).  Thank you.
22      **THE COURT:**  Thank you.
23      **MR. CLARKE:**  Thank you, Your Honor.
24      **THE CLERK:**  What was the motion, the motion to what?
25      **THE COURT:**  There is a motion to amend and --

1          **MR. SANDLER:**  A motion for leave to amend.
2          **THE COURT:**  And a couple of motions to dismiss.
3          (Proceedings concluded)
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Belle Ball, CSR #8785, RMR, CRR
Official Reporter - U.S. District Court
(415) 373-2529

## **CERTIFICATE OF REPORTER**

I, BELLE BALL, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*/s/ Belle Ball* Friday, August 3, 2012

Belle Ball, CSR 8785, RMR, CRR